# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:25-cv-23182

**C.M., Michael Borrego Fernandez, J.M.C., E.R.,** on behalf of themselves and all others similarly situated; **Florida Keys Immigration; Law Offices of Catherine Perez PLLC; Sanctuary of the South; U.S. Immigration Law Counsel; Victoria Slatton** on behalf of **N.M.B.,**

*Plaintiffs*,

v.

**Kristi Noem**, Secretary of the United States Department of Homeland Security, in her official capacity; **U.S. Department of Homeland Security**; **Todd Lyons**, Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement, in his official capacity; **U.S. Immigration and Customs Enforcement**; **Garrett Ripa**, Field Office Director for ICE's Enforcement and Removal Operation's ("ERO") Miami, Florida Field Office, in his official capacity; **Ronald DeSantis**, Governor of the State of Florida, in his official capacity; **Sherea Green**, Director of the Corrections and Rehabilitation Department of Miami-Dade County, Florida, in her official capacity; **Kevin Guthrie**, Executive Director of the Florida Division of Emergency Management, in his official capacity; **Florida Division of Emergency Management**; **Sirce Owen**, Acting Director of EOIR, in her official capacity; **Executive Office for Immigration Review**,

*Defendants*.

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.      On June 23, 2025, the state of Florida began construction of a temporary immigration detention facility now known as "Alligator Alcatraz" in the middle of the Florida Everglades.[1] The facility, built of tents, trailers, chain-link fence, and barbed wire, has the capacity to hold at least 3,000 people, and is directly surrounded by swampy wetlands home to wildlife, including alligators and venomous snakes.

2.      President Trump has celebrated the detention of immigrants at this facility, stating that "we're going to teach them how to run away from an alligator if they escape prison. . . .The only way out, really, is deportation."[2]

3.      This class action lawsuit challenges the government's attempts to prevent people detained in civil immigration custody at Alligator Alcatraz from communicating with legal counsel and from filing motions with the immigration court that could result in their release from detention.

4.      Defendants in this case have blocked detainees held at the facility from access to legal counsel. No protocols exist at this facility for providing standard means of confidential attorney-client communication, such as in-person attorney visitation and phone or video calls that are available at any other detention facility, jail, or prison. The only way that detained people can

---

[1] The facility was originally referred to as the "Collier Dade Transition and Training Detention Center," but Defendants have officially renamed it "Alligator Alcatraz." *See* Ana Ceballos, *Alligator Alcatraz Is No Nickname. It's Detention Camp's Official Name*, Tampa Bay Times, Jul. 1, 2025, https://www.tampabay.com/news/florida/2025/07/01/alligator-alcatraz-is-no-nickname-its-detention-camps-official-name; Raisa Habersham, *As the Jokes Fly, Alligator Alcatraz Evokes Racist Trope of 'Gator Bait'*, Miami Herald, Jul. 10, 2025, https://www.miamiherald.com/news/state/florida/article310224360.html (discussing historical "gator bait" trope used to dehumanize Black people and its application in naming the facility).

[2] Adriana Gomez Licon and Will Weissert, *Trump Tours Florida Immigration Lockup and Jokes about Escapees Having to Run from Alligators*, Associated Press, Jul. 1, 2025, https://apnews.com/article/trump-everglades-immigrant-detention-facility-visit-5dc5568ec15534947c29c9149b773d1d.

communicate with the outside world is via infrequent access to collect pay phone calls that are monitored and recorded, and last approximately five minutes.

5.      In the absence of any publicly available information or protocols regarding legal access at the facility, attorneys have gone to significant lengths to contact their retained and prospective clients, to no avail. Attorneys have attempted to confirm the location of clients reported to be detained at the Alligator Alcatraz facility via ICE's online detainee locator, which has produced either no result, or an instruction to call the Krome North ICE Processing Center ("Krome") in Miami. Staff at Krome have stated they have no information as to how attorneys can communicate with clients at Alligator Alcatraz.

6.      Attorneys have also attempted to locate a facility phone number, email address, or any instruction to arrange contact with clients held at the facility, with little to show for their efforts. One attorney contacted ICE's Miami Field Office, only to be put on hold for approximately one hour before being disconnected. An email address provided by the Florida Division of Emergency Management, legal@privacy6.com, reported to be used for arranging attorney-client communication at the facility, has resulted in bounced-back messages.

7.      Attorneys have taken the long road trip to the facility to try and meet with their clients in person—a universal practice at every other immigration detention facility in the United States—only to be greeted at an armed checkpoint near the facility and barred from entry. Attorneys have waited for several hours in their cars at the checkpoint while their requests to speak with clients are communicated to the facility, only to be turned away. Officers have then either provided a faulty email address to arrange a legal call, or provided a two-page "Legal Counsel Visitation Request Form." The form also instructs attorneys to attach any documents they plan to show to or discuss with clients, for prior review and approval by the facility.

8.      Some attorneys who have filled out this form have received an email a few days later, but the email has not provided any specific information about how a call with a client might proceed, which client the call might be with, any instructions for connecting to the call, or specific times for the call. Others receive notices that their request has been received, promising to be in touch in the future, with no further information. In the end, even these vague promises for an attorney call have then been canceled. Others have received no response at all.

9.      The government has further made it virtually impossible for detainees, or their counsel, to file documents required to contest their detention with the immigration court. No instruction exists as to which immigration courts have been designated for submission of motions for bond redetermination for people detained at Alligator Alcatraz. As a result, detainees held at Alligator Alcatraz effectively have no way to contest their detention.

10.      Plaintiffs C.M., Michael Borrego Fernandez, J.M.C., and E.R. (collectively "Detained Plaintiffs") are detained immigrants currently held at the Alligator Alcatraz facility who wish to communicate confidentially with their retained or prospective counsel, and to file documents with the immigration court. They seek relief on behalf of themselves and a putative class. Plaintiffs Florida Keys Immigration, Law Offices of Catherine Perez PLLC, Sanctuary of the South ("SOS"), and U.S. Immigration Law Counsel (collectively "Organizational Plaintiffs") are immigration law firms or legal service organizations whose mission is to provide immigration counsel to people in detention, whose staff have been prevented from speaking with clients detained at the facility. Plaintiff Victoria Slatton is an attorney for N.M.B., who is detained at the facility. She brings this case on his behalf.

11.      The government's restrictions on attorney-client communication at Alligator Alcatraz inhibit detainees' ability to meaningfully access and communicate with legal counsel,

impinge upon attorney-client privilege, and violate detainees' constitutional rights under the First Amendment. These restrictions also violate the Organizational Plaintiffs' First Amendment rights to speak to their clients. The government's restrictions on detainees' ability to file documents and motions with the immigration court violate the Fifth Amendment right to due process.

12.    Plaintiffs bring this action to seek injunctive and declaratory relief ordering Defendants to comply with the U.S. Constitution, to ensure attorney-client communication for immigrants detained at Alligator Alcatraz, and to ensure that immigrants detained at the facility can file petitions for release and to prevent deportation with the Immigration Court.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (original jurisdiction), and 5 U.S.C. § 702 (waiver of sovereign immunity).

14.    Plaintiffs' claims for relief are predicated under violations of the U.S. Constitution by the federal government, and upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States.

15.    Venue lies in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b), (e).

## PARTIES

**Plaintiffs**

16.    **Plaintiff C.M.** is a noncitizen currently detained at Alligator Alcatraz. C.M. works as a landscaper, has a valid work permit, and no criminal convictions. He has a pending application for asylum. On Sunday, July 6, C.M. was detained by law enforcement officers while on his way

to work. Immigration officers took him directly to Alligator Alcatraz, where he has been held since that day. C.M. has been represented by **Plaintiff Florida Keys Immigration** since November 2023. His attorney has made multiple diligent efforts since his detention to have a confidential attorney call or meeting with him.  C.M. wishes to be a named plaintiff in this lawsuit to ensure confidential, private attorney communication for himself and similarly situated detainees at the Alligator Alcatraz facility.

17.    **Plaintiff Michael Borrego Fernandez ("Mr. Borrego")** is a noncitizen currently detained at Alligator Alcatraz. He is a Cuban national who lived in South Florida with his family prior to his arrest on June 10, 2025, by Miami-Dade County law enforcement for a parole violation for outstanding traffic violations. He has been detained at the Alligator Alcatraz facility since July 5, 2025. He has a final order of removal and requires assistance of counsel with submitting credible fear requests in immigration court.

18.    Mr. Borrego is represented by **Plaintiff Sanctuary of the South ("SOS")** in his immigration court matters. Prior to his move from a Florida county jail to Alligator Alcatraz on July 5, Mr. Borrego's family had retained SOS for the law office's legal assistance in filing a meritorious motion to reopen his order of removal. However, after transfer to Alligator Alcatraz and repeated calls to his family reporting life-threatening conditions inside the facility, he and his family decided to change the terms of SOS's legal representation from filing a motion to reopen his removal order to one seeking his removal back to Cuba.

19.    During nonconfidential collect phone calls with his family, Mr. Borrego described harsh and inhumane conditions at Alligator Alcatraz. He reported that detained people were told that they are only allowed one meal a day (and given only minutes to eat), are not permitted daily showers, and are otherwise kept around the clock in a cage inside a tent. Mr. Borrego also reported

that there have been physical assaults and excessive use of force by people working as guards, and a lack of medical care and attention. Indeed, on Friday, July 11, 2025, Mr. Borrego experienced excessive and profuse bleeding, and he was transported to a local hospital for emergency surgery. He returned to Alligator Alcatraz from the hospital a few days after his surgery, and presently remains incarcerated at the facility. His family reported to SOS attorneys on July 15 that the facility staff were not providing him the post-surgical antibiotics the hospital had prescribed for him, and that due to the heat and humidity in the tents, he had pus coming out of his operation site. He is experiencing significant post-surgery pain.

20.    Since his arrival at Alligator Alcatraz on July 5, Mr. Borrego's attorneys at SOS have attempted repeatedly and unsuccessfully to schedule and have confidential attorney visits or phone calls with him. They have contacted multiple state, federal, and contractor officials via phone calls and email, and by physically traveling to the facility on July 10, and requested a legal visit with Mr. Borrego (and other detainees). Military and law enforcement officials stopped them outside the facility at a checkpoint outside the facility and told to wait in their car for over two hours, only to bar them from entry. On July 15, SOS attorneys again requested an in-person legal visit with Mr. Borrego for the next day, but it did not occur.  Mr. Borrego's attorneys at SOS also have attempted to submit G-28 forms to ICE officials and immigration court.  Mr. Borrego has informed his family and SOS staff via a nonconfidential collect phone call that he wishes to be a named plaintiff in this lawsuit to ensure confidential, private attorney communication for himself and similarly situated detainees at the Alligator Alcatraz facility.

21.    **Plaintiff J.M.C.** is a noncitizen who is currently detained at Alligator Alcatraz. He has no criminal history, is married to a U.S.-citizen wife, and has a pending I-130 petition, through which a U.S. citizen or lawful permanent resident can request that their spouse or another

qualifying family member be granted a green card. He is already in immigration proceedings. On Tuesday, July 8, 2025, J.M.C. went to a Customs and Border Protection ("CBP") office to try and obtain a Form I-94, which is a document that records a person's entry and authorized stay in the country. Immigration officials booked and detained him at the CBP office, and took him to Alligator Alcatraz. J.M.C. already had a scheduled court date with the immigration court when he was taken into custody. J.M.C. is represented by **Plaintiff U.S. Immigration Law Counsel.** who, despite multiple diligent efforts to contact him, including trips to the facility and multiple inquiries, has not been able to meet with J.M.C.

22.     **Plaintiff E.R.** is a non-citizen currently detained at Alligator Alcatraz. He is a Cuban national who has lived in the U.S. for the past ten years; he is married to and lives with a U.S. citizen wife and five-year-old U.S. citizen daughter. He is represented by **Plaintiff Law Offices of Catherine Perez, PLLC** in his immigration matters. He is working with his immigration attorney to attempt to appeal a denial of an adjustment of citizenship under the Cuban Adjustment Act. He does not have a history of any criminal convictions and has an old traffic violation for driving without a license. On June 27, 2025, E.R. was stopped by police while driving on I-75 near Fort Myers. Police did not offer any reason for the traffic stop, and he did not receive a citation after showing his valid driver's license. The law enforcement officers nonetheless arrested him and transferred him to ICE custody. He first spent one night in a jail, and then was moved to Alligator Alcatraz within 24 hours of the traffic stop.

23.     E.R.'s family and his attorney, Ms. Perez, were unable to locate or reach him for five days after his arrest. They both repeatedly searched for him on ICE locators. On July 2, 2025, E.R. was permitted a five-minute phone call to his wife on a monitored, non-confidential line, to let her know that he was at Alligator Alcatraz. Since that initial phone call with his wife, E.R. has

had a few very short non-confidential calls with his wife and his attorney, Ms. Perez. He reports

that the Alligator Alcatraz facility does not post any information about how to reach an attorney,

schedule a legal call, or contact ICE. Neither E.R. nor his attorney have been informed of who his

Deportation Officer is. No ICE official has contacted him since his incarceration at Alligator

Alcatraz.

24.     E.R. also reports overcrowded, unsanitary, and harsh conditions of confinement on

his brief calls. He is locked in cage with about 32 other men that is within a plastic tent that has no

cafeteria, day room, or private areas within it; the men are in bunk beds and share three toilets,

with the toileting area visible from the waist up. E.R. reports that this group of men also share

three phones, and each person is limited to four to five minutes for a call, and must wait in line to

call back. Due to the limited number of phones and short time period for calls, it is extremely

difficult to speak to family members, and any calls with attorneys are nonconfidential and

recorded. Other people waiting to use the phone can clearly hear any conversation taking place.

He reported that rainstorms have flooded the cages, and have limited detainees' ability to go

outside. Due to rain and the facility's location, mosquitos are a constant problem inside the tent

facility, making rest difficult. There is no predictable or posted meal schedules, and on some days

the men only receive one or two boxed meals that contain a sandwich and bag of chips. E.R.'s

attorney has made multiple diligent efforts since his detention to have a confidential attorney call

or meeting with him.  E.R. wishes to be a named plaintiff in this lawsuit to ensure confidential,

private attorney communication for himself and similarly situated detainees at the Alligator

Alcatraz facility.

25.     **Plaintiff Florida Keys Immigration** is an immigration law firm based in Key West

and Miami, Florida. It is operated by Amanda Velazquez, an attorney who has practiced

immigration law for 25 years. She represents four clients who are or recently were held at Alligator Alcatraz. Upon information and belief, at least three of her clients are currently detained at the facility. None of her clients at Alligator Alcatraz have any criminal convictions.

26.    Since one of the firm's clients was detained by immigration officials on July 3, 2025, while going to his job cleaning pools, Ms. Velazquez has made multiple attempts to contact state and federal officials to find out how to establish communication with clients at the facility. She has sought to confirm the location of clients detained at Alligator Alcatraz via ICE's online locator system on a daily basis. One of the entries listed an entry for "Everglades," with a phone number for the Krome North ICE Processing Center in Miami, which she called. The Krome staff member stated that it was not the correct number to make requests to speak to clients at Alligator Alcatraz. Ms. Velazquez also emailed an ICE deportation officer, who suggested that she email legal@privacy6.com, but she received a message that the email was undeliverable

27.    The attorney access restrictions at Alligator Alcatraz harm Florida Keys Immigration's ability to maintain client relationships and sign on new clients. As a result of the policies and practices related to access to counsel at Alligator Alcatraz, the firm has not been able to have meaningful communication with its clients at the facility. At least one of her clients has an upcoming credible fear interview scheduled for the end of July, but Ms. Velazquez has not been able to meet with him to gain more information about his possible defenses to removal. She has been frustrated in providing legal services to the firm's clients, and has spent approximately 6-8 hours of staff time and financial costs that would not have otherwise been incurred, and could have been spent serving and maintaining other client relationships, or providing intake to other new clients.

28.    **Plaintiff Law Offices of Catherine Perez PLLC ("Perez PLLC")** is a law firm in Doral, Florida that has provided legal services to clients in immigration matters since 2018. Its founding attorney is Catherine Perez ("Ms. Perez"), a licensed attorney in good standing with the Florida bar. Plaintiff Perez PLLC represents E.R., a noncitizen currently detained at Alligator Alcatraz, in his immigration proceedings. E.R. has no criminal history and was detained while preparing a bond request based upon his strong family ties to the United States. E.R. was taken into custody on June 27, 2025, and initially held at a facility in Dania Beach, Florida. Within 24 hours, he was transferred to "Alligator Alcatraz," where he was unreachable and his whereabouts unknown to his family and his counsel for nearly one week. E.R. did not appear in the ICE online detainee locator, and as of July 15, 2025, E.R. still does not appear in the ICE detainee locator.

29.    As a result of the policies and practices at "Alligator Alcatraz," it has been impossible for Perez PLLC to meaningfully communicate with its client. E.R. has not been provided any confidential means to speak with his counsel. Perez LLC has attempted to reach the facility several times, by phone and email, to inquire about legal visits, legal calls, and how to communicate with its client E.R., but has received no meaningful response. On July 7, 2025, Ms. Perez called the ICE Miami Field Office; she was kept on hold for almost an hour before the call was disconnected. On July 10, Ms. Perez emailed the facility asking how to arrange a legal call or visit; she is still waiting to speak with her client.

30.    As a result of these barriers to access to counsel at the facility, Plaintiff Perez PLLC has been unable to provide legal services to its client E.R., and has spent approximately nine hours of staff time and incurred approximately $3,100 in expenses that would not have been incurred but for these barriers.

31.     **Plaintiff Sanctuary of the South ("SOS")** is a legal services organization based in Miami, with additional offices in New Orleans and Chattanooga, Tennessee. Part of its mission is to provide direct immigration legal services and civil rights legal representation to communities throughout the South. SOS provides pro bono and low-cost legal representation and counsel to immigrants, including people in detention, by providing deportation defense, asylum assistance, and family-based immigration services. SOS also represents and advocates for individuals harmed in federal custody, families of people who died wrongfully in ICE custody, and individuals physically abused by law enforcement. SOS represents people held in carceral and detention facilities due to their perceived or actual immigration status to advocate for their fundamental constitutional and human rights.

32.     SOS has eight prospective or retained immigrant clients held at Alligator Alcatraz, including Plaintiff Borrego. Plaintiff SOS has been impaired in its ability to represent detained clients in immigration or civil rights proceedings because of the barriers to access to counsel at Alligator Alcatraz. SOS has been unable to communicate confidentially with people at the facility, despite repeated attempts to obtain information on how to meet with clients, whether in person, or over telephone or video calls. Upon information and belief, these prospective clients may have legal remedies available to them in immigration court, including seeking release on bond, or in motions for custody redetermination. However, due to SOS's inability to have attorney-client access, it is impeded in its ability to represent these detainees in immigration court.

33.     Because of Defendants' barriers to attorney-client contact with retained and prospective clients at Alligator Alcatraz, Plaintiff SOS has to date spent at least 68 hours of staff time and at least $1,300 in costs that it would otherwise not have needed to spend in working to achieve its mission of providing legal services to immigrant communities. This includes time spent

attempting to obtain information about how to establish communication with clients at the facility, speaking and coordinating with client and prospective client families to attempt to contact and receive news about their loved ones detained at Alligator Alcatraz, corresponding with state and federal agents to request access to clients at the facility, corresponding and working with partner organizations and attorneys to secure access to the facility for client visits, informing and notifying state and federal congressional representatives about the issues of access to legal visits, or waiting for hours in person at the facility, only to be refused an in-person visit. The time spent by SOS attorneys and staff trying to establish contact with people incarcerated in the Alligator Alcatraz facility has resulted in the organization not being able to help other clients.

34.    **Plaintiff U.S. Immigration Law Counsel ("U.S. ILC")** is a South Florida-based law firm that provides representation in immigration matters, including detained deportation defense.  Plaintiff U.S. ILC represents J.M.C., who is currently detained at the facility known as "Alligator Alcatraz."

35.    As a result of the policies and practices at the facility, it has been impossible for U.S. ILC to meaningfully communicate with J.M.C. He has not been provided any confidential means to speak with his counsel. Although U.S. ILC has a team that regularly arranges video and telephone calls to detained clients, they were unable to find any point of contact for the facility.

36.    On July 11, 2025, U.S. ILC Managing Attorney Saman Movassaghi Gonzalez traveled to "Alligator Alcatraz" to meet with J.M.C. She presented her bar card and a Form G-28 ("Notice of Entry of Appearance"), but was denied entry to the facility and access to her client. At the facility, she was given the email address legal@privacy6.com to request a legal visit, but the email she sent was returned as "undeliverable." The next day, Ms. Movassaghi Gonzalez wrote to

the email address again. She received a message that her email had not been delivered "because the recipient's email provider rejected it."

37.    On July 14, 2025, Ms. Movassaghi Gonzalez sent another email to legal@privacy6.com, asking if this was the correct account to arrange an in-person attorney visit. Later that day, she received a reply with instructions to submit an "Attorney Visit Request Form" to admin@southerndetention.com. Her colleague submitted the form that day, and sent a follow-up email on July 15, asking for an update. He received an email from legal@privacy6.com, stating that his form had been received, and that someone would be in touch to schedule a virtual attorney call. Her colleague then emailed another potential contact at southfacility@em.myflorida.com, stating that they had requested a visit several times. This email was apparently forwarded to legal@privacy6.com, which sent another email stating the request had been received, and that "we will be in touch as soon as possible." No visit has been scheduled to date.

38.    As a result of these barriers to access to counsel at the facility, Plaintiff U.S. ILC has been unable to provide legal services to J,M.C. U.S. ILC intends to file a bond motion on his behalf, but cannot do so because of the barriers to attorney-client communication. Plaintiff U.S. ILC has spent additional time that would not have been incurred but for these barriers.

39.    **Plaintiff Victoria Slatton** is an attorney at Sanabria & Associates, representing N.M.B., including in attempting to seek bond redetermination. She brings this case using third-party standing on his behalf. N.M.B is detained at the Alligator Alcatraz facility. Despite diligent efforts by her firm of contacting an email address they were given for the facility, driving to the facility, and contacting several Congressional offices, Ms. Slatton has been unable to determine what immigration court has jurisdiction over the facility, and thus has been unable to determine the immigration court where she should file N.M.B's bond motion. She has needed to expend

14

additional effort in attempting to resolve this question, and she has been frustrated in her representation of N.M.B by the lack of public information identifying which immigration court has this jurisdiction. N.M.B is hindered in protecting his interests in adequate procedures to seek bond redetermination by limitations on attorney-client communications at the facility.

**Defendants**

40.     **Defendant Kristi Noem** is the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Defendant Noem is a legal custodian of Plaintiffs C.M., Borrego, J.M.C., E.R., and N.M.B., and the members of the putative class. Defendant Noem is sued in her official capacity.

41.     **Defendant DHS** is a federal executive agency responsible for, among other things, enforcing federal immigration laws and overseeing lawful immigration to the United States. Defendant DHS is a legal custodian of Plaintiffs C.M., Borrego, J.M.C., E.R., and N.M.B., and the members of the putative class.

42.     **Defendant Todd M. Lyons** is Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement ("ICE"). Defendant Lyons is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures. Defendant Lyons is a legal custodian of Plaintiffs C.M., Borrego, J.M.C., E.R., and N.M.B., and the members of the putative class. Defendant Lyons is sued in his official capacity.

43.     **Defendant ICE** is a federal law enforcement agency within DHS. Defendant ICE is responsible for the enforcement of immigration laws, including the detention and removal of immigrants. Defendant ICE is a legal custodian of Plaintiffs C.M., Borrego, J.M.C., E.R., and N.M.B., and the members of the putative class.

44.     **Defendant Garrett Ripa** is Field Office Director for ICE's Enforcement and Removal Operation's ("ERO") Miami, Florida Field Office. Defendant Ripa is a legal custodian of Plaintiffs C.M., Borrego, J.M.C., E.R., and N.M.B., and the members of the putative class. Defendant Ripa is sued in his official capacity.

45.     **Defendant Ronald DeSantis** is Governor of the State of Florida. Defendant DeSantis is a legal custodian of Plaintiffs C.M., Borrego, J.M.C., E.R., and N.M.B., and the members of the putative class. Defendant DeSantis is sued in his official capacity.

46.     **Defendant Kevin Guthrie** is Executive Director of the Florida Division of Emergency Management. Defendant Guthrie is a legal custodian of Plaintiffs C.M., Borrego, J.M.C., E.R., and N.M.B., and the members of the putative class. Defendant Guthrie is sued in his official capacity.

47.     **Defendant Florida Division of Emergency Management** (FEDM) is a state agency that is overseeing operations at Alligator Alcatraz. It has entered into an arrangement with DHS and ICE to transform the site into an immigration detention facility. Defendant FEDM is a legal custodian of Plaintiffs C.M., Borrego, J.M.C., E.R., and N.M.B., and the members of the putative class.

48.     **Defendant Sherea Green** is the Director of the Corrections and Rehabilitation Department of Miami-Dade County, Florida. Defendant Green is a legal custodian of Plaintiffs C.M., Borrego, J.M.C., E.R., and N.M.B., and the members of the putative class. Defendant Green is sued in her official capacity.

49.     **Defendant Sirce E. Owen** is Acting Director of the Executive Office for Immigration Review ("EOIR"). Defendant Owen is sued in her official capacity.

16

50.     **Defendant EOIR** is a federal agency within the U.S. Department of Justice. Defendant EOIR is responsible for the administration of immigration courts, and acceptance of forms and petitions related to adjudication of immigration claims, as well as motions for bond.

51.     Defendants Noem, DHS, Lyons, ICE, and Ripa are collectively referred to as "DHS Defendants." Defendants DeSantis, FEDM, Guthrie, and Green are collectively referred to as "Florida Defendants." Defendants Owen and EOIR are collectively referred to as the "EOIR Defendants."

## STATEMENT OF FACTS

### I.     Detention of Immigrants at Alligator Alcatraz

52.     On June 23, 2025, the state of Florida began construction of a temporary immigration detention facility known as "Alligator Alcatraz." The facility, built out of tents, trailers, and chain-link fences with barbed wire, sits on an abandoned 11,000-foot runway at the Dade-Collier Training and Transition Airport in the Florida Everglades.

53.     Immigrants detained at Alligator Alcatraz are held in tents made of white sheeting, with eight cages in each tent. Each cage is approximately 300 square feet (about 9 square feet per person), surrounded by chain-link fencing and barbed wire, and is shared by 32 people. Each cage has three open-air toilets, mounted side by side, visible to all; the only running water available comes from a spigot attached to the toilets. These toilets frequently do not flush, leaving them to overflow with human waste produced by dozens of people in a short period. During storms, the tents flood, leaving floors in the tents completely soaked. The facility frequently experiences power outages, leaving the tents with no light or ventilation. Detainees must endure extremely hot temperatures during the day, and cold temperatures at night.

54.     Detainees can go for days without access to basic hygiene items such as toothbrushes and toothpaste, and water shortages limit opportunities to bathe. The tents are overrun by mosquitos and other large insects, subjecting people to frequent and painful insect bites. Lights are turned on at all times except during power outages, leaving detainees disoriented and unable to sleep. Food portions are extremely small, sometimes full of maggots, and detainees suffer from frequent hunger. Officers have confiscated religious materials from detainees, including Bibles. Over 400 security personnel, including members of the military and Florida National Guard, stand guard at the facility.

55.     The facility has failed to provide necessary prescription medicine to detainees, leaving their health to deteriorate. Several detainees have had medical emergencies requiring emergency transport to the hospital, including Plaintiff Mr. Borrego who required emergency surgery after bleeding profusely.

56.     Immigrants detained at Alligator Alcatraz are civil detainees, held pursuant to allegations of federal immigration, not criminal, law violations.

57.     At a cost of $450 million per year, with a capacity to hold approximately 3,000 people, the facility is surrounded by swampy wetlands host to alligators, venomous snakes, and other wildlife. As President Trump remarked of the immigrant detainees held at the facility, "we're going to teach them how to run away from an alligator if they escape prison."[3] The official DHS social media account posted an image of an AI-generated meme of alligators wearing hats emblazoned with the words "ICE," next to a prison tower with barbed wire, with the caption,

---

[3] Kathryn Watson, *Trump Tours "Alligator Alcatraz" Immigration Detention Center in Florida*, CBS News (Jul. 1, 2025, 7:35 PM), https://www.cbsnews.com/news/trump-alligator-alcatraz-detention-center-florida/.

"Coming Soon!"[4] Defendant Noem stated that "Alligator Alcatraz, and other facilities like it, will give us the capability to lock up some of the worst scumbags who entered our country under the previous administration."[5]

58.    On July 1, 2025, President Trump, Defendant DeSantis, and Defendant Noem visited Alligator Alcatraz for a press tour. Defendant Noem explained to reporters that the facility would be funded "in large part" by the Federal Emergency Management Agency ("FEMA"), a subagency of DHS.[6]

59.    The first group of immigrant detainees arrived at the Alligator Alcatraz facility two days later, on July 3, 2025. The Florida Division of Emergency Management posted a social media message stating that "[t]he first group has arrived at Alligator Alcatraz. Stood up in record time under @GovRonDeSantis' leadership & in coordination with @DHSgov & @ICEgov, Florida is proud to help facilitate @realDonaldTrump's mission to enforce immigration law."[7]

60.    Defendant Noem has stated that Alligator Alcatraz is "held to the same standard that all federal facilities are."[8] Federal immigration detention standards require that detainees have access to confidential communication with counsel. ICE's National Detention standards require

---

[4]    Homeland Security, *Coming soon!*, X (Jun. 28, 2025, 2:52 PM), https://x.com/DHSgov/status/1939034194979455282 [https://perma.cc/C4GY-S5P7].

[5]    J. Kyle Foster, Tayeba Hussein & Stacey Henson, *Inside Florida's Alligator Alcatraz: What We Know about the Immigrant Detention Center*, Naples Daily News (Jul. 12, 2025, 4:27 PM), https://www.naplesnews.com/story/news/local/florida/2025/07/12/alligator-alcatraz-in-florida-what-to-know/84493990007/.

[6] Watson, *supra* note 3.

[7]    FL Division of Emergency Management (@FLSERT), X (Jul. 3, 2025, 11:53 AM), https://x.com/FLSERT/status/1940800991340970006 [https://perma.cc/7R7S-75PW].

[8]    Mandy Taheri, *Five States in Talks for Detention Centers Like "Alligator Alcatraz"— Noem*, Newsweek (Jul. 12, 2025), https://www.newsweek.com/five-states-talks-detention-centers-alligator-alcatraz-kristi-noem-2098212.

in-person legal visits, Standard 5.5.II.G.3; require private, unmonitored legal calls, Standard 5.4.II.J-K; and bar staff from reading written communications to or from legal counsel, Standard 5.1.II.E.2.[9]

61.    In a filing for another case regarding the facility, an official with ICE ERO stated that Florida detains immigrants at Alligator Alcatraz "under the authority delegated pursuant to section 287(g) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1357(g)." Decl. Thomas P. Giles ¶ 7, *Friends of the Everglades v. Noem*, No. 1:25-cv-22896 (S.D. Fla.), ECF No. 21-1. The official stated that 287(g) agreements "generally authorize those entities to detain aliens under the immigration laws," and that "ICE's understanding is that Florida intends to operate its 287(g) facilities under those existing agreements." *Id.* ¶ 8.

62.    The land upon which Alligator Alcatraz sits is owned by Miami-Dade County, Florida. On June 18, 2025, Sherea Green, on behalf of Miami-Dade County, signed an addendum to modify its 287(g) memorandum of agreement with ICE, to add language specifying that Miami-Dade would have "[t]he power and authority to detain and transport . . . arrested aliens subject to removal to ICE-approved detention facilities." *See* Addendum to Modify Memorandum of Agreement, https://perma.cc/2ULP-35C9.

## II.    Restrictions on Access to Counsel at Alligator Alcatraz.

63.    Immigrants detained at Alligator Alcatraz have no ability to communicate confidentially with legal counsel. Defendants have provided no information to detainees, attorneys, or the public to explain how detainees held at the facility can communicate with counsel, whether in person at the facility, on the phone, or via video. There is no way for attorneys to

---

[9] ICE, National Detention Standards (2025), https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf.

confidentially exchange legal documents with their clients held at the facility. Although detainees may make collect phone calls from pay phones in their tents, these calls are limited to approximately five minutes, and are recorded and monitored.

64.     The DHS and Florida Defendants have unreasonably restricted immigrant detainees' access to counsel at Alligator Alcatraz. "Regulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). Their intrusion on detainees' confidential communication with counsel undermine the attorney-client privilege, the "oldest of the common-law privileges." *Diamond Resorts U.S. Collection Dev.. LLC. v. U.S. Consumer Att'ys*, 519 F. Supp. 3d 1184, 1197 (S.D. Fla. 2021) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

65.     In the absence of any information regarding attorney-client communication at Alligator Alcatraz, attorneys have gone to extreme measures to attempt to contact their prospective and retained clients at the facility, to no avail.

66.     **Faulty or No Information in ICE Detainee Locator and Florida Department of Corrections Locator.** Typically, the location of and contact details for immigrant detainees are available on ICE's Online Detainee Locator System at https://locator.ice.gov/odls/#/search. A user first may enter the person's A-number (a unique identification number provided by ICE to each individual in its system) and country of birth, or provide the person's name, country of birth, and date of birth. The online locator should then provide the name of the facility where the person is detained, with a link to a webpage that provides information on how to contact the facility and communicate with detainees.

67.    Attorneys who have checked the ICE detainee locator for clients known to be held at Alligator Alcatraz from those clients contacting family or the attorneys via nonconfidential pay phone calls have discovered that the information provided on the ICE locator is erroneous, or that their clients do not appear in the locator system at all. As the Miami Herald recently reported, "[i]ndividuals sent to the makeshift detention center do not show up in an online government database that allows the public to search for immigrant detainees' whereabouts."[10] For example, immigration attorney Amanda Velazquez entered the name and A-number for a client detained at Alligator Alcatraz; the locator indicated that he was held at the "Everglades" facility, but provided a phone number to the Krome North ICE Processing Center in Miami. Ms. Velazquez called the phone number, and spoke with a staff member who stated that she had received "tons" of calls about Alligator Alcatraz, but that despite the ICE locator, that the Krome was not the proper place to make requests to speak with and seek information about clients held at Alligator Alcatraz. The staff member then suggested that Ms. Velazquez email the ICE deportation officer at Krome assigned to her clients' country of origin. Ms. Velazquez emailed the deportation officer, who advised her to email legal@privacy6.com to request an attorney call with her client. Ms. Velazquez did so, but received a bounce-back message. Ms. Velazquez has still not been able to arrange a legal visit with her client.

68.    Attorney Katherine Blankenship, an attorney with Plaintiff SOS, also checked the ICE detainee locator on July 5, 2025 for information for Mr. Borrego, who by then held at Alligator Alcatraz. The initial display instructed the user to "Call Field Office," which led to a link to a webpage for an unnamed facility with the address of Alligator Alcatraz, but the phone number for

---

[10] Ana Ceballos et al., *Is Your Family Member or Client at Alligator Alcatraz? We Obtained a List*, Miami Herald (Jul. 14, 2025, 11:01 AM), https://www.miamiherald.com/news/local/immigration/article310541770.html.

the Krome North ICE Processing Center in Miami. Staff at Krome similarly had no information as to how she could contact clients at Alligator Alcatraz.

69.    Attorneys have also checked the Florida Department of Corrections inmate locator website at https://pubapps.fdc.myflorida.com/OffenderSearch/search.aspx, to determine the location of their clients or to determine how to contact them. For example, SOS attorney Katie Blankenship attempted on July 11, 2025 to locate her client, Mr. Borrego, through the FDOC website, to no avail.

70.    Alligator Alcatraz does not appear on the list of the State of Florida's correctional facilities, maintained at https://www.fdc.myflorida.com/institutions/institutions-list.

71.    **No Public Information Regarding Requests for Legal Visitation or Calls, with Faulty Email Addresses.** The DHS and Florida Defendants have provided no publicly available information regarding attorney-client access for detainees held at Alligator Alcatraz. Attorneys have thus had to go through extreme measures to try and find any information to make contact with clients. For example, attorney Catherine Perez called the ICE Miami Field Office's public phone number to ask how to arrange a confidential attorney-client meeting at Alligator Alcatraz. She was put on hold for close to an hour, after which the call was disconnected.

72.    Several other attorneys, including Amanda Velazquez and Saman Movassagh Gonzalez have also emailed legal@privacy6.com to request information about contacting clients at Alligator Alcatraz, but emails to this address have bounced back as undeliverable.

73.    **Attorneys Refused Entry to Alligator Alcatraz.** Because there is no phone number, email, or published process to request confidential calls or to schedule legal visits with current or prospective clients at the facility, attorneys have also attempted to meet their clients at the facility—as is standard practice for immigration detention facilities, jails, and prisons—by

driving to Alligator Alcatraz. However, armed members of the Florida National Guard and state troopers intercept attorneys at a checkpoint near the facility, and do not allow them near the facility.

74.     Attorney Sandra Cherfrere, an attorney with Americans for Immigrant Justice ("AI Justice"), visited the facility on July 10, 2025, to meet with approximately nine people who required legal services. Upon her arrival, officers from the Florida National Guard, Florida Highway Patrol, Department of Financial services, and the Florida Department of Law Enforcement stopped her at a checkpoint. Ms. Cherfrere presented her driver's license and bar card, and officers stated that they would ask about the possibility of a legal visit. Another staff member came out and explained to Ms. Cherfere that she was required to complete a form to request a visit, and that once the forms were completed, she would be contacted approximately 24 to 48 hours later. Ms. Cherfrere completed the forms, and was informed that if she wanted to request a visit in the future, that she would have to return to the facility to complete the same form.

75.     The next day, on July 11, Ms. Cherfrere's office received an email stating that the facility could accommodate an hour long video visit sometime between 9:30 a.m. to 5:00 p.m. on July 12. AI Justice staff immediately responded to accept a visit, and provided the names of detainees to meet. That evening, AI Justice staff received a message that the video visit was cancelled. No other visit has yet been scheduled.

76.     On July 10, 2025, Attorney Katherine Blankenship from Plaintiff SOS drove to the facility, provided her bar card and identification to officers at the checkpoint, and requested to speak with five of her prospective and retained clients at the facility. The officers told her that she would have to wait in her car until an employee of "CRS," one of the facility's contractors, would come meet with her. After waiting for two and a half hours, a person who identified himself as

Carlos Flores provided her with a form entitled "Dade Collier Transition and Training Detention Center Legal Counsel Visitation Request Form."

77.     The form requests the attorney's name, bar number, law firm name, phone number, email, and mailing address, the client's name, inmate number, facility name, and housing unit, requested visitation time and date; whether the visit is in-person, a video conference, or telephone conference; and purpose of visit. On the second page of the form, a section titled "Documents and Devices (if applicable)" instructs attorneys to "attach copies of legal documents you intend to bring for approval. All items are subject to inspection and must be pre-approved." An image of the form is below.

78.     Ms. Blankenship completed a form for each of her clients, but was then told by Mr. Flores that the facility would contact her in two to three days with a time and date for a prearranged legal call. He did not have any further information about how to arrange an attorney-client visit. When Ms. Blankenship asked Mr. Flores to confirm what the process was for attorneys to schedule legal calls or legal visits with immigrants at the facility, he confirmed that "this is the process," and the only way to arrange a legal call or visit was to drive to the facility, wait at the military checkpoint, complete the form, and wait for a call or visit to be scheduled. Ms. Blankenship asked Mr. Flores to provide a phone number or email address that she could use to follow up, to ensure that a legal visit would actually occur, and he informed her that no such email address or phone number existed.

79.     On the afternoon of Friday, July 11, 2025, Ms. Blankenship received an email from admin@southerndetention.com, which confirmed that she was "verified" for a one-hour virtual attorney visit on Saturday, July 12, 2025, between the hours of 9:30 a.m. to 5:30 p.m.. No specific time or mechanism for the virtual visit was given, nor did the email identify which of the five clients Ms. Blankenship had requested to speak to would be present on the virtual visit. Ms. Blankenship replied, asking for clarifications about these issues. She then received a message on Saturday morning that the facility was now facing technical difficulties, and that the sender anticipated notifying her of a time for a visit in four days. The July 12, 2025, virtual visit did not occur, and as of July 16, 2025, SOS and its attorney have been unable to have a confidential legal visit with Mr. Borrego.

80.     Attorney Phillip Issa drove to the facility on July 11, 2025, to visit several people on behalf of AI Justice. Officers from the Florida National Guard, Florida Highway Patrol, Department of Financial Services, and the Florida Department of Law Enforcement stopped him

at a checkpoint. After 30 minutes of waiting, officers denied Mr. Issa entry to the facility, and gave

him an email address, legal@privacy6.com, telling him that it was the way to request an attorney

visit, and that he was not allowed to request a visit on site. AI Justice staff promptly requested

visits via the email address, but immediately received bounced back messages of "Undeliverable

. . . your message wasn't delivered because the recipient's email provider rejected it."

81.     On July 14, 2025, AI Justice attorney Troy Elder drove to Alligator Alcatraz to try

to visit detainees held at the facility. Two armed Florida National Guard members in combat

fatigues and several state troopers stopped him at a checkpoint. Mr. Elder identified himself as an

attorney, presented his identification and bar card, and explained that he was there to see multiple

detained individuals who had contacted him through AI Justice's nonprofit legal assistance hotline.

He handed the officers a list of the individuals, but an officer told him that he could not "drive up

and say [I] want to see people." The officer stated that he had to contact the Florida Department

of Corrections, who purportedly was overseeing facility operations, in order to gain access. The

officer explained that Mr. Elder would be required to apply and obtain approval before any future

visit and that his name would have to appear on an approved list of visitors. The officer could not

provide any specific timeline for when approval might be granted, stating that "it all depends." Mr.

Elder was then instructed to turn his vehicle around and exit the premises.

### III.    Detainees Held at Alligator Alcatraz Cannot File Requests for Release on Bond to the Immigration Court.

82.     Immigration attorney Victoria Slatton has been unable to file a motion for bond for

N.M.B., who is detained at Alligator Alcatraz, which impinges on N.M.B.'s liberty interests. After

ICE arrests or detains someone, DHS may make an initial custody determination regarding

whether the individual should be released on bond. *See* 8 C.F.R. §§ 236.1(c), 1236.1(c) (2025).

An immigrant may then seek, among other relief, a custody redetermination hearing (often called

a "bond hearing"), where an immigration judge can order release on bond, order conditional parole, or deny bond altogether. *See* 8 C.F.R. §§ 1236.1(d)(1); 1003.19 (2025). To request a custody redetermination hearing, an individual must request the hearing with the court, generally through a written request or motion. EOIR has not provided any information as to which court immigrants detained at Alligator Alcatraz may file their request for bond hearings or bond motions, even though Ms. Slatton and her firm have made requests of the facility and Congressional representatives to determine what immigration court is appropriate.

83.    N.M.B.'s attorneys believe he is likely eligible for bond, and without a mechanism for his counsel to file a request for a custody redetermination hearing or bond motion, he will not receive an adjudication on his claim to eligibility. As a result, he risks improper prolonged detention.

84.    EOIR maintains a website listing which immigration courts have jurisdiction over which detention centers.[11] This list does not indicate an immigration court with jurisdiction over Alligator Alcatraz. EOIR Defendants could readily add Alligator Alcatraz to this list with no significant burden. Doing so would allow class members' counsel to file requests for bond hearings and motions for custody and bond redeterminations on their behalf, and as a result would permit these class members to access custody and bond redetermination procedures.

**IV.    Other Detention and Prison Systems Ensure Attorney Access.**

85.    Other detention and prison systems provide the people they detain with meaningful attorney access while safeguarding any legitimate needs of the system, such as facility security.

---

[11]  *See* Exec. Off. for Immigr. Rev., *Immigration Court List – Administrative Control*, https://www.justice.gov/eoir/immigration-court-administrative-control-list [https://perma.cc/5RPP-SDTF] (last visited Jul. 14, 2025).

86.     ICE sets out a number of detention standards that apply to facilities in ICE's detention network. These standards provide for confidential in-person visits, telephone calls, and mail between detainees and their counsel.[12]

87.     The Federal Bureau of Prisons provides attorney visits in a "private conference room, if available," allows confidential legal mail, and facilitates at least some unmonitored legal telephone calls. 28 C.F.R. §§ 540.19(a), 540.103, 543.13(a)-(b) (2025).

88.     Florida's state prison system likewise guarantees in-person legal visits in a location that "insure[s] . . . privacy," unmonitored legal calls, and confidential legal mail. Fla. Admin. Code Ann. r. 33-210.102(2)(c)-(e), (8)(d), 33-602.205(3)(a), 33-601.711(5) (2025).

## CLASS ACTION ALLEGATIONS

89.     Plaintiffs bring this action under the Federal Rules of Civil Procedure 23(a), and 23(b)(2) on behalf of themselves and a class of all other persons similarly situated.

90.     Plaintiffs propose to represent the following Proposed Class: "all persons who are currently, or in the future, held at the Alligator Alcatraz detention facility."

91.     The proposed class satisfies the requirement of Rule 23(a) because the class is so numerous that joinder of all members is impracticable. There are currently at least 700 immigrants reportedly detained at Alligator Alcatraz. The proposed class also includes numerous future detainees who will be held at the facility. The government has stated that it intends to continue

---

[12] *See* ICE, *Performance Based Nat'l Detention Standards 2011*, 360, 389-91, 398-401 (Rev. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf [https://perma.cc/GE73-8PRM]; ICE, *2019 Nat'l Detention Standards*, 148-49, 158-61, 166-69, https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf [https://perma.cc/W4F8-FZST]; ICE, *2025 Nat'l Detention Standards*, 148-49, 158-61, 166-68 https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf, [https://perma.cc/ZT82-4EKE]; ICE, Non-Dedicated Intergovernmental Service Agreement Standards, 11, https://www.ice.gov/doclib/detention-standards/2025/ndids2025.pdf [https://perma.cc/W92S-H4FJ].

detaining immigrants at the facility. Alligator Alcatraz has a reported capacity of at least 3,000 people. The proposed class is fluid, as the government continues to transfer detainees to and from the facility, making joinder of all members not only impracticable but impossible.

92.     The proposed class satisfies the commonality requirements of Rule 23(a)(2). The members of the class are subject to a common practice: detention at Alligator Alcatraz and the Defendants' same limits on communication with legal counsel at the facility. The suit also raises questions of law common to the members of the proposed class, including whether the Defendants' policies and practices restricting attorney access and the ability to file legal motions, forms, and petitions, with the immigration court, violate the First and Fifth Amendments of the U.S. Constitution.

93.     The proposed class satisfies the typicality requirements of Rule 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Each proposed class member, including the proposed class representatives, has experienced or faces the same principal injury of denial of access to counsel, based on the same policy and practice, which is unlawful to the entire class, because they violate the First and Fifth Amendments of the U.S. Constitution.

94.     The proposed class satisfies the adequacy requirements of Rule 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class—among other things, an order declaring the government's policies and practices with respect to attorney access and communication with family members unlawful and injunctive relief to provide access to counsel in accordance with constitutional requirements. In defending their rights, Plaintiffs will defend the rights of all proposed class members fairly and adequately.

95.     The proposed class is represented by experienced attorneys from the American Civil Liberties Union, American Civil Liberties Union of Florida, and Americans for Immigrant

Justice. Proposed class counsel have extensive experience litigating class action lawsuits and complex systemic cases in federal court on behalf of detained immigrants and incarcerated people.

96.    The proposed class also satisfies Rule 23(b)(2). Defendants have acted on grounds generally applicable to the class by subjecting them to the same policies and practices with respect to attorney access and the ability to file documents with the immigration court. Injunctive and declaratory relief is therefore appropriate with respect to the class as a whole.

97.    Each of the foregoing paragraphs is incorporated by reference in each of the following claims.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the First Amendment
*On behalf of Detained Plaintiffs and the Proposed Class*
Against DHS Defendants under the U.S. Constitution

98.    The First Amendment of the Constitution guarantees Detained Plaintiffs C.M., Borrego, J.M.C., E.R., and the proposed class the right to hire, consult, and communicate with an attorney. The government may not unreasonably restrict this right.

99.    By unreasonably restricting Detained Plaintiffs C.M., Borrego, J.M.C., E.R., and the proposed class of the ability to retain, consult, and communicate with counsel, DHS Defendants have violated and continue to violate their rights under the First Amendment.

100.    Detained Plaintiffs C.M., Borrego, J.M.C., E.R., and the proposed class have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act, and are entitled to injunctive relief to avoid any further injury.

### COUNT II
### Violation of the First Amendment
*On behalf of Individual Plaintiffs and the Proposed Class*
Against Florida Defendants, 42 U.S.C. § 1983

101.    The First Amendment of the Constitution guarantees Detained Plaintiffs C.M., Borrego, J.M.C., E.R., and the proposed class the right to hire, consult, and communicate with an attorney. The government may not unreasonably restrict this right.

102.    The First Amendment, as applied to state and local government agencies and officials by the Fourteenth Amendment, prohibits governmental entities from "abridging the freedom of speech." U.S. Const. Amend. I.

103.    By unreasonably restricting Detained Plaintiffs C.M., Borrego, J.M.C., E.R., and the proposed class of the ability to retain, consult, and communicate with counsel, the Florida Defendants have violated and continue to violate their rights under the First Amendment.

104.    Detained Plaintiffs C.M., Borrego, J.M.C., E.R., and the proposed class have no clear and adequate remedy at law for this violation of their constitutional rights and have and will suffer irreparable harm as a result of Defendants' conduct, which will continue until and unless enjoined by appropriate order of this Court.

**COUNT III**
**Violation of the First Amendment**
*On behalf of Organizational Plaintiffs*
Against DHS Defendants under the U.S. Constitution

105.    The First Amendment of the United States Constitution prohibits governmental entities from abridging the freedom of speech or association. U.S. Const. Amend. I

106.    Organizational Plaintiffs have a right to free speech and association under the First Amendment, which includes the right of the legal organization to speak to clients, prospective clients, and witnesses about their legal rights and about potential civil rights claims, and to represent them in court, because those activities by Organizational Plaintiffs are modes of expression and association. *See, e.g.*, *In re Primus*, 436 U.S. 412, 423-26, 431 (1978); *NAACP v.*

*Button*, 371 U.S. 415, 428-30 (1963); *Jean v. Nelson*, 711 F.2d 1455, 1508-09 (11th Cir. 1983), *on reh'g,* 727 F.2d 957 (11th Cir. 1984), *aff'd,* 472 U.S. 846 (1985).

107.    Organizational Plaintiffs' First Amendment right to free speech and association extends to communications with current or prospective clients who are in detention. *See Thornburgh*, 490 U.S. at 407-08 (those who wish to communicate with incarcerated people "have a legitimate First Amendment interest in access to prisoners"); *Procunier*, 416 U.S. at 408-09 (both incarcerated people and those with whom they correspond have First Amendment rights that can be infringed by unjustified government interference).

108.    By their actions and inactions, DHS Defendants have denied Organizational Plaintiffs any access to their current and prospective clients incarcerated at Alligator Alcatraz, so that they may properly represent clients in pending immigration proceedings, or to obtain information from clients on potential constitutional violations at the facility. There is no legitimate governmental or penological interest justifying DHS Defendants' policies and practices that have resulted in interference with, and categorical denial of access, for Organizational Plaintiffs to their current and prospective clients.

109.    DHS Defendants have interfered with Organizational Plaintiffs' ability to carry out a core component of their public interest missions—namely, to protect and defend the rights of detained immigrants. The DHS Defendants accordingly have violated Organizational Plaintiffs' First Amendment right to freedom of speech and association.

110.    Organizational Plaintiffs have no clear and adequate remedy at law for this violation of their constitutional rights. They have suffered and will imminently suffer irreparable injury caused by DHS Defendants' policies, practices, and failures to act, and they are entitled to injunctive relief to avoid any further injury.

**COUNT IV**
**Violation of the First Amendment**
*On behalf of Organizational Plaintiffs*
Against Florida Defendants, 42 U.S.C. § 1983

111.    The First Amendment, as applied to state and local government agencies and officials by the Fourteenth Amendment, prohibits governmental entities from abridging the freedom of speech or association. U.S. Const. Amend. I.

112.    Organizational Plaintiffs have a right to free speech and association under the First Amendment, which includes the right to speak to clients, prospective clients, and witnesses about their legal rights and about potential civil rights claims, and to represent them in court, because those activities by SOS are modes of expression and association. *See, e.g., In re Primus*, 436 U.S. at 423-26; *Button*, 371 U.S. at 428-30; *Jean*, 711 F.2d at 1508-09.

113.    Organizational Plaintiffs' First Amendment right to free speech and association extends to communications with current or prospective clients who are in detention. *See Thornburgh* , 490 U.S. at 407-08 (those who wish to communicate with incarcerated people "have a legitimate First Amendment interest in access to prisoners"); *Procunier*, 416 U.S. at 408-09 (both incarcerated people and those with whom they correspond have First Amendment rights that can be infringed by unjustified government interference).

114.    By their actions and inactions, the Florida Defendants have denied Organizational Plaintiffs access to current and prospective clients incarcerated at Alligator Alcatraz, so that they may represent clients in pending immigration proceedings, or to obtain information from clients on potential constitutional violations at the facility. There is no legitimate governmental or penological interest justifying the Florida Defendants' policies and practices that have resulted in an interference and categorical denial of access for Organizational Plaintiffs to their current and prospective clients.

34

115.    The Florida Defendants have interfered with Organizational Plaintiffs' ability to carry out a core component of their public interest mission—namely, to protect and defend the rights of detained immigrants. The Florida Defendants accordingly have violated Organizational Plaintiffs' First Amendment right to freedom of speech and association.

116.    Organizational Plaintiffs have no clear and adequate remedy at law for this violation of their constitutional rights. They have suffered and will imminently suffer irreparable injury caused by Florida Defendants' policies, practices, and failures to act, and they are entitled to injunctive relief to avoid any further injury.

**COUNT V**
**Violation of Fifth Amendment Right to Procedural Due Process**
*On behalf of Victoria Slatton, third-party plaintiff on behalf of N.M.B.*
Against EOIR Defendants under the U.S. Constitution

117.    The Fifth Amendment of the U.S. Constitution guarantees N.M.B. the right to procedural due process in seeking a bond redetermination. The government may not unreasonably restrict this right.

118.    EOIR Defendants have failed to identify which immigration court has jurisdiction over Alligator Alcatraz and have failed to make available a means for attorneys representing people detained at Alligator Alcatraz to file petitions with the immigration court. In doing so, EOIR Defendants have failed to make available adequate procedures for N.M.B. to seek a bond redetermination.

119.    N.M.B. has a liberty interest in pursuing procedures made available by statute and regulation, and Board of Immigration Appeals precedent to seek his freedom from detention. *See* 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 1003.19(a). This liberty interest in freedom from detention is strong.

120.    EOIR Defendants have created a high risk that N.M.B. will be erroneously deprived his liberty, which could readily be cured by procedural safeguards by EOIR Defendants publicly stating which immigration court has jurisdiction over Alligator Alcatraz.

121.    EOIR Defendants have no governmental interest in hiding which immigration court has jurisdiction over Alligator Alcatraz.

122.    N.M.B. has no clear and adequate remedy at law for this violation of his constitutional rights and has and will suffer irreparable harm as a result of EOIR Defendants' conduct, which will continue until and unless enjoined by appropriate order of this Court.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request that the Court grant the following relief:

a.    Enter judgment for the Plaintiffs and the proposed class and against Defendants.

b.    Declare that DHS and Florida Defendants' actions violate the First Amendment rights of Detained Plaintiffs and the proposed class members to retain, consult, and communicate with counsel, and that the DHS and Florida Defendants' actions violate the Organizational Plaintiffs' First Amendment right to free speech and association.

c.    Declare that EOIR Defendants' actions violate the Fifth Amendment procedural due process rights of N.M.B. to a full and fair custody or bond redetermination.

d.    Order DHS and Florida Defendants forthwith to permit and ensure that Detained Plaintiffs and the proposed class members can meet and confer confidentially with counsel in person, and in scheduled, timely, free, confidential, unmonitored, and unrecorded attorney-client telephone conversations, with accommodations for interpretation, in order for counsel to advise them of their legal rights and to provide them with legal assistance.

e.      Order DHS and Florida Defendants to provide and ensure a method for Detained Plaintiffs and proposed class members to place timely, free, confidential, unmonitored, and unrecorded outgoing legal calls, and to individually provide detainees with clear instruction and process for doing so in English, Spanish, and Haitian Creole at book-in.

f.      Order DHS and Florida Defendants to provide and ensure a method for timely and confidential legal exchange and signature, including via fax, email, or electronic signature platform, courier service, and mail.

g.      Order DHS and Florida Defendants to maintain publicly available information regarding protocols for attorney-client communication via Defendant ICE and/or State of Florida websites.

h.      Order DHS and Florida Defendants to provide written information regarding protocols for attorney-client communication in English, Spanish, and Haitian Creole to all people detained by Defendants at Alligator Alcatraz.

i.      Order DHS and Florida Defendants to accurately update the location of detainees held at Alligator Alcatraz in Defendant Immigration and Customs Enforcement's Online Detainee Locator System within 24 hours of their transfer to the facility.

j.      Order EOIR Defendants to publicly indicate which immigration court has jurisdiction over Alligator Alcatraz, and to accept N.M.B.'s motion for custody redetermination when it is filed with that immigration court.

k.      Award Plaintiffs their costs and reasonable attorneys' fees in this action under the Equal Access to Justice Act, 42 U.S.C. § 1988, and on any other basis justified under law; and

l.      Grant any other and further relief that this Court may deem fit and proper.

Dated: July 16, 2025

Respectfully submitted,

*/s/ Eunice H. Cho*
Eunice H. Cho*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St. N.W., 7th Floor
Washington, DC 20005
202-548-6616
echo@aclu.org

Paul R. Chavez, Fla. Bar No. 1021395
Christina LaRocca, Fla. Bar No. 1025528
AMERICANS FOR IMMIGRANT
JUSTICE
2200 NW 72nd Ave.
P.O. Box No 520037
Miami, FL 33152
786-218-3381
pchavez@aijustice.org
clarocca@aijustice.org

Corene T. Kendrick*
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California St., Suite 700
San Francisco, CA 94104
(415) 343-0770
ckendrick@aclu.org
kvirgien@aclu.org

Amy Godshall, Fla. Bar No. 1049803
Daniel Tilley, Fla. Bar No. 102882
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF FLORIDA
4343 West Flagler Street, Suite 400
Miami, FL 33134
786-363-2714
agodshall@aclufl.org
dtilley@aclufl.org

*Counsel for All Plaintiffs and the Proposed Class*

*\* Motions to appear pro hac vice forthcoming.*