UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-23182

**C.M.**, et al.,

                      *Plaintiffs*,

    v.

**Kristi Noem**, Secretary of the United States Department of Homeland Security, in her official capacity, et al.,

                      *Defendants*.

**PLAINTIFFS' EXPEDITED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs C.M., Borrego, J.M.C., and E.R., by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 65(a) and (b), and S.D. Fla. L.R. 7.1(d), respectfully file this motion for expedited relief[1] seeking entry of a temporary restraining order ("TRO") by July 21, 2025, and preliminary injunction during the pendency of this action seeking declaratory and injunctive relief to ensure access to counsel and the ability to file petitions and documents with the Immigration Court, as required under the First and Fifth Amendments of the U.S. Constitution, to people held in the immigration detention center known as "Alligator Alcatraz."[2]

---

[1] Expedited relief is required under Southern District of Florida L.R. 7.1(d)(2) because, as set forth herein, Plaintiffs are currently barred in the entirety from speaking with counsel, or filing any documents with the immigration court to move for release from detention, which may irreparably prejudice Plaintiffs and proposed class members. Notice of this motion has been provided by electronic mail to the United States Attorneys' Office for the Southern District of Florida, and the Florida Attorney General's Office.

[2] *See* Ana Ceballos, *Alligator Alcatraz Is No Nickname. It's Detention Camp's Official Name*, Tampa Bay Times (Jul. 1, 2025), https://www.tampabay.com/news/florida/2025/07/01/alligator-alcatraz-is-no-nickname-its-detention-camps-official-name; Raisa Habersham, *As the Jokes Fly,*

1

## INTRODUCTION

Less than four weeks ago, the state of Florida began to construct a temporary immigration detention facility made of tents, trailers, chain-link fence, and barbed wire in the middle of the Florida Everglades, approximately 50 miles from Miami. Now known as "Alligator Alcatraz," the facility has the capacity to hold at least 3,000 people and is directly surrounded by wetland swamp, home to wildlife, including alligators and venomous snakes.[3] President Trump has celebrated the location of this facility, noting that, "[W]e're going to teach them how to run away from an alligator if they escape prison . . . . The only way out, really, is deportation."[4]

Defendants currently hold approximately 700 immigrant detainees at the facility,[5] and have barred detained immigrants from communicating confidentially with legal counsel. No protocols exist at this facility for providing the standard means of confidential attorney-client communication, such as in-person attorney visitation and phone or video calls that are available at any other detention facility, jail, or prison. The only way that detainees can communicate with the outside world is via infrequent access to collect pay phone calls that are monitored and recorded, and last approximately five minutes.

---

*Alligator Alcatraz Evokes Racist Trope of 'Gator Bait'*, Miami Herald (Jul. 10, 2025), https://www.miamiherald.com/news/state/florida/article310224360.html (discussing historical "gator bait" trope used to dehumanize Black people and its application in naming of the facility).
[3] Chelsea Bailey, Isabel Rosales & Alaa Elassar, *'Alligator Alcatraz': What to Know About Florida's New Controversial Migrant Detention Facility*, CNN (Jul. 13, 2025), https://www.cnn.com/2025/07/01/us/what-is-alligator-alcatraz-florida.
[4] https://apnews.com/article/trump-everglades-immigrant-detention-facility-visit-5dc5568ec15534947c29c9149b773d1d Adriana Gomez Licon & Will Weissert, *Trump Tours Florida Immigration Lockup and Jokes about Escapees Having to Run from Alligators*, Associated Press (Jul. 1, 2025), https://apnews.com/article/trump-everglades-immigrant-detention-facility-visit-5dc5568ec15534947c29c9149b773d1d.
[5] Ana Ceballos et al., *Exclusive: Hundreds at Alligator Alcatraz Have No Criminal Charges, Miami Herald Learns*, Miami Herald (Jul. 13, 2025), https://www.miamiherald.com/news/local/immigration/article310541810.html.

The individual Plaintiffs in this case, C.M., Borrego, J.M.C., and E.R., (collectively "Detained Plaintiffs") are immigrants detained at Alligator Alcatraz, who wish to communicate confidentially with legal counsel. They are or may be eligible for release on bond and have pending immigration cases for which they need to file documents with the immigration court. Plaintiffs Florida Keys Immigration, Law Offices of Catherine Perez PLLC, Sanctuary of the South, and U.S. Immigration Law Counsel (collectively "Organizational Plaintiffs") are legal service organizations and law firms that have retained prospective clients detained at the facility with whom they have not been able to contact or communicate with in a confidential manner. The restrictions on attorney access violate the First Amendment rights of all Plaintiffs and the proposed class, and the restrictions on detainees' ability to file documents with the immigration court violate the Detained Plaintiffs' Fifth Amendment protections for procedural due process.

Accordingly, the Detained Plaintiffs, on behalf of themselves and the proposed class, and the Organizational Plaintiffs respectfully seek a TRO and preliminary injunction requiring Defendants to permit attorney-client communication at Alligator Alcatraz.

## FACTUAL BACKGROUND

Immigrants held at Alligator Alcatraz are civil detainees, held pursuant to allegations of federal immigration, not criminal law. Detainees held at Alligator Alcatraz have no ability to communicate confidentially with legal counsel. The only way that detainees can communicate with the outside world is via infrequent access to collect pay phone calls that are monitored and recorded, and last approximately five minutes. Decl. Katherine Blankenship ¶ 31; Decl. Saman Movassaghi Gonzalez ¶ 23; Decl. Catherine Perez ¶ 19.

Defendants have failed to issue any publicly available information or protocols regarding attorney access at Alligator Alcatraz. Movassaghi Gonzalez Decl. ¶¶ 8, 12; Perez Decl. ¶ 10. As a

3

result, attorneys have fruitlessly attempted to confirm their clients' detention at the facility and to find any confidential way to communicate with them. Blankenship Decl. ¶ 12; Movassaghi Gonzalez Decl. ¶¶ 8, 17-18; Perez Decl. ¶¶ 9-14; Decl. Amanda Velazquez ¶¶ 6-7. ICE's online detainee locator has resulted in no information regarding people known to be detained at the facility, or it has directed attorneys to agency staff who have no information as to how attorneys can communicate with detainees at Alligator Alcatraz. Blankenship Decl. ¶ 12; Decl. Sandra Cherfrere ¶ 4; Decl. Phillip Issa ¶ 4; Movassaghi Gonzalez Decl. ¶ 8; Perez Decl. ¶ 9 & Ex. A; Velazquez Decl. ¶¶ 6-8. Attorneys have contacted legislators and state agencies to try and find any means of establishing contact with their clients, but to no avail. Blankenship Decl. ¶¶ 7, 15 & Ex. 2. ICE's Miami Field Office has rebuffed inquiries about contacting detainees at the facility. Blankenship Decl. ¶ 14 & Ex. 1; Perez Decl. ¶ 12 & Ex. B. An email address provided by officials reported to be used for arranging attorney-client communication at the facility results in bounced-back messages. Issa Decl. ¶¶ 12-13; Movassaghi Gonzalez Decl. ¶¶ 13-14, 16-18.

Attorneys who have driven to the facility to attempt to meet their clients in person have been greeted at a military checkpoint and barred from entry. Blankenship Decl. ¶¶ 16-19; Cherfrere Decl. ¶¶ 4-6, 15; Decl. Troy Elder, ¶¶ 5-12; Issa Decl. ¶¶ 6-10, 12. Attorneys have waited in their cars in the hopes of meeting with their clients, only to be told hours later that they cannot enter the facility. Blankenship Decl. ¶¶ 16-19; Movassaghi Gonzalez Decl. ¶ 10. At one point, facility staff informed attorneys that a "Legal Counsel Visitation Request Form" available only to attorneys who drive to the facility is the only way to request a virtual visit with clients at the facility. Blankenship Decl. ¶ 21 & Ex. 3; Cherfrere Decl. ¶ 12. Facility emails resulting from submission of this form do not provide specific information about how a call with a client might proceed, which client the call may be with, or the planned time for the call. Blankenship Decl. ¶ 25 & Ex.

4

6. Moreover, these promised calls have not taken place, but rather, have been canceled by the facility. *Id.*; Cherfrere Decl. ¶ 16-18. Other attorneys who travel to the facility to meet with detainees have been told that they must apply and obtain approval before any future visit, with no specific timeline for when approval might be granted. Elder Decl. ¶ 10.

There is no way for detainees and their counsel to confidentially exchange legal documents. The Legal Counsel Visitation Request Form also requires attorneys to submit copies of any documents planned for review with the client for approval by the facility. Blankenship Decl. Ex. 3.

## LEGAL STANDARD

The Court should grant a preliminary injunction if Plaintiffs establish: (1) "a substantial likelihood of success on the merits," (2) "that the preliminary injunction is necessary to prevent irreparable injury," (3) "that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant[s]," and (4) "that the preliminary injunction would not be averse to the public interest." *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014). The same test applies to a motion for a temporary restraining order. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

## ARGUMENT

**I.     Plaintiffs Are Likely to Succeed on the Merits.**

**A. Defendants' Denial of Access to Counsel Violates Detainee Plaintiffs' Constitutional Rights.**

**1. The Defendants' Denial of Access to Counsel Violates Detainee Plaintiffs' First Amendment Rights.**

Defendants Noem, Department of Homeland Security ("DHS"), Lyon, Immigration and Customs Enforcement ("ICE"), and Ripa (collectively "DHS Defendants") and Defendants

DeSantis, Green, Guthrie, and Florida Division of Emergency Management ("FDEM") (collectively "Florida Defendants") have imposed significant and unreasonable barriers to attorney access to immigrant detainees held at Alligator Alcatraz, in violation of the First Amendment. Incarcerated people have a "First Amendment free speech right to communicate with [their] attorneys . . . ." *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008). *See also DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) (under "clearly established First Amendment rights of association and free speech," prisoners have the right to "retain and consult with an attorney"); *Lashbrook v. Hyatte*, 758 F. App'x 539, 541 (7th Cir. 2019) ("The First Amendment protects a prisoner's right to consult with an attorney . . . ."). A restriction that "interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech." *Al-Amin*, 511 F.3d at 1334 (quoting *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006)).

This is not a close case. The DHS and Florida Defendants have imposed attorney access restrictions that have fully foreclosed the ability of immigrants detained at the facility to speak to counsel in a confidential manner, in clear violation of the First Amendment. The only way for detainees to speak with anyone outside the facility is via an infrequent, paid, collect phone call system that is monitored and recorded, where calls last for approximately five minutes. Blankenship Decl. ¶ 31; Movassaghi Gonzalez Decl. ¶ 23; Perez Decl. ¶ 19. These Defendants have failed to confirm whether detainees are held at the facility through their online locator websites and have directed attorneys to faulty email addresses or offices that have no information on how attorneys can communicate with clients at the facility. Blankenship Decl. ¶¶ 12, 23 & Ex. 4; Cherfrere Decl. ¶ 4; Issa Decl. ¶ 4; Movassaghi Gonzalez Decl. ¶¶ 8, 17-18; Perez Decl. ¶ 9 & Ex. A; Velazquez Decl. ¶¶ 6-8. Defendants have restricted attorney access by failing to establish

any policy or mechanism for detainees and counsel to speak with each other in person, over the phone, or via video call. Movassaghi Gonzalez Decl. ¶¶ 8, 22; Perez Decl. ¶ 10. Defendants have failed to make any information publicly available instructing how attorneys and detainees may communicate with each other. Movassaghi Gonzalez Decl. ¶¶ 8, 12; Perez Decl. ¶¶ 10-11.

Attorneys who have attempted to visit clients in person at the facility are stopped at military checkpoints and barred from entry. Blankenship Decl. ¶¶ 16-19; Cherfrere Decl. ¶¶ 4-6, 15; Elder Decl. ¶¶ 5-12; Issa Decl. ¶¶ 6-10, 12. Although the facility has developed a "Legal Counsel Visitation Request Form," attorneys who fill out the form are instructed that they cannot visit with their clients in person, and that the facility will respond in a "twenty-four to forty-eight hours" to set up a legal call. Blankenship Decl. ¶ 21 & Ex. 3; Cherfrere Decl. ¶¶ 11-12. Emails sent to attorneys resulting from these requests provide no specific information as to how a call with a client might proceed, which client the call might be with, any instructions for connecting to the call, or specific times for the call. Blankenship Decl. ¶ 25 & Ex. 6. Even the vague promises made for a legal call from this email address have been canceled. *Id.*; Cherfrere Decl. ¶ 18. The "Legal Counsel Visitation Request Form" further requires attorneys "to attach copies of legal documents you intend to bring for approval. All items are subject to inspection and must be pre-approved." Blankenship Decl. Ex. 3. These restrictions are flagrant violations of First Amendment protections that require detainees to be able to communicate, including in a confidential manner, with counsel. *Al-Amin*, 511 F.3d at 1334.

The government's restrictions on attorney-client communication at Alligator Alcatraz violates detained immigrants' First Amendment rights. This denial of attorney access lacks any reasonable relation to legitimate governmental interests. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *Pesci v. Budz*, 935 F.3d 1159, 1166 (11th Cir. 2019) (modifying *Turner* standard for civil

7

detainees). The federal government itself requires that immigration detention facilities provide detainees with access to counsel. Indeed, DHS Secretary Noem has stated that conditions at Alligator Alcatraz are "held to the same standard that all federal facilities are."[6]

Federal immigration detention standards, of course, require that detainees have access to confidential communication with counsel. ICE's National Detention standards require in-person legal visits, Standard 5.5.II.G.3; require private, unmonitored legal calls, Standard 5.4.II.J-K; and bar staff from reading written communications to or from legal counsel, Standard 5.1.II.E.2.[7] Immigration detention is "civil, not criminal," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), and even prisons are required to provide means for confidential attorney-client communication. The Federal Bureau of Prisons also provides attorney visits in a "private conference room, if available," requires confidential legal mail, and facilitates at least some unmonitored legal telephone calls. 28 C.F.R. §§ 540.19(a), 540.103, 543.13(a)-(b) (2025). Florida's state prison system likewise guarantees in-person legal visits in a location that "insure[s] . . . privacy," unmonitored legal calls, and confidential legal mail. Fla. Admin. Code Ann. r. 33-210.102(2)(c)-(e), (8)(d), 33-602.205(3)(a), 33-601.711(5) (2025). Because the individual Plaintiffs and the proposed class are likely to prevail upon their claim that their First Amendment rights have been violated, a TRO and preliminary injunction should issue.

### 2. Defendants' Denial of Access to Counsel Violates the First Amendment Rights of Organizational Plaintiffs.

---

[6] Mandy Taheri, *Five States in Talks for Detention Centers Like 'Alligator Alcatraz'—Noem*, Newsweek (Jul. 12, 2025), https://www.newsweek.com/five-states-talks-detention-centers-alligator-alcatraz-kristi-noem-2098212.

[7] Immigr. and Customs Enf't, National Detention Standards (2025), https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf [https://perma.cc/3P2T-F382].

The Defendants' ban on attorney-client communication also violates the First Amendment rights of the Organizational Plaintiffs. Organizational Plaintiffs are legal services organizations and law firms whose mission is to provide immigration legal services to immigrants, including people in detention. Blankenship Decl. ¶ 3; Movassaghi Gonzalez Decl. ¶ 3; Perez Decl. ¶ 2; Velazquez Decl. ¶ 2. The Organizational Plaintiffs represent people currently detained at the facility. Blankenship Decl. ¶¶ 4, 8; Movassaghi Gonzalez Decl. ¶ 3; Perez Decl. ¶ 3; Velazquez Decl. ¶ 4. Plaintiff SOS has prospective clients detained at the facility whose families, on their behalf, have requested that SOS represent them in their immigration proceedings, but with whom attorneys have not yet been able to meet due to attorney access restrictions at the facility. Blankenship Decl. ¶ 32.

The First Amendment protects a lawyer's ability to advise people of their legal rights and solicit prospective litigants. *NAACP v. Button*, 371 U.S. 415, 428-29 (1963). For legal service organizations, "litigation is not a technique of resolving private differences; it is a form of political expression and political association." *In re Primus*, 436 U.S. 412, 428 (1978) (quotation marks and citation omitted). In *Jean v. Nelson*, the Eleventh Circuit upheld the "purely legal claim" brought under the First Amendment by Plaintiff Haitian Refugee Center to be able to speak with potential clients in immigration detention, holding that "if *Button* and *Primus* mean anything they permit legal counsel to inform individuals of their legal rights when counsel does so as an exercise of political speech unaccompanied by expectation of renumeration." 711 F.2d 1455, 1508-09 (11th Cir. 1983), *on reh'g,* 727 F.2d 957 (11th Cir. 1984), *aff'd,* 472 U.S. 846 (1985); *see also Haitian Refugee Ctr. v. Baker*, 953 F.2d 1498, 1513 (11th Cir. 1982) (holding that "*Button* and *In re Primus* recognize a narrow First Amendment right to associate for the purpose of engaging in litigation as a form of political expression.").

Policies or actions that unreasonably impede communication between attorneys and detained people violate attorneys' First Amendment rights. *See Jean*, 711 F.2d at 1508-09; *see also Procunier v. Martinez*, 416 U.S. 396, 408-09 (1974) (holding that both counsel and an incarcerated person "derive[] from the First and Fourteenth Amendments a protection against unjustified governmental interference with the[ir] intended communication." (citations omitted)); *Haitian Ctr. Council v. Sale*, 823 F. Supp. 1028, 1040 (E.D.N.Y. 1993) (denial of legal advocacy group's access to Haitian detainees at Guantanamo Bay violates the group's speech and associational rights). The First Amendment's protections extend to all stages of communication between attorneys and prisoners, including prior to representation. *See, e.g.*, *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 644-45 (6th Cir. 2015); *Immigr. Defs. L. Ctr. v. Mayorkas*, No. CV 20-9893 JGB (SHKx), 2023 WL 3149243, at *35 (C.D. Cal. Mar. 15, 2023).

As detailed amply in the declarations, here there is a categorical restriction on attorneys' ability to meet with retained and prospective immigrant clients. Organizational Plaintiffs have provided significant evidence that they have been unable to meet with their retained and prospective clients. *See, e.g.*, Blankenship Decl. ¶¶ 5, 25, 32 & Ex. 6; Movassaghi Gonzalez Decl. ¶ 22; Perez Decl. ¶ 24; Velazquez Decl. ¶¶ 5, 12.[8] Due to the lack of any policy or process for Organizational Plaintiffs to contact or meet with current or prospective clients incarcerated at Alligator Alcatraz, they cannot provide legal counsel or advice to these people, nor can they properly represent them in immigration proceedings. *Id.*

The DHS and Florida Defendants, who are government officials, are unreasonably interfering with Organizational Plaintiffs' First Amendment rights, and can offer no explanation

---

[8] Other Florida immigration attorneys report similar repeated denials of access to their clients at Alligator Alcatraz. Cherfrere Decl. ¶ 20; Elder Decl. ¶¶ 13-14; Issa Decl. ¶ 14.

as to how their complete abridgment of the right to counsel is "reasonably related to legitimate penological interests" so as to justify overriding the First Amendment rights of the Organizational Plaintiffs. *Turner*, 482 U.S. at 89-91; *see also Pesci*, 935 F.3d at 1166 (modifying *Turner* standard for civil detainees).

Accordingly, Organizational Plaintiffs are likely to prevail upon their claim that their First Amendment rights have been violated, and a TRO and preliminary injunction should issue.

## II. The Government's Denial of Access to Counsel at Alligator Alcatraz Causes Plaintiffs Irreparable Harm.

The restrictions Defendants have placed on the Plaintiffs and the proposed class have caused them irreparable harm.

Detained Plaintiffs and class members' inability to speak with counsel has prolonged their detention, impacted their removal cases, and prevented them from obtaining relief from dangerous conditions. For example, Plaintiff Borrego was unable to obtain medical attention at Alligator Alcatraz until his condition progressed to the point where he was severely bleeding, requiring him to be rushed to the hospital. Blankenship Decl. ¶ 34 After receiving emergency surgery, he was returned to the facility, where staff did not provide him with his post-surgical antibiotics prescribed by the hospital. *Id.* Held in hot, humid conditions without these antibiotics, he now reports pus coming out of his operation site. *Id.* U.S.-ILC's inability to communicate confidentially with its client has prevented it from filing a bond motion. Americans for Immigrant Justice's inability to communicate confidentially has prevented it from taking on prospective clients, potentially prolonging this client's and these prospective clients' detention. Cherfrere Decl. ¶ 20; Elder Decl. ¶¶ 13-14; Issa Decl. ¶ 14. Leaving class members in prolonged detention at a dangerous facility where they are unable to contact counsel to communicate medical issues and other urgent problems places them at serious risk of prolonged detention, injury, and death—all of which are irreparable.

11

*Fla. Immigrant Coal. v. Uthmeier*, No. 25-21524-CV, 2025 WL 1423357, at *12 (S.D. Fla. Apr. 29, 2025) (finding the risk of unlawful "detention" supported irreparable harm); *Rosemarie M. v. Morton*, 671 F. Supp. 2d 1311, 1313 (M.D. Fla. 2009) (finding delaying surgery to address persistent bleeding supported irreparable harm). For similar reasons, multiple other courts have found unreasonable restrictions on access to counsel in ICE detention to constitute irreparable harm. *See, e.g.*, *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, Civil Action No. CV 18-760 (CKK), 2020 WL 3265533, at *32 (D.D.C. June 17, 2020); *Torres v. U.S. Dep't of Homeland Sec.*, Case No. EDCV 18-2604 JGB (SHKx), 2020 WL 3124216, at *8 (C.D. Cal. Apr. 11, 2020).

The Organizational Plaintiffs have also suffered irreparable harm. As detailed above, Defendants' policies place the Organizational Plaintiffs' clients at risk of irreparable harm, which suffices for their own harm. *Robinson v. Marshall*, 454 F. Supp. 3d 1188, 1205 (M.D. Ala. 2020) (finding an "increase in medical risk" to plaintiff medical providers' patients to show irreparable harm), *aff'd sub nom., Robinson v. Att'y Gen,*, 957 F.3d 1171 (11th Cir. 2020); *S. Poverty L. Ctr.*, 2020 WL 3265533, at *32 (finding irreparable harm because "delays and substantially restricted access to counsel[]" in ICE detention centers caused a plaintiff legal organization's clients "irreparable injuries related to the proceedings for which Plaintiff's clients are preparing"). Additionally, these restrictions impair the Organizational Plaintiffs' ability to speak with prospective and current clients and to effectively represent them, placing a burden on the Organizational Plaintiffs' ability to initiate and maintain client relationships. Blankenship Decl. ¶¶ 5, 7, 32; Movassaghi Gonzalez Decl. ¶ 4; Perez Decl. ¶ 24; Velazquez Decl. ¶ 5; *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) ("[T]he loss of customers and goodwill is an irreparable injury." (quotation marks and citation omitted)).

### III. The Balance of Equities and the Public Interest Weigh Heavily in Plaintiffs' Favor.

The balance of equities tips in Plaintiffs' favor, and an injunction is in the public interest. In contrast to the real and severe harms the class faces, Defendants have no legitimate interest in restricting attorney access at Alligator Alcatraz. This is evident because DHS Defendants are readily able to provide attorney access at other ICE detention facilities and Florida Defendants are readily able to provide it in their prison system. ICE, *Performance Based National Detention Standards 2011*, 360, 389-91, 398-401 (Rev. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf [https://perma.cc/GE73-8PRM] (providing confidential visits, telephone calls, and mail at ICE detention centers); Fla. Admin. Code Ann. r. 33-210.102(2)(c)-(e), (8)(d), 33-602.205(3)(a), 33-601.711(5) (providing private attorney visits, unmonitored legal calls, and confidential legal mail in Florida state prisons). The burden on a governmental agency is minimal when an injunction imposes attorney access requirements that are "no more than what is required by" the agency's own regulations. *S. Poverty L. Ctr.*, 2020 WL 3265533, at *33.

For these reasons, the "public interest does not support [Defendants'] expenditure of time, money, and effort in" holding the class under attorney-access restrictions likely to be found unconstitutional. *Fla. Businessmen for Free Enterprise v. City of Hollywood*, 648 F.2d 956, 959 (11th Cir. 1981); *see also Hispanic Interest Coalition of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1249 (11th Cir. 2012) (holding that the equities favored an injunction against a state law, where the state of "Alabama [had] no interest in enforcing a state law that [was] unconstitutional, and the interference with the educational rights of undocumented children [was] not a harm that [could] be compensated by monetary damages").

### IV. The Court Should Not Require Plaintiffs to Provide Security Prior to the Temporary Restraining Order.

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damage sustained by any party found to have been wrongfully enjoined or restrained." Decisions regarding the security required to be posted in connection with the issuance of preliminary relief "are entrusted to the discretion of the district court," including the discretion to "elect to require no security at all." *Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres*, 910 F.3d 1130, 1171 (11th Cir. 2018) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978)). District courts exercise this discretion to require no security in cases brought by indigent, detained, and/or incarcerated people, those seeking to exercise their constitutional rights, and in cases that benefit the public interest. *See, e.g. Campos v. I.N.S.,* 70 F. Supp. 2d 1296, 1310 (S.D. Fla. 1998); *Cruz v. Dudek*, No. 10-23048-CIV, 2010 WL 4284955, at *16 (S.D. Fla. Oct. 12, 2010), report and recommendation adopted sub nom. *Cruz v. Arnold*, No. 10-23048-CIV, 2010 WL 11601831 (S.D. Fla. Nov. 24, 2010); *Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F. Supp. 2d 1326 (M.D. Fla. 2009); Wright & Miller, Fed. Practice & Proc. § 2954. This court should do so here.

## CONCLUSION

For the aforementioned reasons, Plaintiffs' motion should be granted.

Dated: July 16, 2025                                              Respectfully Submitted,

/s/ Paul R. Chavez                                                /s/ Eunice H. Cho
Paul R. Chavez (Fla. Bar No. 1021395)        Eunice H. Cho*
Christina LaRocca (Fla. Bar No. 1025528)    AMERICAN CIVIL LIBERTIES UNION
AMERICANS FOR IMMIGRANT                       FOUNDATION
JUSTICE                                                              915 15th St. N.W., 7th Floor
2200 NW 72nd Ave                                           Washington, DC 20005
P.O. Box No 520037                                          202-548-6616

Miami, FL 33152
786-218-3381
pchavez@aijustice.org
clarocca@aijustice.org


Amy Godshall, Fla. Bar No. 1049803
Daniel Tilley, Fla. Bar No. 102882
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF FLORIDA
4343 West Flagler Street, Suite 400
Miami, FL 33134
786-363-2714
agodshall@aclufl.org
dtilley@aclufl.org

echo@aclu.org

Corene Kendrick*
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
ckendrick@aclu.org
kvirgien@aclu.org

*Attorneys for Plaintiffs*

*\* Motions to appear pro hac vice forthcoming.*

15