DECLARATION OF TROY ELDER

I, Troy Elder, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.
2. I am the Director of the Detention Program at Americans for Immigrant Justice ("AI Justice"), a nonprofit law firm providing legal representation and advocacy for immigrants detained in the United States.
3. I am an attorney licensed and in good standing in the state of New York. I regularly conduct visits to detention facilities to meet with clients and prospective clients who have contacted our legal hotline seeking assistance.  These visits permit me, and those I oversee, such as attorneys and paralegals, to review prospective clients' documents and consider accepting them for representation. Pursuant to the ordinary course of business, I did not schedule my visits beforehand. As an attorney, I have never been required to schedule an in-person visit with a person detained in an ICE facility, either as their legal representative or as an attorney providing a pre-representation consultation.
4. On July 14, 2025, at approximately 11:40 a.m., I attempted to conduct an in-person legal visit at the facility commonly referred to as "Alligator Alcatraz," located along the Tamiami Trail in Florida.
5. Upon approaching the facility entrance, I observed significant physical and security barriers, including approximately 10- to 12-foot-tall, meshed barriers rather than standard chain-link fencing. The entrance area was heavily lit with portable floodlights and patrolled by multiple uniformed personnel. Signage reading "FDEM" (Florida Department of Emergency Management) was posted in various locations.
6. At least two Florida National Guard members in combat fatigues were visibly armed with machine guns, and several state troopers were present. One officer appeared to be using a laptop set up on top of a cooler under a mosquito-netted tent.
7. At the checkpoint, about a quarter-mile down the access road to the entrance, I identified myself as an attorney and presented my state bar registration and state-issued identification. I explained that I was there to see multiple detained individuals who had contacted me through our nonprofit hotline requesting legal assistance.
8. I handed a copy of the list of individuals to one of the two Florida National Guard members who approached my vehicle.
9. I showed my business card to the Florida National Guard member who was summoned to my vehicle's passenger side.   His badge identified him as "F. Perdomo" and he was wearing a vest that said "POLICE".
10. I was told by that officer that I could not "drive up and say [I] want to see people." The officer instructed me that in order to gain access, I needed to contact the Florida Department of Corrections (FDC), which was purportedly overseeing operations at the

    facility. The officer further explained that I would be required to apply and obtain approval before any future visit and that my name would have to appear on an approved list of visitors. The officer could not provide any specific timeline for when approval might be granted, stating only that some individuals had been able to return the following week but that "it all depends."

11. The officer did not provide any phone number or other contact information for FDC or any other entity.
12. Following this exchange, I was instructed to turn my vehicle around and exit the premises. As I departed, I noted additional security measures, including illuminated stop signs, shuttle service pickup points, and muddy lots surrounded by further barricades. I also observed two state trooper vehicles — one stationed at the exit onto the Tamiami Trail with flashing lights, and another positioned near the checkpoint.
13. To my knowledge, at least ten detained individuals at this facility had specifically requested legal assistance through AI Justice's detention hotline. Despite presenting valid attorney credentials and providing the names of the individuals, I was denied access and not given any clear, accessible procedure to arrange timely visits. The heavily militarized environment and ambiguous administrative oversight pose significant barriers to detained individuals' constitutional and statutory rights to access counsel.
14. My experience on July 14, 2025, demonstrates the extreme obstacles attorneys face in attempting to meet with detained immigrants at "Alligator Alcatraz." The combination of militarized security, lack of clear access procedures, and arbitrary administrative practices effectively denies detainees meaningful access to legal representation.

Executed on July 16, 2025, at Miami, Florida.

/s/ *[signature]*

Troy Elder, Esq.