UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION

---------------------------------x

C.M., *et al.*,

Plaintiffs,

v. 2:25-cv-747-SPC-KCD

SECRETARY KRISTI NOEM,
*Secretary of the United States Department of Homeland Security, et al.*,

Status Conference

Defendants.

---------------------------------x

September 4, 2025
1:30 p.m.

Before:

HON. SHERI POLSTER CHAPPELL,

District Judge

APPEARANCES

AMERICAN CIVIL LIBERTIES UNION
Attorneys for Plaintiffs
915 15th St. NW
Washington, DC 20005
BY: EUNICE HYUNHYE CHO

ACLU FOUNDATION OF FLORIDA, INC.
Attorneys for Plaintiffs
4343 West Flagler Street, #400
Miami, FL 33134
BY: AMY GODSHALL

Michael McDaniel, RMR, FCRR
Official Court Reporter
2110 First Street
Fort Myers, Florida 33901
michael_mcdaniel@flmd.uscourts.gov
(239) 461-2064

Proceedings recorded by machine shorthand
Transcript produced by computer-assisted transcription

APPEARANCES (Continued)

UNITED STATES ATTORNEY'S OFFICE
Attorneys for Federal Defendants Noem, et al.
2110 First Street, Suite 3-137
Fort Myers, FL 33901
BY: CHAD C. SPRAKER, Assistant United States Attorney

SHUTTS & BOWEN, LLP
Attorneys for Florida Defendants DeSantis and Guthrie
200 South Biscayne Boulevard, Suite 4100
Miami, FL 33131
BY: NICHOLAS JOHN PETER MEROS

(1:34 p.m.)

COURTROOM DEPUTY: Calling case 2:25-cv-747-SPC-KCD, C.M., et al. v. Kristi Noem, et al.

THE COURT: Counsel, please introduce yourselves for the record.

MS. CHO: Thank you, Eunice Cho on behalf of plaintiffs.

MS. GODSHALL: Amy Godshall on behalf of plaintiffs.

MR. MEROS: Good afternoon, your Honor, Nick Meros on behalf of Governor DeSantis and Executive Director Guthrie.

MR. SPRAKER: Good afternoon, Chad Spraker on behalf of federal defendants.

THE COURT: Good afternoon. As you're all aware, on August 18th of this year, just a few weeks ago, this case was transferred by the Honorable Rodolfo A. Ruiz, II, to the Middle District of Florida from the Southern District. And given kind of the lightening pace of things as they happen in the ever-changing atmosphere, I did want to set the status conference to discuss how things that happened in the other district might affect us and then just really get our own schedule set up.

And I would just note that I do appreciate counsel answering the Court's questions that it had and just sitting down and really discussing things so that hopefully we can have a robust discussion as to how we're going to proceed from here.

So I thank you for doing that. I have had the opportunity to read over your joint statement, and I still had a few questions for you or at least some comments as to how we move forward from here.

So I guess to get the lay of the land, it's my understanding from the status report that if the Eleventh Circuit stays or overturns Judge Williams' preliminary investigation or preliminary situation then the defendants will continue to detain people at Alligator Alcatraz, is that correct?

MR. MEROS: Yes, your Honor. On behalf of the state defendants, yes, your Honor.

THE COURT: All right.

MR. SPRAKER: And your Honor, on behalf of the federal defendants, the only thing I want to clarify on that is that I believe in the plaintiffs' status report they indicated that the defendants plan to continue to operate the facility, should they receive a stay. It is the federal defendants' position that they are not operating Alligator Alcatraz.

And I think that's significant because there's a couple of places in Judge Ruiz's order where it indicated that plaintiffs had made no specific allegation that the state defendants have engaged in acts or omissions pursuant to the federal defendants' instructions. And so as far as the operation of that facility, we wanted to clarify that for the

Court.

THE COURT: All right. Thank you.

All right. Then I guess first asking then the state defendants, Mr. Meros, is it correct that, based upon the order, no detainees are being moved into the facility based upon Judge Williams' order?

MR. MEROS: Yes, your Honor. It's our understanding that ICE is no longer bringing detainees to the facility. There are still detainees at the facility, and we do not know from ICE if there are any concrete plans to remove more detainees, but I know they have been reducing it down to a small number.

THE COURT: Do you have any idea at this point how many detainees remain?

MR. MEROS: There are around a hundred at the time, but again, there are no concrete plans that we know of for ICE to take more detainees away. I know the plan was not to continue bringing more in, but there's no concrete plan that we know of to take more away.

Now again, it is also a temporary facility. This is a facility where they're not supposed to stay for a long time. So it may be that people are removed through the normal process. If they have a removal order or things like that, they might leave the facility that way, but we don't know of any ICE plans to transfer to other facilities.

THE COURT: Okay. So based upon the order, Judge

Williams' order, her preliminary injunction, after 60 days, though, all of those detainees will be removed, or are you saying not at this point?

MR. MEROS: So I mean, I don't want to speak for my colleagues representing in that case, I'm not involved in that case, but I know our plan is to comply with Judge Williams' order. I don't know the details of that. I just know for the number of detainees we have at the facility, and as far as it goes with ICE, what the plan is to remove people. But I'm not sure how they are complying with the order, I just know that ICE is not bringing more detainees to the facility.

THE COURT: Okay. Go ahead, Mr. Spraker.

MR. SPRAKER: Your Honor, the only thing I would add to that particular question is as of yesterday, from what I understand, I am authorized to share that there was approximately 120 to 125 detainees at Alligator Alcatraz.

THE COURT: Do we know whether any of the named plaintiffs are still in Alligator Alcatraz?

MR. MEROS: So I know, from our perspective, as of Judge Ruiz's order, there were only three of twelve that are still there. That obviously was -- I believe his order was August 18th. So would defer to plaintiffs to know that for sure.

THE COURT: Ms. Cho, can you shed any light on that?

MS. CHO: Yes. We don't believe any of the named

plaintiffs in the supplemental complaint are any longer at the facility. However, there are several -- as defendants indicated, there are still many people who are still at the facility.

THE COURT: All right. Given how -- and I understand, Mr. Meros, your indication, obviously you're not handling the *Friends of the Everglades* situation. We're here on this situation. But there is a motion to stay the preliminary injunction, the responses I believe are filed, the reply is due tomorrow, I believe, in reading through things. Do the parties have a sense of how quickly the Eleventh Circuit, once all of the briefing is completed, would move on any of this to stay or -- I'm not as familiar with their dockets and how they handle that.

MR. MEROS: Yes, I'm not certain. I do know that in the motion to stay we asked -- we, as in the state, asked both for an administrative stay as well as a motion to stay. So we asked for the administration pending the ruling on the motion to stay. I know the Eleventh Circuit typically does that fairly quickly, whether to stay or not. So I would imagine it would be fairly quick, but I don't want to speak for the Eleventh Circuit.

THE COURT: I don't think any of us can, but at least getting a good idea perhaps of how they handle these things is helpful.

What, Mr. Meros, then is your position if the case is deemed to proceed and the Eleventh Circuit denies the stay?

MR. MEROS: Well, if the case -- if the Eleventh Circuit denies the administrative stay and the motion to stay, it's our position that we would comply with Judge Williams' order to, I believe, remove all of the detainees.

Now I know Judge Williams' order does not require removing all infrastructure from the facility, and our plan would be after the Eleventh Circuit we believe reverses Judge Williams, we would bring detainees back to the facility. So our plan is to continue having detainees at the facility, whether that's after a stay or thereafter.

THE COURT: All right. So if, in fact, there is any situation -- there might be a period of time, perhaps, where there wouldn't be detainees, but you intend, if the order goes through, to keep operating the facility if that's an option under the rulings of the Court.

MR. MEROS: Yes, ma'am, that's our plan.

THE COURT: Mr. Spraker, do you have anything you wanted to add to that?

MR. SPRAKER: I don't, your Honor. Thank you.

THE COURT: Anything from the plaintiffs' perspective?

MS. CHO: Yes, your Honor. I believe, as the defendants have stated, there are still people who are held at the detention facility who are still suffering the same injury

that we have alleged with respect to lack of access to counsel.

And for that reason, we don't believe -- we believe that it's important to keep proceeding with this case, given that the defendants have indicated that individuals are still located there. We have been in communication with folks who have voiced the same issues and continue to voice the same issues with respect to lack of access to counsel, and we don't know if and when they may not be detained any longer. So the injury continues.

THE COURT: Do you think at any point it becomes moot if the preliminary injunction isn't stayed?

MS. CHO: If the preliminary injunction in the *Friends of the Everglades* case is not stayed, I think it depends on the facts and what the defendants choose to do that point and how many people are actually there if the attorney access policies have changed.

THE COURT: All right. Thank you.

Ms. Godshall, anything else?

MS. GODSHALL: No, that's everything. Thank you.

THE COURT: All right. I have kind of gotten the groundwork, so I understand where the parties are coming from in that regard.

The operative pleading right now is the supplemental class action complaint, and I think all of the parties agree that that's probably not a good foundation for where we're going

with this suit. There's obviously the five counts that were in that particular supplemental class action complaint.

So as to Count Five, I think everyone is in agreement that Count Five be dismissed at this point or in either amending or supplementing the complaint, I would assume you're not going to pursue that based upon Judge Ruiz's order.

MS. CHO: That's right, your Honor.

THE COURT: I just wanted to clear up a couple of other things. And obviously you're going to be amending or going forward with another complaint, but I had a couple of questions on Counts One and Three, and maybe that's something you can clear up. But Count One is obviously alleging a violation of the First Amendment against the DHS defendants and the Florida defendants. It only names the DHS defendants in the allegation, not the Florida defendants. So the only reference to all or presumably the Florida defendants would be the catch-all equity allegation. Are you intending for Count One, and when you file another complaint, are you intending that it be against both the DHS defendants and the Florida defendants?

MS. CHO: Yes, your Honor. This came about, I believe, with Judge Ruiz in the Southern District where at the time that we filed our original complaint, Judge Ruiz raised this issue. And it was also briefed in the preliminary injunction briefing, because it was unclear at the time as to what the contractual or the legal basis for the agreement

between the federal defendants and the state defendants were to actually hold people at the facility, whether it was a 287(g) agreement or something else.

Through the expedited discovery process it became clear that the defendants, at least, were claiming that Florida was detaining people pursuant to a 287(g) agreement. Because the 287(g) statute provides for state defendants to be liable under either -- sorry, because they become agents of the federal government, that then Judge Ruiz asked if it was proper to also allege Count One with respect to the state defendants under equity. So that is the reason why that is pled in that way.

THE COURT: Count Three is also pled in that way.

MS. CHO: Correct, your Honor. And as you would note, that issue had been briefed in the preliminary injunction briefing before Judge Ruiz in the Southern District.

Either way, we believe that because the Court has power in both -- in equity to issue an injunction against both state and federal defendants in equity for constitutional violations that it need not reach that issue, which is why it's pled that way. But there is also a Section 1983 claim because it is not clear whether or not all state agents are properly authorized to detain people under Section 287(g).

THE COURT: Mr. Meros, do you have any comments that you want to make in that regard?

MR. MEROS: Only that our briefing in response to the

motion for preliminary injunction I think addresses that we believe the 1983 claims are not proper. We didn't address any of the other issues when it comes to the equity, but we certainly can address those issues. But that's why we have briefed the 287(g) agreements, and we certainly could again, but that's why we briefed it that way because we believe the claims were not proper given those agreements.

THE COURT: Mr. Spraker, anything on that?

MR. SPRAKER: Nothing to add, your Honor.

THE COURT: Then Count Two, we have the First Amendment violation, alleged violation of the detained plaintiffs in the proposed class against the Florida defendants under 1983, and that's just against the Florida defendants in Count Two.

MS. CHO: Correct, your Honor.

THE COURT: And then Count Four, the First Amendment on behalf of the organizational plaintiffs against the Florida defendants under 1983 also just against the Florida defendants.

MS. CHO: Yes, your Honor. Just to add, there is, I think, a question as to whether or not all Florida defendants are acting properly under the Section 287(g) process. And because that is a question that needs to be resolved through further evidentiary exploration, that is why both of those -- all of those counts are in and pled in that way.

THE COURT: All right. And when you say further

evidentiary issues, are you talking about at a preliminary injunction hearing?

MS. CHO: No, your Honor. We don't believe that the Court needs to answer that question, again, because the federal court has the power to enjoin actions that are unconstitutional against both federal and state defendants. The question is whether all state defendants have been properly authorized under Section 287(g), and that information at this point is not totally available.

THE COURT: Just another issue in Count Five, and again, I know Judge Ruiz dismissed, I notice the mention of the Executive Office of Immigration Review defendants. Are they then terminated because of his ruling on Count Five? Because I believe there was against all defendants an equity, so I just want to make sure, are they still in the suit, are they terminated from the suit?

MS. CHO: Your Honor, if we are able to supplement the case and file another version of the complaint, we would eliminate the EOIR defendants from the case because they were held accountable for Count Five.

THE COURT: All right. Thank you.

Any questions from the defense on that?

MR. MEROS: No, your Honor, not on that issue. The only issue would make is that plaintiffs had brought up the issue of the 287(g) agreements a lot in the other briefing. And

to my mind, these claims are all about the First Amendment. So there isn't an issue about whether -- we certainly believe all the state defendants are acting correctly under the agreements, but that's not an issue here. Maybe they expand the case. There's obviously another case in this Court with that, but that's not an issue here. So I just want to make sure that we are limited to, obviously, the pleadings at issue.

THE COURT: And we'll get there, but this is a very, as I see it, a very contained issue that this Court is being asked to decide and rule on, as opposed to I believe Judge Badalamenti, who was just assigned something that may have to address a lot more of those issues. So I want to make sure that we do confine this case to what it is and not have a lot of other allegations or facts contained within the new complaint that aren't really for this Court to address, so we need to make sure that that's the case.

In regard to the subclass then, is the subclass moot in light of the dismissal of Count Five?

MS. CHO: That's our position, your Honor. If we were to file a new class certification motion we would remove the request that the Court certify a subclass.

THE COURT: All right. Thank you.

Everybody seems to agree that a supplemental class action complaint or at least the current one is stale and that there needs to be a new pleading. And whether we call that an

amended complaint or a supplemental complaint, I just want to make sure that it's the most updated pleading that reflects the current circumstances at the facility rather than those that existed obviously more than a month ago. And it sounds like you are continuing to take into account the Court's rulings and do that. So I want to make sure that you continue to do that and to clarify the relief that you believe that you're entitled to and that the defendants are not providing. So obviously I'm not telling you how to plead your case, but I do encourage that you only include facts and allegations and background or other information pertaining to the First Amendment violation that's alleged here.

In reading some of the other pleadings, I know there were facts that were talked about, conditions in the facility, temperature, hygiene, weather, medications, mosquitoes. So that information, as I see it, is not necessary or pertinent to the issue that this Court is deciding. So I would ask that in filing the new document that you contain it to the necessary facts that pertain to the issue, the narrow issue that this Court is being asked to decide.

Any questions on that?

MS. CHO: No, your Honor.

MR. MEROS: No, your Honor.

MR. SPRAKER: No questions, your Honor. I would only ask if we could have a moment to comment on whether it should be

a supplemental or amended pleading, that we get an opportunity to do so.

THE COURT: All right. Go ahead. I will take any comments at this time.

MR. SPRAKER: It is the federal defendants' position that this should be an amended complaint. The reason being is that an amended complaint reflects any kind of facts that need to be amended in light of facts that have come to light. I think that is the situation that we have here.

Specifically, as stated in the federal defendants' status report, there is evidence before the Court, specifically in the plaintiffs' status report which was filed on August 8th indicating that there were attorney-client visits. One, I believe, was even before the original pleading was filed in this case and also before the supplemental pleading was filed.

So this isn't a case where a supplemental complaint would be appropriate where there was additional facts that the plaintiffs would want to add. This is, in fact, a case where there needs to be clarification first, as the Court has indicated, about what counts the plaintiffs are actually proceeding with, and also the facts that the defendants need to respond to.

And I think if the Court were to allow a supplemental complaint, in effect what it would be for the defendants is that we would be responding to the original pleading, the

supplemental pleading, and then a second supplemental pleading. And I think, given the points that I mentioned about changed conditions, and also that plaintiffs are seeking equitable relief, not money damages for something that's happened in the past, an amended complaint needs to address facts as they currently exist before the Court. Thank you.

THE COURT: All right. Thank you.

Mr. Meros?

MR. MEROS: I know in our status report we took the position that we don't really have a position, but I think we would err on that side. To the extent -- I know Judge Ruiz, when he allowed the supplemental complaint, he said the supplemental complaint can add more information but the defendants aren't required to respond both to the supplemental -- the allegations in the supplemental complaint and the original complaint. So to the extent that's the same case here, that the updated pleading is the only operative one, all the others are taken away, I don't think we would have a position on that.

I know when it comes to rules there's a difference with time to respond to amended versus supplemental. Obviously, this Court can schedule any kind of responses to the pleadings. So to that extent, we don't have an issue. If it were an issue where a supplemental would simply add on and the other would be operative, then we would agree with the federal defendants that

it should be amended because the amended should just be the facts on the ground now, not worry about anything in the past.

THE COURT: Ms. Cho or Ms. Godshall, do you want to weigh in on that?

MS. CHO: Yes, your Honor. We believe that a supplemental pleading under Rule 15(d) is actually perfectly suited to this occasion because the case -- we would be updating the facts that have happened on the ground since the original pleading, and that is exactly what Rule 15(d) is meant to do. It is meant to update the Court with respect to developments that have happened at the facility. It permits -- it is a liberal standard by which leave is granted to supplement, it is the same standard as an amended pleading, but it has slightly different effects because it allows the Court to look at the history of the evolution of the facts on the ground.

This is a mechanism that is used quite often in conditions of confinement litigation exactly for this purpose, because defendants frequently correct or try to change the conditions on the ground after litigation is filed that prejudices the parties who have brought the case originally both in terms of standing and also in terms of providing the Court with the full history as to what has happened.

Again, Rule 15(d) as a supplemental pleading is meant to update the Court with respect to events that have happened after the original pleading of the complaint. An amended

complaint is meant to encompass facts that happened before the original pleading of the complaint. And this is exactly what we are talking about here in that the plaintiffs will be updating the complaint to add facts that have happened since the filing of the original complaint.

THE COURT: But it also sounds like obviously you're not going to include Count Five. There were some other things that you said that you would fix or certain defendants would be out of the case. And I'm well aware of the Court's authority to have you file a supplement. To me, it really seems like obviously we want one complaint that we're going to look at and we're going to decide those issues and not having to go back and look at preceding complaints or supplemental things that were filed.

MS. CHO: Yes, your Honor. What we would be doing is we would be filing a supplemental complaint. It would not require the Court to look back at another pleading, it would be in one document only. But this is the appropriate mechanism. Often courts may treat supplemental complaints and amended complaints very similarly, often courts use the same terminology, but we believe that the proper procedural mechanism is under Rule 15(d).

THE COURT: And then the defendants would be required only to answer to that supplemental complaint without consideration or the Court's consideration of anything else --

MS. CHO: Correct, your Honor.

THE COURT: -- is what you are arguing you would like to do.

MS. CHO: That's right, your Honor.

THE COURT: All right. And Mr. Meros and Mr. Spraker, if you are allowed to -- if we call it a second supplemental class action complaint and it includes only those facts that apply now and the applicable counts that they still wish to bring, would you be able to answer or file a motion to dismiss in regard to the one pleading that's going to be before the Court?

MR. SPRAKER: Your Honor, I would say that there is certainly considerations based upon the original and a supplemental complaint that defendants may believe that a motion to dismiss is appropriate. The main concern is that the pleading from the plaintiffs should be denominated what it actually is. And in this case, it would be an amended complaint, because the facts as stated in both the original complaint and the supplemental complaint do not accurately reflect what was actually happening when those pleadings were filed.

And I would also add that although the Court has indicated and plaintiffs have indicated that perhaps defendants would only have to respond to a second supplemental complaint, I don't believe that procedurally is actually the effect of what a

supplemental complaint is.

The case I would bring to the Court's attention is *Grace Incorporated v. City of Miami*, it's 702 F.Supp.3d 1263 at pincite 1273. And then the court there indicates in regard to what pleadings and their effect will be, it indicates that the supplemental complaint operates as an extension of the amended complaint. The Court will, therefore, consider the factual allegations together from both pleadings when adjudicating the instant motion.

So I think the Court does need to take into account what the rule says and what the actual effect of a pleading, as we believe it should be an amended pleading in this case would be.

THE COURT: Ms. Cho, do you have a response?

MS. CHO: Yes, your Honor. First, I just want to point out that the defendants have made allegations regarding the accuracy of the claims made in the complaint. That is not, obviously, an issue that is -- we contest that allegation and that characterization of the facts. And certainly that would have to be tested via other means, through evidentiary testing.

The other issue is that although we have not looked at the *George M.* case that the defendants have cited to, it was not briefed and the defense did not share that case with us, but it is our practice and it is certainly the practice typically that when filing supplemental complaints it is one filing, one

pleading that is provided to the Court.

THE COURT: All right.

MR. MEROS: Your Honor, just on that point.

THE COURT: Yes.

MR. MEROS: I think, based on the plaintiffs' representation, I think we're now firmly on the federal defendants' side. Given that they want to supplement and want to kind of incorporate what's in the previous pleadings and keep those facts in the supplemental complaint, then we think an amended complaint is appropriate. Because really the only issues that are appropriate are the issues on the ground now, not trying to bring up issues more than a month ago.

THE COURT: All right. Thank you.

The Court has taken into consideration the arguments of counsel and will allow for you to file a second amended complaint containing only those allegations that will go forward and only the facts that apply to this particular factual dispute, those that are timely and current and accurate.

So the fact the parties, at least from the joint status report, are in agreement that the preliminary injunction and class certification motions are stale at this point, and so the Court is going to go ahead and just strike those pending motions and we'll look at the date to refile those.

But before we do that, I do want to discuss the possibility of -- the parties have all indicated that they are

willing to attend a settlement conference with the United States magistrate judge in this case. In all of my cases, the non-assigned magistrate judge would be the magistrate judge who would conduct a settlement conference, and so in this case, that would be Magistrate Judge Nicholas Mizell.

And I have contacted Judge Mizell as to his availability, and maybe that's something to talk about as far as timing-wise. I certainly don't want to waste his time. I appreciate the attorneys discussing the issue of even having a settlement conference, but I do want to hear from you as to whether you believe a settlement conference would be beneficial at this time and kind of in terms of when and how you -- what your thoughts are, Ms. Cho.

MS. CHO: Yes, your Honor. We, of course, are open to settlement negotiations. However, we believe that it is important to have the Court adjudicate the motions that plaintiffs will present to the Court with respect to the preliminary injunction and class certification motion. The plaintiffs have had a TRO and a PI motion pending since July that has not been adjudicated at this point. The relief is still needed at the facility and we believe that mediation should not postpone or derail the Court's consideration of those motions.

THE COURT: The Court would march forward with deadlines and dates, and if that was the case, do you believe

that meeting with Judge Mizell in October would be something that would be beneficial?

MS. CHO: We would be happy to have him participate in a settlement conference. We believe that that should happen as the briefing and the consideration of the motions happen on a parallel track.

THE COURT: Okay. All right.

Ms. Godshall, anything?

MS. GODSHALL: Nothing else, thank you.

THE COURT: Thank you.

Ms. Meros?

MR. MEROS: We're fine with that. I mean, I think it would be most beneficial, to the extent plaintiffs don't want to interrupt the injunction process, we understand. We're fine doing it after that.

I know we'll get into some other issues about timing of class certification issues. It would be our position that we obviously think class certification should be done separately. So we think we would be fine doing it after injunction and while the class certification process is going on, we would be fine to have settlement discussions then. But we don't -- to the extent the Court wants to jam everything together, obviously we prefer not to have the settlement at the same time as all the other briefings and discovery hearings.

THE COURT: Okay. Thank you.

Mr. Spraker?

MR. SPRAKER: Your Honor, the federal defendants have no opposition to attending a settlement conference. Of course, as I indicated earlier in the hearing, there is a significant issue about the players that are actually operating the facility, but we would certainly attend, and, to the extent we can, participate as well.

THE COURT: All right. Thank you.

I will kind of take that under advisement as far as what would be the most beneficial, and if we need to come back to that, we can.

Let's talk about the case management schedule and setting a schedule for the next few weeks. The Court would vacate any prior deadlines that were set by Judge Ruiz, and I think the only one was maybe a September 23rd response. I don't think there were any others out there. So in any event, I would go ahead and vacate that deadline.

The second amended complaint would be due on September 11, that's seven days from today's date. And I believe the parties were in agreement that that would be sufficient time for you to file that.

The answer or the motions to dismiss would be due 60 days from that date, which would be November 10.

The response to the motion to dismiss would be December 1st. And, of course, I will send out a formal order on

this as well so you have it, but December 1st would be the response to the motion to dismiss if there was one filed, and a reply to the motion to dismiss due December 15th.

As to the preliminary injunction motion, I do want to continue to move this case along, so that would be due September 11th as well, which is, again, seven days from today's status conference.

The response to the preliminary injunction would be due September 25th, so 14 days later, the reply on October 2nd, which would be seven days later, and a surreply October 9th, seven days after that. And that should give -- that period of time should be sufficient but not greater than necessary for the parties to go about their business and get things filed.

As to an evidentiary hearing, given those schedulings, if you were able to follow that, how long, Ms. Cho, do you believe that you would need for an evidentiary hearing on the issue of the preliminary injunction?

MS. CHO: Your Honor, I believe one day would be sufficient.

THE COURT: Mr. Meros?

MR. MEROS: I think that's fine. Did you mean how long in terms of time for the hearing or the date for the hearing?

THE COURT: Time for the hearing, then we'll talk about the date next.

MR. MEROS: I see. I think that's fine. Could I clarify? I know there was an issue with Judge Ruiz before we had the hearing, it was not clear whether it would be evidentiary, whether there was going to be introduction of evidence until like three or four days before. So we would like to avoid that on the front end. So could we just clarify whether the Court and plaintiffs want that to be evidentiary just on the record so we can know?

THE COURT: Thank you. Yes, good question.

Ms. Cho, what are you envisioning?

MS. CHO: Thank you, that's a very good question. I think we would be fine with the Court proceeding on the papers and not requiring an evidentiary hearing, but if the Court were to require one or would like one, we would require one day.

THE COURT: Okay. Normally with my preliminary injunction hearings, I do rule based upon the papers, if that's -- if the Court has sufficient information. But I would not preclude if the parties thought that a hearing was appropriate, but I oftentimes rule based upon the papers. And I certainly wouldn't let it get down to a couple of days before, because I don't think that's fair to the parties. You need to know what you need to do.

I was looking at -- given my calendar and October 9th being the last kind of pleading that the parties would have to supply, I was looking at October 22nd, 23rd and 24th or the

following day -- or the following week, excuse me, 28, 29, 30 and 31st, so those are the days I was looking at.

I don't know if counsel wants to just, at this point, go ahead and look at your calendars just so that the Court would know. And if we need to set an evidentiary hearing based upon things, I would certainly give you a little bit more notice than the two days. So if you want to discuss those times and dates and advise the Court when you have had the opportunity to do that.

MR. MEROS: Okay. Sure, your Honor. One question. I'm sorry to keep --

THE COURT: No, I appreciate that. That's why we're here, and I appreciate the questions and the comments. I want to make sure that we have all had the opportunity to come together and figure out where we're going.

MR. MEROS: Absolutely. One option I know some judges in the Northern District often do is if the parties decided that maybe we schedule it as a non-evidentiary conference, and if the parties wanted to change that at some point maybe after the briefings, we could say a certain number of days before you have to notify if there's going to be evidentiary, to have some time to maybe do some depositions or something, prepare for the evidentiary hearing.

THE COURT: So you're basically indicating that you would like for the parties to be able to advise the Court if

they believe that an evidentiary hearing would be appropriate, is that what you're saying? Or maybe I'm not understanding.

MR. MEROS: Yes, ma'am. Just if the parties decide that they would like -- because my position would be that a hearing on the papers is fine right now, but after briefing, maybe that might change. And instead of then, I guess, asking the Court to charge it, and if the Court needed more time, it already had the schedule blocked out, it would have to push it further; rather than doing it that way, we could build in some time to have a deadline by which the parties would have to request an evidentiary hearing, let the Court know, and then the other parties could know we'll have to name the witnesses that we might introduce at a hearing so we could take, I guess, short depositions before the hearing. That would be our thought, or we're fine proceedings on the papers, either one.

THE COURT: Okay. Mr. Spraker, any thoughts?

MR. SPRAKER: Your Honor, I would, of course, leave it to the Court's discretion whether the Court would like to hear live testimony after looking at the declarations or submissions with the preliminary injunction motion.

THE COURT: Ms. Cho?

MS. CHO: Same, your Honor.

THE COURT: Okay. But are you saying then, Mr. Meros, that you still don't think it would probably be more than a day if you did, in fact, have some live testimony?

MR. MEROS: I don't think so, no, ma'am.

THE COURT: Okay. Ms. Cho, you think that's correct?

MS. CHO: That's correct, your Honor.

THE COURT: Because I will set aside the day that the parties -- if it works in all of our schedules, I will set aside that day so we know when that's going to be. And then we'll advise as to how much time before that you would have to let the Court know. And then the Court can decide whether or not to turn it into an evidentiary hearing or continue to rule from the papers.

And again, throwing this out, are there any thoughts of the Court and the parties observing firsthand the facility or visiting the facility during the hearing, right before the hearing, after the hearing? Any thoughts about that?

MS. CHO: Your Honor, are you suggesting that the parties and the Court go to the facility itself and conduct an inspection of the facilities?

THE COURT: I'm asking you if that's something you think would be beneficial to resolve.

MS. CHO: Certainly we have not discussed that, I think, with the parties, but I don't think the plaintiffs would be opposed to that.

THE COURT: Mr. Meros?

MR. MEROS: Your Honor, I would talk to my clients. We haven't even thought of that issue.

THE COURT: Sure. And again, that's something I'm throwing out. That's why we're sitting here at a status.

Mr. Spraker?

MR. SPRAKER: I had not thought of the idea either, but I think it is a potential idea. I would have to, of course, confer with the state defendants about what they could allow as far as people in and out of certain places.

THE COURT: Understood. It would certainly have to be something that was scheduled and pursuant to whatever protocols they had, but all right. I would ask that you would consult with your clients and consult with each other and then advise the Court as to whether or not you think that that would be appropriate or something that the parties think would be beneficial and then when you think it would be beneficial.

MR. MEROS: Your Honor, do you have a date that you would like us to advise the Court by?

THE COURT: How long do you think it would take you to consult with the appropriate individuals?

MR. MEROS: No more than a week, certainly.

THE COURT: Okay. You would be able to?

MS. CHO: Yes, your Honor.

THE COURT: Since you'll have to let me know the dates and all of that, go ahead and just in one notice to the Court if you would advise me as to how you feel in that regard and we'll go from there with that.

All right. As to the remainder of the deadlines, the Court is going to set the remainder of the schedule, including the deadlines for class expert, other discovery, class certification, dispositive motions and trial following the order on the motion for preliminary injunction. I have taken the parties' status comments into account, and I'm taking under advisement the parties' request for class discovery.

Are there any other matters that you believe we need to discuss? Do you want me to take a short ten-minute recess and you think about anything or everything that we may need to discuss and regroup, anything that the parties want to discuss with the Court?

MS. CHO: Certainly, your Honor. If you would give us ten minutes to do a recess and come back, we would appreciate that, yeah.

THE COURT: Okay. The only other thing I would ask as well of the parties is I would like for you to update the Court to provide any updates in related cases that are on the docket that would impact the Court's decision or impact this case, whether that's persuasive from other facilities that are dealing with the issue of attorneys seeing their clients or anything of that nature, anything that is going to give the Court an update of that. And I would ask that you do that bi-weekly, if there is anything for the Court, I would ask that you provide that.

We're going to go ahead and take a ten-minute recess.

That way you all can regroup and I can review my notes to make sure I have addressed everything that I wanted from you. And we'll be back then, let's just call it 2:30.

Thank you.

(Recess taken 2:22 p.m. to 2:48 p.m.)

THE COURT: Ms. Cho, after taking some time, I apologize, I ran late, did you have anything else that you wanted to address with the Court?

MS. CHO: Yes, your Honor, just a few minors points.

With respect to the reply brief, because there are two defendants, we would like to ask if it may be possible to file a consolidated reply brief in response to both briefs just to streamline things for everybody.

THE COURT: Any objection there?

MR. MEROS: No objection, your Honor. One question I have, I guess, for when we're filing reply briefs to their motions, I can defer to federal defendants, but I think we would prefer to have separate from state defendants and federal defendants, but we have no objection to them having consolidated either response or reply to ours.

THE COURT: Okay. Is that what you're asking?

MS. CHO: Correct, your Honor, yes.

THE COURT: I have no objection to you doing that.

MS. CHO: Yes.

THE COURT: Mr. Spraker?

MR. SPRAKER: No objection.

THE COURT: Okay. So are you asking as well from the defense standpoint to be able to file a separate reply?

MR. SPRAKER: No objection to the plaintiffs filing a consolidated reply. As far as the defendants' pleadings, we would ask that any kind of response or reply be separate for the state and federal defendants.

THE COURT: Okay. I have no objection to that, and that's fine.

All right. Ms. Cho, other questions?

MS. CHO: I think there was a little bit of confusion over the joint status report and the bi-weekly status report in terms of apprising the Court of any updates. I guess, would the Court prefer that the parties provide you a bi-weekly joint status report, would you prefer that the parties provide updates that come along in time, whether -- it may be between that bi-weekly period? What would the Court prefer?

THE COURT: Bi-weekly should be fine. It doesn't have to be this happened today, I will get that report out. As long as you put that in a bi-weekly report, that would be fine. And I mean as long as -- you might want to confer about it, but you could also just send that to the chambers inbox so that I get a copy in the chambers inbox. I don't think it's necessary that you file it on the docket unless you both want to have it filed on the docket.

Does that make sense? You look puzzled.

MR. MEROS: Yes, your Honor. No, I wasn't puzzled with what you were saying, I was puzzled, I guess, do we then want to have it a joint report or is it something that we both confer and if we, for some reason -- also, is it something where we are just apprising the Court of maybe other cases or other decisions that have occurred or if it's other facilities, what's going on at the facilities?

THE COURT: No, cases or decisions. Anything that might affect the Court, either persuasive or -- I am not following totally what's going on in other cases, so that's helpful to the Court to have that.

MR. MEROS: And your Honor, on that point, so similar to a notice of supplemental authority where we wouldn't make arguments, just here's the decision.

THE COURT: Absolutely. Yes, yes.

MR. MEROS: Okay.

THE COURT: Ms. Cho, other?

MS. CHO: No, your Honor. We will either file it directly with your clerk or we will also file it with the clerk and put it on the docket, if necessary. Thank you.

THE COURT: Thank you. I did have a question for you. When you were -- I can't remember now exactly which section we were talking about, but you mentioned a TRO had been pending for a long time and whatnot. My understanding, when filing the

second amended complaint and the facts of how things went, and obviously the defendants are here, your second amended complaint is only going to seek preliminary injunctive relief. I'm not going to be dealing with an emergency TRO situation, is that right?

MS. CHO: Yes, your Honor. We had initially filed a TRO when the case was initially filed in July. We then agreed with the court in the Southern District of Florida to convert that motion and actually refile a new preliminary injunction motion, and that was the one that was briefed fully before the Southern District.

THE COURT: So that's just to make sure that that's not coming down the pike.

MS. CHO: We're not going to file a TRO motion. We don't plan to at this point, your Honor.

THE COURT: All right. Thank you.

Questions, Mr. Meros?

MR. MEROS: Yes, your Honor, you read my mind. You knew I would have something else to add.

Just to clarify, when we're apprising the Court within the notice of seven days, we're going to give the dates that work for our clients for the preliminary injunction hearing and then also apprise the Court whether we think a visit to the site is appropriate. Just want to clarify both of those things.

And then I know you mentioned right before we left

that the Court is going to handle the preliminary injunction and then after either the hearing or the Court's order on the motion for preliminary injunction, then the Court will decide schedules for beyond that, whether class certification, trial, anything like that, decide at that point?

THE COURT: Correct.

MR. MEROS: Okay. All right. Just making sure that at this point we're only handling, obviously, PI or any responses to the complaint until the Court's further order.

THE COURT: Correct.

MR. MEROS: Obviously at that point, probably goes without saying, but to belabor the point, I guess, the Court is not going to consolidate trial with the hearing, obviously.

THE COURT: No. And I think the parties were pretty much in agreement on that, that that wasn't something that we should do. And I certainly understand that, and I don't have any intention of doing that.

MR. MEROS: Perfect. And I know you also said you were going to take the issue of settlement, when to do that under advisement, and I just want to make sure that we didn't need to add anything more to that. But otherwise, we're good. Thank you.

THE COURT: Unless, as you're discussing it with the appropriate individuals, if you come about a time that you think -- if you're saying that, yes, October would be a good

time to do it, Judge Mizell is available. And as I said, I spoke to him, Monday, Tuesdays or Wednesdays are the best for him. And he would set it, if the parties are amenable to that, he would certainly sit down with everyone.

MR. MEROS: Thank you, your Honor.

THE COURT: Mr. Spraker?

MR. SPRAKER: Nothing further from the federal defendants. Thank you.

THE COURT: Okay. I had one other question just in regard to the hearing, and we kind of talked about that, but at this point it's intended to be from the papers. But if the parties, as they're preparing for that, feel that a hearing would be appropriate, then they will let the Court know and I will let you know.

But you talked about filing declarations and affidavits and whatnot, you also talked during the course of the status conference today about the fact-intensive nature of this case. Just in looking at doing this on the papers, is it something that the Court is going to be able to do? Because judging credibility on the papers is not -- so I guess I just have a thought, I want to hear you thoughts on that. If it's a he said, she said, it's going to be pretty hard to judge things on the papers.

MS. CHO: Yes, your Honor, we understand that. If the Court would like to have an evidentiary hearing, we would, of

course, be amenable to that.

In the past several other cases of this ilk, in terms of access to counsel in immigration detention facilities, we have typically resolved preliminary injunction motions on the papers. But if the Court feels that it's necessary to go into an evidentiary hearing, we would be happy to do that.

THE COURT: I'm not necessarily inviting it, I'm just asking if that's the case. And can you tell me, where were those cases that you are speaking you of?

MS. CHO: Well, in the District of Columbia and the Northern District of California and the Central District of California.

THE COURT: Okay. All right. I think that was everything I had as far as questions. I appreciate the parties being here for the status conference. I think we're all on the same page at this point.

Is there anything else?

MR. MEROS: No, your Honor.

THE COURT: Then hearing nothing, we'll be in recess. Thank you so much.

MR. MEROS: Thank you, your Honor.

MS. CHO: Thank you, your Honor.

(Adjourned 2:57 p.m.)

C E R T I F I C A T I O N

I, Michael McDaniel, United States Official Court Reporter, Registered Merit Reporter, and Federally Certified Realtime Reporter, was authorized to and did attend the foregoing proceedings and stenographically recorded the same. The transcript contained within this volume is a true and accurate transcription of those proceedings, which has been produced from stenographically-generated notes and transcribed with the assistance of computer-aided transcription.

*Michael McDaniel*
Michael McDaniel, RMR, FCRR
Official Court Reporter
September 5, 2025