# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Case No. 2:25-cv-00747-SPC-KCD

| | |
|---|---|
| **H.C.R., D.G.M., and H.P.**, on behalf of themselves and all others similarly situated; **Sanctuary of the South; Bilbao Law, LLC**, <br><br> *Plaintiffs*, <br><br> v. <br><br> **Kristi Noem**, Secretary of the United States Department of Homeland Security, in her official capacity; **U.S. Department of Homeland Security**; **Todd Lyons**, Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement, in his official capacity; **U.S. Immigration and Customs Enforcement**; **Garrett Ripa**, Field Office Director for ICE's Enforcement and Removal Operation's ("ERO") Miami, Florida Field Office, in his official capacity; **Ronald DeSantis**, Governor of the State of Florida, in his official capacity; **Kevin Guthrie**, Executive Director of the Florida Division of Emergency Management, in his official capacity; **Florida Division of Emergency Management**, <br><br> *Defendants*. | **AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

## INTRODUCTION

1.    This class action lawsuit challenges the government's unconstitutional limits on attorney-client communication for people held in civil immigration custody at the immigration detention facility known as "Alligator Alcatraz."[1]

2.    This case was initially filed on July 16, 2025, after Defendants began to hold detainees at Alligator Alcatraz. A few weeks earlier, on June 23, 2025, the state of Florida began construction of the temporary immigration detention facility in the middle of the Florida Everglades. The facility, built of tents, trailers, chain-link fence, and barbed wire, has the capacity to hold at least 3,000 people.

3.    Plaintiffs brought this litigation to challenge the then-current conditions at the facility, which amounted to a near total and complete failure to provide any form of attorney access to detainees held at the facility. In direct response to this suit, Defendants implemented some limited measures for attorney-client communication. On July 25, 2025, Defendant Guthrie announced at a press conference that the facility was slated to begin providing some limited attorney-client visits the following Monday, the date of the first status conference in this case.[2]

---

[1] The facility was originally referred to as the "Collier Dade Transition and Training Detention Center," but Defendants have officially renamed it "Alligator Alcatraz." *See* Ana Ceballos, *Alligator Alcatraz Is No Nickname. It's Detention Camp's Official Name*, Tampa Bay Times, Jul. 1, 2025, https://www.tampabay.com/news/florida/2025/07/01/alligator-alcatraz-is-no-nickname-its-detention-camps-official-name; Raisa Habersham, *As the Jokes Fly, Alligator Alcatraz Evokes Racist Trope of 'Gator Bait'*, Miami Herald, Jul. 10, 2025, https://www.miamiherald.com/news/state/florida/article310224360.html (discussing historical "gator bait" trope used to dehumanize Black people and its application in naming the facility).

[2] The Florida Channel, 7/25/25 Governor's Press Conference (Jul. 25, 2025), https://thefloridachannel.org/videos/7-25-25-governors-press-conference/ (at 28:00) ("we should

4.     Defendants' last-minute measures, however, are wholly inadequate. The government continues to impose significant barriers to attorney access for detainees held at Alligator Alcatraz, in violation of Constitutional requirements. Access to counsel at Alligator Alcatraz is dramatically more restrictive than at other immigration facilities and runs afoul of the requirements that Immigration and Customs Enforcement ("ICE") has in place for detention facilities.

5.     Although Defendants state that in-person attorney visits are available at Alligator Alcatraz, attorneys are required to submit requests three business days in advance to visit clients in person at the facility. This requirement is far from the norm for other immigration detention facilities, jails, and prisons, which allow attorneys and legal representatives to conduct in-person visits during visitation hours without prior schedule with the facility. This requirement has rendered in-person attorney visits unavailable to many detainees at the facility. Defendants have engaged in a pattern and practice of transferring detainees whose attorneys have requested in-person legal visits immediately prior to the scheduled visits, precluding their ability to meet with counsel at the facility. Defendants have also delayed scheduling in-person visits to such an extent that some detainees never have the chance to meet with their attorneys during their detention at the facility.

---

have our first set of onsite legal representation no later than Monday. And we're scheduled to do that almost 24/7 if we need to. We can do the meetings 24/7, 365, if we need to.").

6.      Defendants have claimed that they are providing scheduled legal video visits for detainees at the facility. These legal videoconferences, however, are not confidential. Moreover, scheduling delays for attorney videoconferences have been so lengthy that some detainees are unable to speak to counsel in advance of key deadlines, or have never had the opportunity to meet with counsel.

7.      Detainees at the facility are unable to place any confidential, unmonitored outgoing legal phone calls. All outgoing phone calls are monitored and recorded.

8.      Defendants provide no way for detainees and attorneys to confidentially exchange written documents essential to legal proceedings. There is no legal mail system at the facility. Before any in-person or virtual legal visit, attorneys are required to submit a request form via email and "attach copies of legal documents you intend to bring for approval. All items are subject to inspection and must be pre-approved." Attorneys cannot confidentially review key documents with clients or obtain necessary signatures.

9.      Defendants have not publicly posted any information regarding attorney access protocols to the public or provided this information to detainees, leaving attorneys and detainees in the dark about how to properly communicate with each other. Attorneys cannot confirm whether their detained clients are held at the facility, because ICE's detainee locator continues to omit information about detainees held at Alligator Alcatraz.

10.    Defendants' stated attempts to address these issues in response to this litigation are wholly inadequate and violate the Constitution. They do little to protect against the continuing grave harm faced by detainees held at Alligator Alcatraz as a result of these constitutional violations. Officers have circulated the facility, successfully pressuring desperate detainees to sign voluntary removal orders, without the opportunity to speak to counsel.

11.    Plaintiffs H.C.R., D.G.M., and H.P. (collectively "Detained Plaintiffs") are immigrants who are currently held at the Alligator Alcatraz facility, who are unable to communicate confidentially with their retained or prospective counsel while held at the facility. They seek relief on behalf of themselves and a putative class. Plaintiffs Sanctuary of the South, PLLC ("SOS") and Bilbao Law, LLC (collectively "Organizational Plaintiffs") are immigration law firms or legal service organizations whose mission is to provide immigration counsel to people in detention, whose staff have been prevented from speaking with clients detained at the facility.

12.    The government's restrictions on attorney-client communication at Alligator Alcatraz inhibit detainees' ability to meaningfully access and communicate confidentially with legal counsel, impinge upon attorney-client privilege, and violate detainees' constitutional rights under the First Amendment. These restrictions also violate the Organizational Plaintiffs' First Amendment rights to communicate with their clients.

13.    Plaintiffs bring this action to seek injunctive and declaratory relief ordering Defendants to comply with the U.S. Constitution, and to ensure confidential attorney-client communication for immigrants detained at Alligator Alcatraz.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (original jurisdiction), and 5 U.S.C. § 702 (waiver of sovereign immunity).

15.    Venue lies in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in the district. Venue also lies in this district pursuant to 28 U.S.C. § 1391(e)(1), because the action includes defendants who are officers and agencies of the United States; and a substantial part of the events and omissions giving rise to the claim occurred in this district.

## PARTIES

**Plaintiffs**

16.    H.C.R. is a noncitizen currently detained at Alligator Alcatraz. He is almost sixty years old, and has significant health problems, including need of a hip transplant, and serious hypertension. He has no criminal history. He entered the United States on a valid visa, and has a pending asylum petition. He has a valid driver's license and a work permit. He was taken into custody on his drive home from work, when a police officer pulled him over during a traffic stop. Although he showed the

police officer his asylum documents, the officer told him that they were invalid. He was then taken into custody at a local jail, and then transferred to Alligator Alcatraz.

17.    His immigration counsel at S.O.S. has encountered numerous difficulties in attempting to communicate confidentially with him at Alligator Alcatraz, including an inability to confirm his whereabouts through the ICE detainee locator, and the absence of any publicly-available attorney visitation policies or protocols for the facility. H.C.R. cannot make any outgoing confidential legal calls to his immigration attorney, and can only speak to his counsel through monitored, recorded phone lines. His counsel is unable to confidentially send or exchange documents with him, because the pre-approval process Alligator Alcatraz requires violates attorney-client privilege, and is unlike the protocols and policies at any other immigration detention facility. His attorney must pre-schedule in-person legal visits with him, unlike at any other immigration detention facility. H.C.R. joins this case as a named plaintiff to ensure that he and all other detainees at the Alligator Alcatraz facility can have timely and confidential, private attorney-client communications.

18.    D.G.M. is a noncitizen currently detained at Alligator Alcatraz. He was taken into custody in August 2025, after he was detained on his way to work as a passenger in a vehicle pulled over for a traffic stop. He has no criminal history. D.G.M. is currently in asylum proceedings and fears persecution if returned to his home country. He believes that public disclosure of his identity could expose him to further danger of harm in his home country, and also fears harassment and notoriety in the United States in connection with his detention at Alligator Alcatraz. D.G.M. has

confirmed that he wishes to be a plaintiff in this lawsuit to ensure confidential, private attorney communication for detainees held at Alligator Alcatraz.

19.    D.G.M.'s immigration attorney has encountered numerous difficulties in attempting to communicate confidentially with him at Alligator Alcatraz, including an inability to confirm his whereabouts through the ICE detainee locator, and the absence of any publicly-available attorney visitation policies or protocols for the facility. D.G.M. cannot make any confidential outgoing legal calls to his immigration attorney. D.G.M.'s attorney attempted to schedule a legal visit with him on August 25, 2025, by sending an email request to [legal@privacy6.com](mailto:legal@privacy6.com). However, he never received a response. As a result, his attorney has had to resort to speaking with D.G.M. via the monitored, outgoing phone line from Alligator Alcatraz, and has had to avoid discussing sensitive matters because it is not a confidential phone line. His counsel is unable to confidentially send or exchange documents with him, because the pre-approval process Alligator Alcatraz requires violates attorney-client privilege, and is unlike the protocols and policies at any other immigration detention facility.

20.    H.P. is a noncitizen currently detained at Alligator Alcatraz. H.P. entered custody after the car in which he was riding as a passenger was in an accident. When the police arrived on the scene, H.P. was taken into custody and then eventually transferred to Alligator Alcatraz. H.P. has lived in the United States for over ten years. He has no criminal history, other than two instances where he was cited for driving without a license. He has confirmed that he wishes to be a plaintiff in this lawsuit to

ensure confidential, private attorney communication for detainees held at Alligator Alcatraz.

21.     H.P.'s immigration counsel has encountered numerous difficulties in attempting to communicate confidentially with him at Alligator Alcatraz, including an inability to confirm his whereabouts through the ICE detainee locator, and the absence of any publicly-available attorney visitation policies or protocols for the facility. H.P. cannot make any outgoing confidential legal calls to his immigration attorney, and can only speak to his counsel through monitored, recorded phone lines. His counsel is unable to confidentially send or exchange documents with him, because the pre-approval process Alligator Alcatraz requires violates attorney-client privilege, and is unlike the protocols and policies at any other immigration detention facility. H.P.'s attorney had previously attempted to visit another client at Alligator Alcatraz in person on July 19, 2025, where she attempted to share legal documents with her client for signature. However, she was turned away from the facility, and instead, told to leave the document with the facility for signature. His attorney must pre-schedule in-person legal visits with him three business days in advance, unlike at any other immigration detention facility.

22.     Plaintiff Sanctuary of the South ("SOS") is a legal services organization based in the Miami area, with its principal place of business in Coral Gables, Florida.  Part of its mission is to provide direct immigration legal services and civil rights legal representation to communities throughout the South. SOS provides pro bono and low-cost legal representation and counsel to immigrants, including people

in detention, by providing deportation defense, asylum assistance, and family-based immigration services. SOS also represents and advocates for individuals harmed in federal custody, families of people who died wrongfully in ICE custody, and individuals physically abused by law enforcement. SOS represents people held in carceral and detention facilities due to their perceived or actual immigration status to advocate for their fundamental constitutional and human rights.

23.    SOS has represented seven retained immigrant clients held at Alligator Alcatraz, and currently represents one client at the facility. SOS also plans to represent more clients at the facility. Plaintiff SOS has been impaired in its ability to represent detained clients in immigration or civil rights proceedings because of the barriers to access to counsel at Alligator Alcatraz. SOS has been unable to communicate confidentially with people at the facility, despite repeated attempts to obtain information on how to meet with clients, whether in person, or over telephone or video calls. Upon information and belief, prospective clients may have legal remedies available to them in immigration court, including seeking release on bond, or in motions for custody redetermination. However, due to SOS's inability to have attorney-client access, it is impeded in its ability to represent these detainees in immigration court.

24.    Because of Defendants' barriers to attorney-client contact with retained and prospective clients at Alligator Alcatraz, Plaintiff SOS has to date spent over 68 hours (about 6 days) of staff time and at least $1,300 in costs that it would otherwise not have needed to spend in working to achieve its mission of providing legal services

to immigrant communities. This includes time spent attempting to obtain information about how to establish communication with clients at the facility, speaking and coordinating with client and prospective client families to attempt to contact and receive news about their loved ones detained at Alligator Alcatraz, corresponding with state and federal agents to request access to clients at the facility, corresponding and working with partner organizations and attorneys to secure access to the facility for client visits, informing and notifying state and federal congressional representatives about the issues of access to legal visits, or waiting for hours in person at the facility, only to be refused an in-person visit. The time spent by SOS attorneys and staff trying to establish contact with people incarcerated in the Alligator Alcatraz facility has resulted in the organization not being able to help other clients.

25.    Plaintiff Bilbao Law, LLC is a law firm based in Jacksonville, Florida. Bilbao Law helps immigrants in the United States to navigate the complex immigration system. Bilbao Law often handles pro bono detained cases in Florida and is currently representing one person detained at the Alligator Alcatraz facility pro bono. Bilbao Law intends to continue to take cases of people detained at Alligator Alcatraz.

26.    Bilbao Law has represented two clients who have been detained at Alligator Alcatraz, including its client currently detained there. Bilbao Law has been impaired in its ability to represent detained clients in immigration proceedings because of the barriers to access to counsel at the facility. Due to the lack of publicly available information on how to attempt to contact clients at the facility, Bilbao Law staff have

had to expend additional time determining how to contact the facility, and they have faced significant delays in obtaining confidential attorney virtual visits. When they have had virtual visits scheduled, they have been limited. The communications in the virtual visits have taken place in a non-confidential setting with makeshift fabric walls, no roof, and facility staff standing within earshot. For one visit the facility cut the time allowed for the visit nearly in half. Bilbao Law's clients are unable to confidentially call them, so they have been forced to rely on their client's family members relaying information they received on non-confidential lines. Bilbao Law has been unable to exchange legal documents confidentially with its clients at the facility.

27.    The barriers to access to counsel at Alligator Alcatraz have forced Bilbao Law to spend over 100 hours of staff time and at least $7,500 in costs to provide legal services to clients at Alligator Alcatraz. This includes time spent attempting to obtain information about how to establish communication with clients at the facility, speaking and coordinating with client and prospective client families to attempt to contact and receive news about their loved ones detained at Alligator Alcatraz, corresponding with state and federal agents to request access to clients at the facility, corresponding and working with partner organizations and attorneys to secure access to the facility for client visits. The time Bilbao Law staff have spent to date in trying to establish contact with immigrants incarcerated in this facility has resulted in lost ability to help other clients, and to develop client rapport.

## Defendants

28.    **Defendant Kristi Noem** is the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Defendant Noem is a legal custodian of Detained Plaintiffs and the members of the putative class. Defendant Noem is sued in her official capacity.

29.    **Defendant DHS** is a federal executive agency responsible for, among other things, enforcing federal immigration laws and overseeing lawful immigration to the United States. Defendant DHS is a legal custodian of Detained Plaintiffs and the members of the putative class.

30.    **Defendant Todd M. Lyons** is Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement ("ICE"). Defendant Lyons is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures. Defendant Lyons is a legal custodian of Detained Plaintiffs and the members of the putative class. Defendant Lyons is sued in his official capacity.

31.    **Defendant ICE** is a federal law enforcement agency within DHS. Defendant ICE is responsible for the enforcement of immigration laws, including the detention and removal of immigrants. Defendant ICE is a legal custodian of Detained Plaintiffs and the members of the putative class.

32.    **Defendant Garrett Ripa** is Field Office Director for ICE's Enforcement and Removal Operation's ("ERO") Miami, Florida Field Office. Defendant Ripa is a

legal custodian of Detained Plaintiffs and the members of the putative class. Defendant Ripa is sued in his official capacity.

33.    **Defendant Ronald DeSantis** is Governor of the State of Florida. Defendant DeSantis is a legal custodian of Detained Plaintiffs and the members of the putative class. Defendant DeSantis is sued in his official capacity.

34.    **Defendant Kevin Guthrie** is Executive Director of the Florida Division of Emergency Management. Defendant Guthrie is a legal custodian of Detained Plaintiffs and the members of the putative class. Defendant Guthrie is sued in his official capacity.

35.    **Defendant Florida Division of Emergency Management** (FEDM) is a state agency that is overseeing operations at Alligator Alcatraz. It has entered into an arrangement with DHS and ICE to transform the site into an immigration detention facility. Defendant FEDM is a legal custodian of Detained Plaintiffs and the members of the putative class.

36.    Defendants Noem, DHS, Lyons, ICE, and Ripa are collectively referred to as "Federal Defendants." Defendants DeSantis, FEDM, and Guthrie are collectively referred to as "Florida Defendants" or "State Defendants."

## STATEMENT OF FACTS

### I.    Detention of Immigrants at Alligator Alcatraz

37.    On June 23, 2025, the state of Florida began construction of a temporary immigration detention facility known as "Alligator Alcatraz." The facility, built out of

14

tents, trailers, and chain-link fences with barbed wire, sits on an abandoned 11,000-foot runway at the Dade-Collier Training and Transition Airport in the Florida Everglades.

38.    Immigrants detained at Alligator Alcatraz are civil detainees, held pursuant to allegations of federal immigration, not criminal, law violations.

39.    Federal Defendants have stated that people held at Alligator Alcatraz are detained by the State of Florida pursuant to agreement with the federal government under 8 U.S.C. § 1357(g)(1) ("Section 287(g)"), and are "treated as in the custody of the federal government," while in the "physical custody of the State." Fed. Defs.' Resp. to Pls.' Expedited Discovery Request 2, ECF No. 53. The Defendants have produced Section 287(g) agreements that they claim form the basis of Florida's authority to detain people at Alligator Alcatraz. Fl. Defs.' Resp. to Pls.' Expedited Discovery Request, ECF No. 52; *see also* Exhs. to Fed.Defs.' Resp. to Pls.' Expedited Discovery Request, ECF No. 53-1.

40.    These 287g agreements require that "[t]he detention authority delegated by this Addendum must be exercised in accordance with ICE-approved standards . . . only at a state-operated detention facility, that has been approved by ICE or otherwise satisfies ICE-approved standards." Addendum #1, ECF No. 53-1 at 28. The agreements also provide that "ICE shall provide oversight of the detention authority delegated by this Addendum to ensure compliance with federal immigration law and ICE policies. Only [noncitizens] delivered and approved by ICE for detention may be detained under the authority delegated by this addendum. Upon demand of ICE, any

[noncitizen] detained under such authority shall be returned to the physical custody of ICE or released, as directed by ICE. . . . In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the [State] in exercising the delegated authorities under this Addendum shall be ICE-approved policies and procedures. ICE is responsible for providing the [State] with the applicable policies." *Id.* at 29. The agreements also provide that "[i]f a conflict arises between . . . an ICE-approved policy and the [State's] rules, standards, or policies, the conflict shall be promptly reported to [ICE Miami Field Office Director], who shall attempt to resolve the conflict. *Id.* at 22, 29.

41.    Defendant Noem has stated that Alligator Alcatraz is "held to the same standard that all federal facilities are."[3] At a press conference on July 25, 2025, Defendant Guthrie stated that the facility "either meet[s] or exceed the higher standard, whatever that is, whether it is Florida standard or national standard, we meet or exceed the higher standard."[4]

42.    However, it is clear that attorney access at Alligator Alcatraz does not meet ICE detention standards for attorney-client communication.

43.    Federal immigration detention standards require that detainees have access to confidential communication with counsel. ICE sets out a number of

---

[3] Mandy Taheri, *Five States in Talks for Detention Centers Like "Alligator Alcatraz"—Noem*, Newsweek (Jul. 12, 2025), https://www.newsweek.com/five-states-talks-detention-centers-alligator-alcatraz-kristi-noem-2098212.

[4] The Florida Channel, 7/25/25 Governor's Press Conference (Jul. 25, 2025), https://thefloridachannel.org/videos/7-25-25-governors-press-conference/ (at 12:40).

detention standards that apply to facilities in ICE's detention network. These standards
provide for confidential in-person visits, telephone calls, and mail between detainees
and their counsel, and for counsel to bring interpreters to attorney-client visits and
calls.[5] ICE's "Legal Access in Detention" factsheet outlines the specific ways in which
ICE's detention standards provide for attorney access.[6] These standards provide for
in-person and videoconference legal visits, confidentiality of communication,
exchange of legal documents, the provision of unmonitored outgoing legal calls,
exchange of legal documents, and legal mail. *Id.*

    44.    Defendant FDEM, along with Defendants' contractor, Critical Response
Strategies ("CRS"), which upon information and belief provides staffing and
operations at Alligator Alcatraz, have promulgated a draft Visitation Policy for the
facility. This draft Visitation Policy provides for "Visits by Legal Representatives and
Legal Assistants," and states that "[t]he facility shall allow detainees to meet privately
with their current or prospective legal representatives and legal assistants during legal
visitation hours'" that "[l]egal visits shall be permitted seven days per week, including

---

[5] *See* ICE, *Performance Based Nat'l Detention Standards 2011*, 360, 389-91, 398-401 (Rev. 2016),
https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf
[https://perma.cc/GE73-8PRM]; ICE, *2019 Nat'l Detention Standards*, 148-49, 158-61, 166-69,
https://www.i https://perma.cc/W92S-H4FJ ce.gov/doclib/detention-
standards/2019/nds2019.pdf [https://perma.cc/W4F8-FZST]; ICE, *2025 Nat'l Detention Standards*,
148-49, 158-61, 166-68 https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf,
[https://perma.cc/ZT82-4EKE]; ICE, Non-Dedicated Intergovernmental Service Agreement
Standards, 11, https://www.ice.gov/doclib/detention-standards/2025/ndids2025.pdf [].

[6] Immigration and Customs Enforcement, Legal Access in Detention at a Glance (2021),
https://www.ice.gov/doclib/detention/LegalAccessAtAGlance.pdf       [https://perma.cc/9P9G-
3HPF]; *see supra* n.11.

holidays, with minimum visitation hours of eight hours on regular business days and four hours on weekends and holidays." "Authorized legal visitors" include attorneys in good standing, accredited legal representatives, law students or graduates working under supervision, and translators and interpreters who have passed security clearances. The draft Visitation Policy also states that "[t]he facility shall provide notice of legal visitation rules and hours, prominently posted within legal visiting areas," "shall not require legal visitors to provide detainees' Alien Registration Numbers (A Numbers) as a condition of visitation," "shall provide procedures allowing legal visitors to confirm detainees' presence by telephone prior to visitation," and that "[d]etainees may meet prospective or current legal representatives without requiring completed Form G-28." The draft Policy further provides that the "facility shall provide private consultation rooms to ensure confidentiality during legal visits," and that the "facility's procedures shall permit the exchange of documents between detainees and legal representatives, even if contact visitation rooms are available. Documents will be inspected but not read. Detainees may retain legal materials for personal use." The draft Policy also provides that the facility "shall allow confidential group meetings involving a legal service provider and two or more detainees," that "ICE/ERO shall supply the facility with an updated list of pro bono legal service provides," which shall be posted "in detainee housing units and other common areas. The facility shall also coordinate detainee sign-up sheets with pro bono organizations and notify detainees in an understandable manner." The draft Policy also requires that

the "facility's written legal visitation policy shall be made available upon request to detainees and legal visitors." Decl. Mark Saunders 272-276, ECF No. 49-1.

## II.    Restrictions on Access to Counsel at Alligator Alcatraz.

45.    Defendants have restricted the ability of immigrants detained at Alligator Alcatraz to communicate timely and confidentially with legal counsel, and in some cases, entirely blocked attorney access.

46.    The DHS and Florida Defendants have unreasonably restricted immigrant detainees' access to counsel at Alligator Alcatraz. "Regulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). Their intrusion on detainees' confidential communication with counsel undermine the attorney-client privilege, the "oldest of the common-law privileges." *Diamond Resorts U.S. Collection Dev.. LLC. v. U.S. Consumer Att'ys*, 519 F. Supp. 3d 1184, 1197 (S.D. Fla. 2021) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

47.    **Defendants have engaged in a pattern and practice of transferring detainees whose attorneys have requested legal visits immediately prior to scheduled visits.** This practice has precluded detainees from meeting with counsel while held at the facility. Defendants have thwarted in-person attorney visitation by requiring that attorneys submit a request three business days in advance to visit clients in person at the facility—a requirement that does not exist at any other ICE detention

facility in Florida, and is far from the norm for jails and prisons, which allow attorneys and legal representatives to conduct in-person visits during visitation hours without prior schedule with the facility.

48.    For example, Troy Elder, an attorney for Americans for Immigrant Justice ("AIJ") submitted an urgent attorney visitation request to the facility on August 11, 2025, seeking legal visits with ten detained clients. The request included attorney identification, proof of bar admission, executed Forms G-28, and legal visitation forms, and stated the attorneys' availability for visits on August 12 or August 14, 2025, either in person, by phone, or video. Later that day, the facility replied that in-person attorney interviews could be scheduled for Thursday, August 14, 2025, beginning at 9:00 a.m., and inquired whether thirty minutes per detainee would suffice. AIJ confirmed that this was acceptable, and the facility issued written confirmation that afternoon that the AIJ visits were scheduled for August 14, 2025, from 9:00 a.m. to 2:00 p.m. However, late in the evening on August 13, 2025, the facility notified AIJ that *all ten clients* scheduled for visits had been transferred out of the facility, that there was no other information regarding the clients' information, and that the visits could not occur.

49.    On August 18, 2025, Mr. Elder submitted another visitation request by email, requesting visits with another group of 21 detained clients. The request contained the subject heading "URGENT Attorney Request for Visitation" and reiterated the urgent nature of the request in the body of the email. The email also included the clients' identifying information, attorney information, proof of bar

admission, executed Forms G-28, and required visitation forms. Mr. Elder indicated availability for in-person, telephonic, or video meetings on August 19, August 21, and August 22, 2025.

50.     On the same day, the facility replied, asking whether AIJ wanted to meet with the detainees individually. Mr. Elder responded on the same day, confirming the desire for individual visits, and requested the visitation schedule. The facility confirmed that in-person visits were scheduled for August 21, 2025, from 8:00 a.m. to 5:00 p.m. However, on August 21, 2025, the facility informed Mr. Elder that *all 21 of the clients* scheduled for visitation had been transferred from the facility, that the facility had no other information about their whereabouts, and that the visits would be canceled.

51.     Similarly, on August 27, 2025, attorney Carlos Saturne requested an in-person legal visit with his client held at Alligator Alcatraz who had been held at the facility since mid-August. The facility scheduled an in-person visit to take place on September 3, 2025, at 1:30 p.m. However, on September 2, an ICE officer called Mr. Satrune and informed him that it would "be better to wait" to visit his client at the Broward Transitional Center, another facility, because ICE had decided to transfer him from Alligator Alcatraz. On September 3, the ICE detainee locator confirmed that his client had been transferred. Mr. Saturne was never able to have a single legal call or visit with his client while detained at Alligator Alcatraz.

52.     **Attorneys face prolonged delays in scheduling attorney videoconferences and in-person visitation, prejudicing detainees' cases.** Scheduling

21

delays are so significant that some detainees are unable to speak with counsel in advance of key deadlines. For example, attorney Vilerka Bilbao, of Organizational Plaintiff Bilbao Law, LLC, submitted a request on August 6 for a legal videoconference to prepare for an upcoming appeal brief deadline. However, the appointment was scheduled for August 11, the day that her client's appeal brief was due. Attorney Jose Flores, who represents Plaintiff D.G.M., sent a request for a video call to the facility via email at legal@privacy6.com on August 25, 2025, but never received a response. As a result, he has had to resort to speaking with D.G.M. on the monitored, outgoing phone line, and has been limited from discussing sensitive matters because it is not a confidential phone line.

53.    Similarly, attorney Johan Gutierrez sent an urgent request for a video call on July 23, 2025, because his client had a bond hearing scheduled on July 25. He was informed, however, that no appointments were available until July 29, four days after the hearing (which was ultimately canceled by the court for lack of jurisdiction over detainees at Alligator Alcatraz).

54.    Responses to requests for in-person attorney visitation are extremely delayed, so that some detainees never have the opportunity to meet with their attorneys at all. This policy is starkly different from other immigration detention facilities, which allow attorneys to visit clients at the facility on the same day without a pre-scheduled appointment. This requirement has significantly hindered the ability of attorneys to meet with clients in person.

55.     For example, on July 30, 2025, Mich Gonzalez, an attorney from Organizational Plaintiff Sanctuary of the South ("SOS"), visited the facility to meet with his client, Michael Borrego, but was turned away from the facility. An officer, who appeared confused by his presence and who explained that she "was not deputized" and therefore "did not know the law" told him that he needed to request approval from the legal@privacy6.com email to be allowed access. Mr. Gonzalez did so, and on July 31, received an email from the facility stating that he could not be accommodated to visit clients in person at the facility until August 4, 2025. On the evening of August 1, 2025, Mr. Borrego was transferred from Alligator Alcatraz to the Krome Detention Center, where Mr. Gonzalez was able to meet with him in person the next day, without having to prearrange a visit. This visit at Krome was the first time that SOS was able to meet with Mr. Borrego in person since his initial detention at Alligator Alcatraz on July 5, 2025.

56.     **Detainees cannot speak confidentially with counsel in legal videoconferences.** Detainees cannot speak confidentially in legal videoconferences. As attorney Johan Gutierrez noted with respect to a July 29 videoconference with his client, "it appeared that he was in an open cage with other people in the vicinity, and that others could hear what he was saying." His client confirmed that "whatever he said . . . was not private." Similarly, SOS attorneys Katherine Blankenship and Mich Gonzalez have observed that during supposedly confidential legal videoconferences taking place on July 16 and July 23, they have been able to ask questions of facility staff, and facility staff have stepped into the video frame to respond. Attorney Bilbao

of Organizational Plaintiff Bilbao Law, LLC, observed that communication with her

client on the videoconference was clearly not confidential, and that her client sat in

sort of a "tent with soft-sided, makeshift fabric walls and no roof."

57.    **Detainees cannot speak confidentially with counsel in outgoing phone

calls.** Detainees cannot speak confidentially in outgoing phone calls, as they are

monitored and recorded. Unfortunately, these calls are the only way that detainees

can affirmatively reach out to contact counsel. This stands in stark contrast to other

ICE detention facilities, which require the provision of telephones for outgoing legal

calls where detainees "can make such calls without being overheard by staff or other

detainees," and which "staff may not monitor."[7]

58.    **Detainees cannot confidentially exchange legal documents and have

no way to receive legal mail.** There has never been any legal mail system at the facility

since it opened. Legal staff who have attempted to visit the facility to collect signatures

on time-sensitive documents have been turned away and informed that because there

is no legal mail system, documents can be left at the facility to be picked up with a

client's signature in the future at an unknown date and time. This process is not

confidential.

59.    In addition, the "Legal Counsel Visitation Request Form" that the

facility requires attorneys to complete for a legal visit requires attorneys to "[a]ttach

---

[7] U.S. Immigration and Customs Enforcement, Performance Based National Detention Standards
2011 389 (2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.

copies of legal documents you intend to bring for approval. All items are subject to inspection and must be pre-approved." An excerpted image of the form is below:

**Documents and Devices (if applicable)**

*Attach copies of legal documents you intend to bring for approval. All items are subject to inspection and must be pre-approved.*

Documents to be Reviewed with Inmate:

_____

60.    Detainees are prohibited from bringing documents to video calls with attorneys. This prohibition delays attorneys' ability to review documents with clients and obtain critical information for filings.

61.    **Defendants refuse to make available basic information regarding attorney access protocols necessary for communication to detainees and the public**. Defendants have failed to make publicly available basic information about attorney access policies or protocols at the facility, or to provide that information to detainees. Without this information, attorneys and detainees do not know how to communicate with each other. Publication of this information is routine for immigration detention facilities, as ICE's website includes a webpage that lists attorney visitation protocol for all other detention facilities nationwide. [8] Provision of attorney access instructions is also required by detention standards. ICE's Performance Based Detention Standards

---

[8] U.S. Immigration and Customs Enforcement, Detention Facilities, https://www.ice.gov/detention-facilities [https://perma.cc/YY7F-U9QN] (last updated Jun. 24, 2025). This website includes links to individual detention facilities, which in turn, include information regarding attorney visit protocol on the "Hours of Visitation" section. *See, e.g.* U.S. Immigration and Customs Enforcement, Krome North Service Processing Center, https://www.ice.gov/detain/detention-facilities/krome-north-service-processing-center [https://perma.cc/Z67Q-722E] (last updated Jun. 24, 2025).

requires that each newly-admitted detainee be given a copy of the ICE National Detainee Handbook.[9] The ICE National Detainee Handbook, in turn, includes a section on "Communicating with Family, Friends, and Legal Representatives," which provides information on placing unmonitored calls to lawyers, the mail system, placing calls to attorneys, and in-person visits with attorneys and paralegals, and specifies that detainees should also check the facility's local rules.[10]

62.     **Attorneys cannot locate detained clients at Alligator Alcatraz**. Unlike all other immigration detention facilities, ICE's detainee locator continues to omit any information about detainees held at Alligator Alcatraz, so attorneys cannot confirm whether detained clients are held at the facility. The ICE National Detainee Handbook, which is required to be provided to all detainees by ICE's detention standards, includes a section on "Communicating with Family, Friends, and Legal Representatives," which specifies that "your . . . legal representatives . . . may be trying to locate you. They can find you through the Online Detainee Locator System."[11]

63.     Typically, the location of and contact details for immigrant detainees are available      on      ICE's      Online      Detainee      Locator      System      at

---

[9] U.S. Immigration and Customs Enforcement, Performance Based National Detention Standards 2011 56 (2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.

[10] U.S. Immigration and Customs Enforcement, National Detainee Handbook 9-12 (2024) https://www.ice.gov/doclib/detention/ndHandbook/ndhEnglish.pdf [https://perma.cc/W3PQ-K27B ].

[11] U.S. Immigration and Customs Enforcement, National Detainee Handbook 10 (2024) https://www.ice.gov/doclib/detention/ndHandbook/ndhEnglish.pdf [https://perma.cc/W3PQ-K27B ].

https://locator.ice.gov/odls/#/search. A user first may enter the person's A-number
(a unique identification number provided by ICE to each individual in its system) and
country of birth, or provide the person's name, country of birth, and date of birth. The
online locator should then provide the name of the facility where the person is
detained, with a link to a webpage that provides information on how to contact the
facility and communicate with detainees.

64.    Attorneys who have checked the ICE detainee locator for clients known
to be held at Alligator Alcatraz from those clients contacting family or the attorneys
via nonconfidential pay phone calls have discovered that the information provided on
the ICE locator is erroneous, or that their clients do not appear in the locator system
at all. As the Miami Herald recently reported, "[i]ndividuals sent to the makeshift
detention center do not show up in an online government database that allows the
public to search for immigrant detainees' whereabouts."[12]

65.    Attorneys have also checked the Florida Department of Corrections
inmate                            locator                            website                            at
https://pubapps.fdc.myflorida.com/OffenderSearch/search.aspx, to determine the
location of their clients or to determine how to contact them. However, detainees held
at Alligator Alcatraz do not appear on this locator.

---

[12] Ana Ceballos et al., *Is Your Family Member or Client at Alligator Alcatraz? We Obtained a List*, Miami
Herald (Jul. 14, 2025, 11:01 AM),
https://www.miamiherald.com/news/local/immigration/article310541770.html.

### III.    Even Prison Systems Ensure More Robust Attorney Access.

66.    Even prison systems provide the people they incarcerate with more meaningful attorney access while safeguarding any legitimate needs of the system, such as facility security.

67.    For example, the Federal Bureau of Prisons provides attorney visits in a "private conference room, if available," allows confidential legal mail, and facilitates at least some unmonitored legal telephone calls. 28 C.F.R. §§ 540.19(a), 540.103, 543.13(a)-(b) (2025).

68.    Florida's state prison system likewise guarantees in-person legal visits in a location that "insure[s] . . . privacy," unmonitored legal calls, and confidential legal mail. Fla. Admin. Code Ann. r. 33-210.102(2)(c)-(e), (8)(d), 33-602.205(3)(a), 33-601.711(5) (2025).

## CLASS ACTION ALLEGATIONS

69.    Detained Plaintiffs bring this action under the Federal Rules of Civil Procedure 23(a), and 23(b)(2) on behalf of themselves and a class of all other persons similarly situated.

70.    Detained Plaintiffs propose to represent the following Proposed Class: "all persons who are currently, or in the future, held at the Alligator Alcatraz detention facility."

71.    The proposed class and the subclass satisfy the requirement of Rule 23(a) because the class is so numerous that joinder of all members is impracticable. There are currently at least 120 immigrants reportedly detained at Alligator Alcatraz, with

stated plans to hold more in the future. The proposed class therefore also includes numerous future detainees who will be held at the facility. The government has stated that it intends to continue detaining immigrants at the facility. Alligator Alcatraz has a reported capacity of at least 3,000 people. The proposed class is fluid, as the government continues to transfer detainees to and from the facility, making joinder of all members not only impracticable but impossible.

72.     The proposed class satisfies the commonality requirements of Rule 23(a)(2). The members of the class are subject to a common practice: detention at Alligator Alcatraz and the Defendants' same limits on communication with legal counsel at the facility. The suit also raises questions of law common to the members of the proposed class, including whether the Defendants' policies and practices restricting attorney access violate the First Amendment.

73.     The proposed class satisfies the typicality requirements of Rule 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Each proposed class member, including the proposed class representatives, has experienced or faces the same principal injury of denial of access to counsel, based on the same policy and practice, which is unlawful to the entire class, because they violate the First Amendment of the U.S. Constitution.

74.     The proposed class satisfies the adequacy requirements of Rule 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class— among other things, an order declaring the government's policies and practices with respect to attorney access unlawful and injunctive relief to provide access to counsel

in accordance with constitutional requirements. In defending their rights, Plaintiffs will defend the rights of all proposed class members fairly and adequately.

75.    The proposed class is represented by experienced attorneys from the American Civil Liberties Union, American Civil Liberties Union of Florida, and Americans for Immigrant Justice. Proposed class counsel has extensive experience litigating class action lawsuits and complex systemic cases in federal court on behalf of detained immigrants and incarcerated people.

76.    The proposed class also satisfies Rule 23(b)(2). Defendants have acted on grounds generally applicable to the class by subjecting them to the same policies and practices with respect to attorney access. Injunctive and declaratory relief is therefore appropriate with respect to the class as a whole.

77.    Each of the foregoing paragraphs is incorporated by reference in each of the following claims.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the First Amendment
*On behalf of Detained Plaintiffs and the Proposed Class*
Against DHS Defendants and Florida Defendants under the U.S. Constitution and equity

78.    The First Amendment of the Constitution guarantees Detained Plaintiffs and the proposed class the right to hire, consult, and communicate confidentially with an attorney. The government may not unreasonably restrict this right.

79.    By unreasonably restricting Detained Plaintiffs and the proposed class of the ability to retain, consult, and communicate confidentially with counsel, DHS

Defendants have violated and continue to violate their rights under the First Amendment.

80.     Detained Plaintiffs and the proposed class have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and failure to act, and are entitled to injunctive relief to avoid any further injury.

81.     Plaintiffs have an equitable cause of action to pursue this claim against all Defendants.

## COUNT II
### Violation of the First Amendment
*On behalf of Detained Plaintiffs and the Proposed Class*
Against Florida Defendants, 42 U.S.C. § 1983

82.     The First Amendment of the Constitution guarantees Detained Plaintiffs and the proposed class the right to hire, consult, and communicate confidentially with an attorney. The government may not unreasonably restrict this right.

83.     The First Amendment, as applied to state and local government agencies and officials by the Fourteenth Amendment, prohibits governmental entities from "abridging the freedom of speech." U.S. Const. Amend. I.

84.     By unreasonably restricting Detained Plaintiffs and the proposed class of the ability to retain, consult, and communicate confidentially with counsel, the Florida Defendants have violated and continue to violate their rights under the First Amendment.

85.     Detained Plaintiffs and the proposed class have no clear and adequate remedy at law for this violation of their constitutional rights and have and will suffer

irreparable harm as a result of Defendants' conduct, which will continue until and

unless enjoined by appropriate order of this Court.

**COUNT III**
**Violation of the First Amendment**
*On behalf of Organizational Plaintiffs*
Against DHS Defendants and Florida Defendants under the U.S. Constitution and
equity

86.    The First Amendment of the United States Constitution prohibits

governmental entities from abridging the freedom of speech or association. U.S.

Const. Amend. I

87.    Organizational Plaintiffs have a right to free speech and association

under the First Amendment, which includes the right of the legal organization to speak

confidentially to clients, prospective clients, and witnesses about their legal rights and

about potential civil rights claims, and to represent them in court, because those

activities by Organizational Plaintiffs are modes of expression and association. *See,*

*e.g., In re Primus*, 436 U.S. 412, 423-26, 431 (1978); *NAACP v. Button*, 371 U.S. 415,

428-30 (1963); *Jean v. Nelson*, 711 F.2d 1455, 1508-09 (11th Cir. 1983), *on reh'g,* 727

F.2d 957 (11th Cir. 1984), *aff'd,* 472 U.S. 846 (1985).

88.    Organizational Plaintiffs' First Amendment right to free speech and

association extends to confidential communications with current or prospective clients

who are in detention. *See Thornburgh*, 490 U.S. at 407-08 (those who wish to

communicate with incarcerated people "have a legitimate First Amendment interest

in access to prisoners"); *Procunier*, 416 U.S. at 408-09 (both incarcerated people and

32

those with whom they correspond have First Amendment rights that can be infringed by unjustified government interference).

89.     By their actions and inactions, DHS Defendants have denied Organizational Plaintiffs any access to their current and prospective clients incarcerated at Alligator Alcatraz, so that they may properly represent clients in pending immigration proceedings, or to obtain information from clients on potential constitutional violations at the facility. There is no legitimate governmental interest justifying DHS Defendants' policies and practices that have resulted in interference with Organizational Plaintiffs to their current and prospective clients.

90.     DHS Defendants have interfered with Organizational Plaintiffs' ability to carry out a core component of their public interest missions—namely, to protect and defend the rights of detained immigrants. The DHS Defendants accordingly have violated Organizational Plaintiffs' First Amendment right to freedom of speech and association.

91.     Organizational Plaintiffs have no clear and adequate remedy at law for this violation of their constitutional rights. They have suffered and will imminently suffer irreparable injury caused by DHS Defendants' policies, practices, and failures to act, and they are entitled to injunctive relief to avoid any further injury.

92.     Organizational Plaintiffs have an equitable cause of action to pursue this claim against all Defendants.

**COUNT IV**
**Violation of the First Amendment**
*On behalf of Organizational Plaintiffs*

33

Against Florida Defendants, 42 U.S.C. § 1983

93.    The First Amendment, as applied to state and local government agencies
and officials by the Fourteenth Amendment, prohibits governmental entities from
abridging the freedom of speech or association. U.S. Const. Amend. I.

94.    Organizational Plaintiffs have a right to free speech and association
under the First Amendment, which includes the right to speak confidentially to clients,
prospective clients, and witnesses about their legal rights and about potential civil
rights claims, and to represent them in court, because those activities by SOS are
modes of expression and association. *See, e.g., In re Primus*, 436 U.S. at 423-26; *Button*,
371 U.S. at 428-30; *Jean*, 711 F.2d at 1508-09.

95.    Organizational Plaintiffs' First Amendment right to free speech and
association extends to confidential communications with current or prospective clients
who are in detention. *See Thornburgh*, 490 U.S. at 407-08 (those who wish to
communicate with incarcerated people "have a legitimate First Amendment interest
in access to prisoners"); *Procunier*, 416 U.S. at 408-09 (both incarcerated people and
those with whom they correspond have First Amendment rights that can be infringed
by unjustified government interference).

96.    By their actions and inactions, the Florida Defendants have denied
Organizational Plaintiffs access to current and prospective clients incarcerated at
Alligator Alcatraz, so that they may represent clients in pending immigration
proceedings, or to obtain information from clients on potential constitutional
violations at the facility. There is no legitimate governmental interest justifying the

34

Florida Defendants' policies and practices that have resulted in an interference and categorical denial of access for Organizational Plaintiffs to their current and prospective clients.

97.    The Florida Defendants have interfered with Organizational Plaintiffs' ability to carry out a core component of their public interest mission—namely, to protect and defend the rights of detained immigrants. The Florida Defendants accordingly have violated Organizational Plaintiffs' First Amendment right to freedom of speech and association.

98.    Organizational Plaintiffs have no clear and adequate remedy at law for this violation of their constitutional rights. They have suffered and will imminently suffer irreparable injury caused by Florida Defendants' policies, practices, and failures to act, and they are entitled to injunctive relief to avoid any further injury.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request that the Court grant the following relief:

a.    Certify this complaint as a class action and appoint the Detained Plaintiffs as class representatives and the undersigned counsel as class counsel.

b.    Enter judgment for the Plaintiffs and the proposed class against Defendants.

c.    Declare that Defendants' actions violate the First Amendment rights of Detained Plaintiffs, the proposed class members, and Organizational Plaintiffs.

d.    Order Defendants forthwith to permit and ensure that Detained Plaintiffs and the proposed class members can meet and confer confidentially in person with

their current or prospective legal representatives and legal assistants during legal visitation hours, without requiring pre-scheduled visits, with minimum visitation hours of eight hours on regular business days and four hours on weekends and holidays;

e.    Order Defendants forthwith to permit and ensure that attorney-client videoconference or telephone conversations for Detained Plaintiffs and the proposed class members can meet are timely, confidential, unmonitored, and unrecorded;

f.    Order Defendants to provide and ensure a method for Detained Plaintiffs and proposed class members to place timely, free, confidential, unmonitored, and unrecorded outgoing legal calls;

g.    Order Defendants to provide and ensure a method for timely and confidential legal document exchange and signature, including via fax, email, or electronic signature platform, courier service, and mail.

h.    Order Defendants to provide and post in locations accessible and visible to all Detained Plaintiffs and putative class members written information about protocols for attorney-client communication in English, Spanish, and Haitian Creole;

i.    Order Defendants to maintain publicly available information regarding protocols for attorney-client communication via Defendant ICE and/or State of Florida websites.

j.    Order Defendants to accurately update the location of detainees held at Alligator Alcatraz in Defendant Immigration and Customs Enforcement's Online Detainee Locator System within 24 hours of their transfer to the facility.

36

k.    Award Plaintiffs their costs and reasonable attorneys' fees in this action under the Equal Access to Justice Act, 42 U.S.C. § 1988, and on any other basis justified under law; and

l.    Grant any other and further relief that this Court may deem fit and proper.

Dated: September 11, 2025                Respectfully submitted,

                                        */s/ Eunice H. Cho***
Paul R. Chavez, Fla. Bar No. 1021395    Eunice H. Cho*
Christina LaRocca, Fla. Bar No.          AMERICAN CIVIL LIBERTIES
1025528 AMERICANS FOR                    UNION FOUNDATION
IMMIGRANT JUSTICE                        915 15th St. N.W., 7th Floor
2200 NW 72nd Ave.                        Washington, DC 20005
P.O. Box No 520037                       202-548-6616
Miami, FL 33152                          echo@aclu.org
786-218-3381
pchavez@aijustice.org                    Corene T. Kendrick*
clarocca@aijustice.org                   Kyle Virgien*
                                         AMERICAN CIVIL LIBERTIES
Amy Godshall, Fla. Bar No. 1049803       UNION FOUNDATION
Daniel Tilley, Fla. Bar No. 102882       425 California St., Suite 700
AMERICAN CIVIL LIBERTIES                 San Francisco, CA 94104
UNION FOUNDATION OF                      (415) 343-0770
FLORIDA                                  ckendrick@aclu.org
4343 West Flagler Street, Suite 400      kvirgien@aclu.org
Miami, FL 33134
786-363-2714
agodshall@aclufl.org                     *Counsel for All Plaintiffs and the Proposed*
dtilley@aclufl.org                       *Class*

                                         *\* Admitted pro hac vice.*
                                         *\*\* Lead counsel for Plaintiffs and the*
                                         *Proposed Class*