# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Fort Myers Division
### Case No. 2:25-cv-747-SPC-KCD

H.C.R., et al.,

*Plaintiffs,*

v.

Kristi Noem, et al.,

*Defendants.*

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT

Plaintiffs H.C.R., D.G.M., and H.P., by and through undersigned counsel, hereby move to certify this case as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2).

## INTRODUCTION

This action is filed on behalf of a class of detained individuals held at the immigration detention facility known as "Alligator Alcatraz." Defendants Kristi Noem, Department of Homeland Security, Todd Lyon, Immigration and Customs Enforcement, and Garrett Ripa (collectively "Federal Defendants"), and Defendants Ronald DeSantis, Kevin Guthrie, and Florida Division of Emergency Management (collectively "Florida Defendants") have unduly restricted confidential attorney-client

communication between people detained at the facility and their counsel, which violates Detained Plaintiffs' First Amendment rights to retain and communicate with legal counsel.

Plaintiffs seek certification of a class that consists of: **"All persons who are currently, or in the future, held at the Alligator Alcatraz detention facility."**

The proposed class meets the requirements of Federal Rules of Civil Procedure 23(a) and (b)(2). Defendants are holding at least 120 people at the facility, and plan to transfer even more into the facility in the future (a number of class members that makes joinder impracticable).[1] The facility has a reported capacity of 3,000 people, with room to expand the capacity to 5,000 beds.[2] The proposed class is fluid, as the government frequently transfers people to and from the facility, making joinder of all members not only impracticable, but impossible.

The proposed class members are all bound together by common questions of law and fact—whether barriers to meaningful, confidential access to counsel violate their rights under the First Amendment. The named Plaintiffs H.C.R., D.G.M., and

---

[1] Transcript of Status Conference 6, 8, Sept. 4, 2025, Doc. 111. In a different case regarding Alligator Alcatraz, the court granted a preliminary injunction and ordered defendants to stop transferring people to Alligator Alcatraz and to transfer those currently held at the facility elsewhere. *See Friends of the Everglades, Inc. v. Noem*, No. 1:25-cv-22896-KMW, 2025 WL 2423258 (S.D. Fla. Aug. 21, 2025). The defendants in that matter immediately filed for a stay of that order with the Eleventh Circuit Court of Appeals and have stated that they fully intend to continue detaining immigrants at Alligator Alcatraz as soon as a court allows them to do so. Jt. Status Rep. 2-3, Doc. 108. The Eleventh Circuit Court of Appeals has granted that stay, permitting Defendants to carry out their plan to repopulate the facility. Order, *Friends of the Everglades, Inc. v. Noem*, No. 25-12873, Doc. 42-1 (11th Cir. Sept. 4, 2025).

[2] Chelsea Bailey et al., *'Alligator Alcatraz': What to Know about Florida's New Controversial Migrant Detention Facility*, CNN (July 13, 2025), https://www.cnn.com/2025/07/01/us/what-is-alligator-alcatraz-florida.

H.P. are proper class representatives because their claims are typical of the absent class members and because they and their counsel will adequately and vigorously represent the class.

Certification of the proposed class under Rule 23(b)(2) is satisfied here because Defendants are acting in the same manner with respect to the class, such that a declaration and injunction with respect to the whole class is appropriate.

Plaintiffs are also adequately represented by a team of attorneys with significant experience in immigrants' rights issues, conditions of confinement, and class actions from the American Civil Liberties Union Foundation, the American Civil Liberties Union Foundation of Florida, and Americans for Immigrant Justice.

Class members' claims are not dependent on the facts regarding their underlying immigration law claims or any other individualized determinations. The central question is whether Defendants' actions and restrictions, which affect all members of the proposed class, violate constitutional standards. All people held at Alligator Alcatraz now, or in the future, are entitled to the protections of the First Amendment.

This Court should grant class certification under Rule 23(b)(2), appoint the Individual Plaintiffs as Class Representatives, and appoint the undersigned as Class Counsel.

## BACKGROUND

On June 23, 2025, the state of Florida began construction of Alligator Alcatraz in the middle of the Florida Everglades. This case was initially filed on July 16, 2025, shortly after Defendants began to hold people at Alligator Alcatraz.

Soon after Plaintiffs filed this suit, Defendants responded by implementing some limited measures for attorney-client communication. But Defendants' hastily enacted measures are wholly inadequate. The government continues to impose significant barriers to attorney access for all detainees held at Alligator Alcatraz, in violation of Constitutional requirements. For example:

**Defendants require attorneys to pre-schedule in-person legal visits.** Defendants have obstructed in-person attorney visitation by requiring that attorneys submit a request three business days in advance to visit clients in person at the facility—a practice that is far from the norm for other immigration detention facilities, jails, and prisons, which allow attorneys and legal representatives to conduct in-person visits during visitation hours without prior appointment with the facility. Suppl. Decl. Troy Elder, Ex. A (Facility Visitation Request Guide); Second Suppl. Decl. of Catherine Perez ¶ 10; Second Suppl. Decl. of Johan Gutierrez ¶ 13; Second Suppl. Decl. of Katherine Blankenship ¶ 13; Decl. Kenia Garcia ¶ 13.

**Detainees cannot speak confidentially with counsel in legal videoconferences.** Legal videoconferences take place in "an open cage with other people in the vicinity," where others can hear what detainees are saying, Second Suppl. Gutierrez Decl. ¶ 7, and "not in a private, enclosed room, but a cage with [facility] staff walking by throughout the . . . call." Second Suppl. Blankenship Decl. ¶ 8. The legal videoconferences are "clearly not confidential," and detainees sit in a "sort of tent with soft-sided, makeshift fabric walls and no roof." Suppl. Decl. Vilerka Bilbao ¶ 19. Detainees have confirmed that video calls are not confidential, and that others,

4

including guards, can clearly hear what they are saying during legal calls. Second Suppl. Blankenship Decl. ¶ 8; Decl. Mich Gonzalez ¶ 5. *See also* Second Suppl. Perez Decl. ¶ 9 ("from what my client has told me and what I could see, he is not in a private, closed room.").

**Detainees cannot speak confidentially with counsel in outgoing phone calls.** Detainees cannot speak confidentially in outgoing phone calls, as they are monitored and recorded. Second Suppl. Perez Decl. ¶ 7; Second Suppl. Gutierrez Decl. ¶ 9; Second Suppl. Blankenship Decl. ¶ 7; Suppl. Bilbao Decl. ¶ 12; Decl. Jose Flores ¶ 5; Garcia Decl. ¶ 5. These calls are the only way that detainees can affirmatively reach out to contact counsel.

**Detainees cannot confidentially exchange legal documents and have no way to receive legal mail.** As the Defendants concede, there is no legal mail system at the facility. Fl. Opp. 15, Doc. 49; Decl. of Mark Saunders ¶ 55, Doc. 57. The "Legal Counsel Visitation Request Form" that the facility requires attorneys to complete for an attorney visit instructs attorneys to "[a]ttach copies of legal documents you intend to bring for approval. All items are subject to inspection and must be pre-approved." Saunders Decl. ¶ 12, Ex. 6; Elder Suppl. Decl. ¶ 9, Ex. A. *See also* Flores Decl. ¶ 7; Garcia Decl. ¶ 7; Second Suppl. Blankenship Decl. ¶ 9.

**Defendants refuse to make available basic information regarding attorney access protocols.** Defendants have failed to make publicly available basic information about attorney access policies or protocols at the facility. Second Suppl. Decl. Aida

Ramirez ¶ 6; Second Suppl. Perez Decl. ¶ 6; Second Suppl. Gutierrez Decl. ¶ 8; Suppl. Bilbao Decl. ¶ 8-9; Flores Decl. ¶ 4; Garcia Decl. ¶ 5.

**Attorneys cannot locate detained clients at Alligator Alcatraz.** Unlike all other immigration detention facilities, ICE's detainee locator continues to omit any information about detainees held at Alligator Alcatraz, so attorneys cannot confirm whether detained clients are held at the facility. Second Suppl. Blankenship Decl. ¶ 6; Suppl. Bilbao Decl. ¶ 10; Flores Decl. ¶ 4; Garcia Decl. ¶ 4.

## ARGUMENT

### I.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23.

Civil rights actions are particularly amenable to class treatment, as Rule 23 was enacted to "facilitate the bringing of class actions in the civil-rights area." 7AA Wright & Miller, *Federal Practice & Procedure* § 1775 (3d ed. 2018). The arguments in favor of class certification are especially strong in this context, where individual Class Members are unlikely to be able to pursue their claims individually. People in civil immigration detention are hard-pressed to bring their own civil rights claims, since they are all detained and largely lack counsel. *See Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass. 2014), *rev'd on other grounds*, 819 F.3d 486 (1st Cir. 2016) (certifying class of people in immigration detention because, among other things, "many do not speak English, a majority do not have counsel, and most are unlikely to even know that they are members of the proposed class"); *Gordon v. Johnson*, 300 F.R.D. 28, 29 (D. Mass. 2014) (certifying class of detained immigrants). Here, the difficulties Class Members

would face in pursuing their own claims are compounded because, not only are the Class Members detained, they are also held at Alligator Alcatraz, where access to counsel is highly restricted.

As courts in this Circuit have recognized, the purpose behind class actions is to provide individuals with the means of obtaining redress for claims that would be difficult to bring in individual litigation and to deter wrongdoing. *See Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1307 (S.D. Fla. 2015). "Thus, doubts regarding the propriety of class certification should be resolved in favor of certification." *Id.* (cleaned up).

To obtain class certification, plaintiffs must meet the four prerequisites of Rule 23(a)—impracticability of joinder, commonality, typicality, and adequacy—and satisfy at least one provision of Rule 23(b). *See* Fed. R. Civ. P. 23(a), (b); *Braggs v. Dunn*, 317 F.R.D. 634, 652 (M.D. Ala. 2016). "The court's role at the class-certification stage is not to decide the underlying claims, but rather to determine whether the requirements for certification are met." *Id.* at 652; *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."). Class certification is particularly appropriate here, as all requisite elements of Rule 23 have been met, and there is no other way to challenge the legality of Defendants' actions.

**A. The Proposed Class Satisfies the Impracticability of Joinder Requirement of Rule 23(a)(1)**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). However, "a plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). Indeed, "the focus of the numerosity inquiry is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 671-72 (S.D. Fla. 2011) (quoting *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986)). Further, "[i]n assessing impracticability, 'courts should take a common-sense approach which takes into account the objectives of judicial economy and access to the legal system.'" *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993) (quoting 1 Herbert B. Newberg, *Newberg On Class Actions* § 3.03 (2d Ed.1985)). Toward that end, courts in the Eleventh Circuit have found joinder impracticable and the numerosity requirement satisfied in cases with even a small number of class members. *See Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1267 (11th Cir. 2009) (noting that generally "less than twenty-one [potential class members] is inadequate, more than forty adequate," with numbers between varying according to other factors); *see also Sunshine Child.'s Learning Ctr., LLC v. Waste Connections of Fla., Inc.*, 671 F. Supp. 3d 1366, 1372 (S.D. Fla. 2023) (emphasizing that the focus of the

numerosity inquiry is on the impracticability of joinder, not merely the number of class members, and reiterating that more than forty is generally adequate).

This requirement is easily met here because there are at least 120 people who are now held at Alligator Alcatraz, and because Defendants plan to transfer even more people to the facility.[3] The proposed class includes not only individuals currently detained, but also all future individuals detained at the facility, as people held at the facility now and in the future are or will be subject to Defendants' policies and practices related to their access to counsel.

The Defendants have also expressed plans to continue to expand the facility's capacity from 3,000 to 5,000.[4] Thus, the current number of detained people represents "merely the floor for this numerosity inquiry." *Reid*, 297 F.R.D at 189; *see also R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 368 (S.D.N.Y. 2019) (finding joinder impracticable for certain immigrants applying for legal status in part because "[n]ew members regularly and continuously join the proposed class as their SIJ status petitions are adjudicated."). Other courts presented with similar proposed classes of current and future people in custody have agreed that the impracticability of joinder requirement is readily met in circumstances such as those here. *See, e.g., Rosas v. Baca, No*. CV 12-00428 DDP (SHx), 2012 WL 2061694, at *2 (C.D. Cal. June 7, 2012) ("The Jails currently house thousands of inmates, and are certain to house many more in the future. The court

---

[3] Transcript of Status Conference 6, 8, Sept. 4, 2025, Doc. 111.
[4] Chelsea Bailey et al., *'Alligator Alcatraz': What to Know about Florida's New Controversial Migrant Detention Facility*, CNN (July 13, 2025), https://www.cnn.com/2025/07/01/us/what-is-alligator-alcatraz-florida.

therefore agrees with Plaintiffs' undisputed assertion that the impracticability of joinder requirement has been satisfied."); *see also Colo. Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 359 (D. Colo. 1999) (finding joinder impracticable where many class members could not afford to bring individual actions). The size of the proposed class and the fact that the class includes future members seeking injunctive or declaratory relief make joinder impracticable.

In addition to the large number of proposed class members, other relevant factors, such as "the geographic diversity of the class members, the nature of the action, . . . judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits" all render joinder infeasible and weigh in favor of class certification in this case. *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1197 (S.D. Fla. 2020). The proposed class thus satisfies the numerosity requirement of Rule 23(a)(1).

## B. The Proposed Class Shares Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "relatively light burden" does not require that all questions of law and fact be common to the putative class members. *See Vega*, 564 F.3d at 1268; *see also In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 405 (M.D. Fla. 2018). Rule 23(a)(2) commonality is met where, notwithstanding some factual differences between the class members' individual circumstances, controlling questions of law and fact are common to the entire class. *See Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S.

454, 457 (2006) (stating that "factual differences among the claims of the putative class members do not defeat certification.").

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). The contention of common injury "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*, at 350. "What matters to class certification . . . is . . . the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (citation omitted). "Even a single common question" will support a commonality finding. *Id.* at 359 (citation, quotation mark, and alterations omitted), so long as its resolution will "generate common answers for the entire class." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 146-47 (D.D.C. 2014). The commonality inquiry does not require that all class members suffer a factually identical injury. *See, e.g. Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009); *see also Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235, 1267 (S.D. Fla. 2025) (rejecting state defendants' argument that commonality did not exist when immigrant class members had individualized differences in their situations) (citing *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349 (2011)).

This case presents shared legal and factual questions across the proposed class. Plaintiffs challenge the lack of access to counsel on uniform legal grounds: They allege

that Defendants' barriers to access to counsel at the facility violate the Plaintiffs' rights
under the First Amendment.

Proposed class members also share common facts. All class members are subject
to the same barriers to access to counsel, caused by Defendants. The Defendants'
policies and practices with respect to attorney access affect all class members: they do
not arise out of circumstances unique to each member. These facts satisfy the
commonality requirement. *See Gayle*, 614 F. Supp. 3d at 1197 (finding commonality
where plaintiffs were subject to the "same substantial risk of serious harm" (internal
quotations omitted)).

That named plaintiffs and putative class members held at Alligator Alcatraz
may be in different stages of their individual immigration cases, and have varying
immigration statuses, and various forms of relief potentially available to them, has no
relevance to the question of commonality. These differences do not negate their unified
challenge to Defendants' systemic practices that severely limit confidential access to
counsel and to the immigration courts. *See Cooper v. Southern Co.*, 390 F.3d 695, 714
(11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates
that all putative class members share identical claims, and . . . factual differences
among the claims of the putative class members do not defeat certification.")
(quotation marks and citation omitted), *overruled in part on other grounds by Ash v. Tyson
Foods, Inc.*, 546 U.S. 454, 457 (2006); *Fla. Immigrant Coal.*, 780 F. Supp. 3d, at 1267
(discussing the commonality requirement when provisionally certifying class); *see also
R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 173, 181 (D.D.C. 2015) (provisionally certifying

a class where a uniform "unlawful [immigration] detention policy aimed at deterring mass migration" applied to all class members).

All members of the putative class have suffered the same injury with respect to restrictions on their ability to meaningfully communicate with counsel. For example, all detainees are subject to Defendants' policy and practice requiring attorneys to pre-schedule in-person attorney visits three business days in advance. Suppl. Decl. Troy Elder, Ex. A (Facility Visitation Request Guide). All detainees who have legal videoconference calls are unable to engage in confidential communication with counsel. Suppl. Gutierrez Decl. ¶ 7; Second Suppl. Blankenship Decl. ¶ 8; Gonzalez Decl. ¶ 5; Second Suppl. Perez Decl. ¶ 9; Bilbao Suppl. Decl. ¶ 19. All detainees are unable to place any confidential outgoing legal calls. Second Suppl. Perez Decl. ¶ 7; Second Suppl. Gutierrez Decl. ¶ 9; Second Suppl. Blankenship Decl. ¶ 7; Bilbao Suppl. Decl. ¶ 12; Flores Decl. ¶ 5; Garcia Decl. ¶ 6. All detainees are unable to engage in confidential legal document exchange with counsel. Fl. Opp. 15, Doc. 49; Saunders Decl. ¶ 55, Doc. 49-1; Flores Decl. ¶ 7; Second Suppl. Blankenship Decl. ¶ 9; Garcia Decl. ¶ 7.  All detainees are subject to the absence of  publicly-available information about attorney access protocols at the facility. Second Suppl. Ramirez Decl. ¶ 6; Second Suppl. Perez Decl. ¶ 6; Second Suppl. Gutierrez Decl. ¶ 8; Flores Decl. ¶ 4; Second Suppl. Blankenship Decl. ¶ 6; Garcia Decl. ¶ 5. Defendants have failed to place information about all detainees on their online detainee locators. Second Suppl. Blankenship Decl. ¶ 6; Bilbao Suppl. Decl. ¶ 10; Flores Decl. ¶ 4; Garcia Decl. ¶ 4.

Individual variations in background, immigration relief, or immigration status do not defeat commonality where Plaintiffs "have suffered the same injury" from "the same conduct" by Defendants. *Dukes*, 564 U.S. at 350. Nor must Plaintiffs show that every question can be resolved class wide—just that the matter presents one or more "common questions apt to drive the resolution of the litigation." *Id.*

All proposed class members seek the same declaratory and injunctive relief. All proposed class members, current and future, are entitled to the protections afforded by the First Amendment. The Court's determination of the legality of Defendants' actions and inactions on one or more of the grounds alleged by all class members will resolve all claims "in one stroke." *Id.*; *Fla. Immigrant Coal.*, 780 F. Supp. 3d, at 1267 ("For purposes of commonality, even a single common question will do.") (quoting *Dukes*, 564 U.S. at 359). Because Plaintiffs challenge a class-wide lack of access to counsel that applies broadly and uniformly to the entire class, Rule 23(a)(2)'s commonality requirement is easily satisfied.

## C. The Class Representatives' Claims Are Typical of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement centers on the relationship between the proposed class representatives and the other members of the class. *Ibrahim v. Acosta*, 326 F.R.D. 696, 700 (S.D. Fla. 2018) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009)). This analysis turns on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs,

14

and whether other class members have been injured by the same course of conduct."
*In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 653 (S.D. Fla. 2012). "A sufficient
nexus is established if the claims or defenses of the class and the class representative
arise from the same event or pattern or practice and are based on the same legal
theory." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla.
2004).

Commonality and typicality tend to overlap, as each looks to the nature of the
claims presented in the case, and whether the class members and the named plaintiffs
are similarly situated as to those claims. *Dukes*, 564 U.S. at 349 n.5 ("Both
[commonality and typicality] serve as guideposts for determining whether under the
particular circumstances maintenance of a class action is economical and whether the
named plaintiff's claim and the class claims are so interrelated that the interests of
the class members will be fairly and adequately protected in their absence."). Thus,
in *Ibrahim*, having already discussed the questions of law and fact common to the class,
the court had no trouble concluding that the typicality requirement was met for the
same reasons—with virtually no additional discussion. *See Ibrahim,* 326 F.R.D. at 700
(citing *Dukes*, 564 U.S. at 349 n.5).

Here, the proposed class representatives and the class both challenge the denial
of access to counsel on the same legal grounds. The class representatives seek the same
declaratory and injunctive relief as the proposed class, and face the same
unconstitutional barriers to access to counsel. *See Gayle*, 614 F. Supp. 3d at 1198 ("The
named plaintiffs' claims are typical if they stem from the same event, practice, or

course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory."). Their claims are not only representative of, but inextricable from, those of the class they seek to represent.

Class members may have different backgrounds or individual circumstances; however, this does not defeat typicality. "[T]he commonality and typicality requirements of Rule 23(a) tend to merge," as both serve to ensure the claims of the class representatives align with those of absent class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Because all class members are subject to the same lack of access to counsel and raise the same legal challenges, the typicality requirement is satisfied.

### D. The Class Representatives Are Adequate

Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy depends on the resolution of two questions: (1) "whether plaintiffs have interests antagonistic to those of the rest of the class" and (2) "'whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation[.]" *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 496 (S.D. Fla. 2003) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)).

*The Proposed Class Representatives Are Adequate Class Representatives*

The proposed class representatives, H.C.R., D.G.M., and H.P., are currently held at the Alligator Alcatraz facility, where they are unable to have meaningful, timely, confidential access to their attorneys. Flores Decl. ¶¶ 3-8; Second Suppl.

Blankenship Decl. ¶¶ 4a, 6, 7, 8, 9, 13; Garcia Decl. ¶¶ 3-9. Their interests mirror those
of the class and they are willing to pursue this case on behalf of all who may be affected
by the lack of confidential access to counsel at the facility. Flores Decl. ¶ 3; Second
Suppl. Blankenship Decl. ¶ 4a; Garcia Decl. ¶ 3.

Plaintiffs will fairly and adequately protect the interests of the proposed class.
They do not seek any unique or additional benefit from this litigation that may make
their interests different from or adverse to those of absent class members. Instead,
Plaintiffs aim to secure relief that will protect them and the entire class from
Defendants' challenged policies and practices, and to enjoin Defendants from further
violations.

### Plaintiffs' Counsel Are Adequate Class Counsel

Under Federal Rule of Civil Procedure 23(g), any order certifying a class must
appoint class counsel who will "fairly and adequately represent the interests of the
class." In deciding whether counsel meet that standard, courts consider "the work
counsel has done in identifying or investigating potential claims in the action,"
"counsel's experience in handling class actions, other complex litigation, and the types
of claims asserted in the action," "counsel's knowledge of the applicable law," and
"the resources that counsel will commit to representing the class." Fed. R. Civ. P.
23(g)(1)(A)(i)–(iv); s*ee, e.g.*, *Melanie K. v. Horton*, No. 1:14-CV-710-WSD, 2015 WL
1308368, at *2 (N.D. Ga. Mar. 23, 2015).

Here, Plaintiffs' counsel amply satisfy these criteria. Counsel from the
American Civil Liberties Union Foundation, the American Civil Liberties Union

Foundation of Florida, and Americans for Immigrant Justice represent Plaintiffs. Proposed class counsel have significant experience with complex class action litigation, including cases involving unconstitutional conditions of confinement in detention facilities, and unconstitutional lack of access to counsel, and will fairly and adequately protect the interest of the class. Class counsel have invested considerable time gathering facts and researching how the lack of access to counsel at the facility violates the Constitution.

Counsel have extensive familiarity with complex federal litigation, including civil-rights actions, and class-based requests for equitable relief. They likewise have concrete knowledge of the relevant legal frameworks as well as the injunctive remedies required to stop governmental acts that exceed state or federal authority. They also possess adequate resources to manage this class action and to ensure that any relief secured will be monitored and enforced as necessary. No conflicts of interest appear in the record, and the proposed counsel's litigation history demonstrates a proven capacity to undertake representation that demands significant briefing, motion practice, and ongoing oversight. *See* Decl. of Eunice Cho, Doc. 6-1; Decl. of Daniel Tilley, Doc. 6-3; Decl. of Paul R. Chavez, Doc. 6-2.

Under these circumstances, appointment of Plaintiffs' counsel as class counsel is warranted. They have satisfied Rule 23(g)(1)(A) by investigating and pleading the claims, demonstrating the requisite knowledge and experience, and pledging to devote the resources required for this litigation. They "will fairly and adequately represent the

interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court should therefore appoint

them as class counsel concurrent with granting class certification.

### E. The Class Satisfies Rule 23(b)(2)

Class certification under Rule 23(b)(2) is proper where "the party opposing the

class has acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief or corresponding declaratory relief is appropriate respecting the

class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) has been liberally applied in

the area of civil rights . . . ." *Braggs*, 317 F.R.D. at 667 (internal quotation marks

omitted); *see also* Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966

amendment ("[A]ctions in the civil-rights field" are paradigmatic Rule 23(b)(2) class

actions).  Indeed, "some courts have gone so far as to say that the rule's requirements

are almost automatically satisfied in actions primarily seeking injunctive relief." *Id.*

(quoting *Baby Neal v. Casey,* 43 F.3d 48, 59 (3d Cir. 1994) (internal quotation marks

omitted)).  "The critical inquiry is whether the class members have suffered a common

injury that may properly be addressed by class-wide injunctive or equitable relief."

*Ibrahim*, 326 F.R.D. at 701 (citing *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 (11th

Cir. 1983)); *see also Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible

nature of the injunctive or declaratory remedy warranted—the notion that the conduct

is such that it can be enjoined or declared unlawful only as to all of the class members

or as to none of them.'").

Courts have repeatedly certified classes of detained immigrants challenging

systemic barriers to legal access under Rule 23(b)(2), even where individual

circumstances vary. *See Padilla v. U.S. Immigr. & Customs Enf't*, 379 F. Supp. 3d 1170,
1179-81 (W.D. Wash. 2019) (certifying two classes of detained asylum seekers
challenging systemic delays in credible fear interviews and bond hearings; court
emphasized uniformity of harm and relief sought); *Lyon v. U.S. Immigration & Customs
Enf't*, 300 F.R.D. 628, 643-43 (N.D. Cal. 2014) (certifying class of immigrant detainees
seeking improved access to counsel), *modified*, 2015 WL 4538047 (N.D. Cal. July 27,
2015) (expanding class).

This action falls squarely within the category of cases contemplated by Rule
23(b)(2). Defendants' challenged practices and policies with respect to attorney access
are not tailored to individuals, but apply to the whole population of detained people
held at the facility. They apply to all class members simply by virtue of their status as
persons held at Alligator Alcatraz, without regard to the individual circumstances of
their underlying immigration cases or any other differences among them. For the
same reason, all class members seek the same declaratory and injunctive relief.
Certification pursuant to Rule 23(b)(2) is therefore also appropriate.

## CONCLUSION

The proposed class satisfies the requirements of Rule 23(a) and (b)(2). Plaintiffs
request that this Court grant class certification to allow the provision of relief for the
class. Given the exigent nature of this relief, Plaintiffs request that, should the Court
require additional time to consider the class certification, it grant provisional class
certification in connection with a preliminary injunction.

Dated: September 11, 2025                    Respectfully Submitted,

                                             */s/ Eunice H. Cho***

Paul R. Chavez (Fla. Bar No. 1021395)        Eunice H. Cho*
Christina LaRocca (Fla. Bar No.              AMERICAN CIVIL LIBERTIES
1025528) AMERICANS FOR                       UNION FOUNDATION
IMMIGRANT JUSTICE                            915 15th St. N.W., 7th Floor
2200 NW 72nd Ave                             Washington, DC 20005
P.O. Box No 520037                           202-548-6616
Miami, FL 33152                              echo@aclu.org
786-218-3381
pchavez@aijustice.org                        Corene Kendrick*
clarocca@aijustice.org                       Kyle Virgien*
                                             AMERICAN CIVIL LIBERTIES
                                             UNION FOUNDATION
Amy Godshall, Fla. Bar No. 1049803           425 California Street, Suite 700
Daniel Tilley, Fla. Bar No. 102882           San Francisco, CA 94104
AMERICAN CIVIL LIBERTIES                     (415) 343-0770
UNION FOUNDATION OF                          ckendrick@aclu.org
FLORIDA                                      kvirgien@aclu.org
4343 West Flagler Street, Suite 400
Miami, FL 33134
786-363-2714                                 *Counsel for Plaintiffs and the Proposed
agodshall@aclufl.org                         Class*
dtilley@aclufl.org


*Admitted pro hac vice.*
***Lead Counsel for Plaintiffs and the Proposed Class*