SECOND SUPPLEMENTAL DECLARATION OF CATHERINE PEREZ

I, Catherine Perez, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I am the founding attorney of the Law Offices of Catherine Perez, PLLC, based in Doral, Florida. My firm has been providing legal representation for immigration matters in Miami since 2018. I am a licensed attorney in good standing in the state of Florida. I have over seven years of specialized experience in immigration law, including removal defense; family-based and humanitarian relief (VAWA, U, and T visas); and employment- based petitions such as EB-1 and EB-2. This declaration supplements my prior declaration filed in this case on July 17, 2025, at ECF No. 5-2, and on August 13, 2025, at ECF No. 67-6.

3. Since July 2025, I have represented two clients held at the facility known as "Alligator Alcatraz." This includes E.R., who was previously detained at Alligator Alcatraz. On July 19, 2025, he was transferred to the Miami Federal Detention Center and is currently at Krome Detention Center, where he is still held by ICE. My firm more recently represented H.C. at Alligator Alcatraz, who was transferred to a detention in Denver, then to Florence, and then deported to his country of origin on Aug. 22, 2025. My firm plans to continue representing additional clients at the facility.

4. After this case, *C.M. v. Noem*, was filed, attorneys for the Defendants contacted Plaintiffs' counsel and offered to facilitate a video or in-person meeting with E.R. E.R. had already been transferred out of the Alligator Alcatraz facility by the time the Defendants' attorneys offered to facilitate a legal visit with my client, so I was never able to speak with E.R. in a pre-arranged setting while he was detained there.

5. Although it seems like Alligator Alcatraz has allowed more attorney access since this lawsuit was filed, by allowing some video and in-person visits, my ability to best represent my clients is hindered by the significant and onerous restrictions on attorney-client communication. For example, when attempting to set up a video conference with my client, H.C., it took 2-3 days from the time I requested a legal video call to the day of my actual appointment. In my experience, this delay is unheard of in other detention facilities. The normal practice at other facilities is to submit a legal visit and I have been scheduled for a call within 24 hours. From my professional experience, a 2-3 day wait is an unnecessary and unreasonable delay to obtain access to my client, especially in light of fast-moving developments and the need to obtain time-sensitive information for pleadings. My clients and I do not know nor have we received any information on how to file a complaint at this facility.

6. I am not aware of any government-official webpage or another website that informs attorneys on the process to request attorney-client meetings, or how to send legal mail or documents to detainees at the facility. This is far different than the process at other

    detention facilities. I figured out how to schedule a legal video call because a colleague provided me with the email address (legal@privacy6.com) to submit my request. Even with this contact information, the process failed, because I did not receive a response to my email, and was never able to arrange a visit with E.R. before he was transferred. *See* ECF No. 5-2 at ¶¶ 13-16.

7. On July 8, 2025, I sent an email requesting a legal video visit with H.C. On July 24, 2025, over two weeks after I sent my first request, I received an email informing me that my legal video call was scheduled for July 26, 2025. I had my first legal video call with my client, H.C. on that day, July 26, eighteen days after my initial request. Prior to this, I relied on him to call me on a monitored, recorded outgoing phone line from Alligator Alcatraz. H.C. called me twice on a monitored, recorded phone line. This is the only way, as far as I am aware, that detainees at the facility can make any outgoing calls to attorneys.

8. While my clients were detained at Alligator Alcatraz, I was unable to confirm the location of my clients held at Alligator Alcatraz. I knew about H.C.'s location while at Alligator Alcatraz because he called me from the monitored, recorded phone line and because his family confirmed his location based on his calls. I remain concerned that I will not be able to confirm the location of any new and/or prospective clients while detained at that facility.

9. When I have been able to obtain a video call with a client at Alligator Alcatraz, it does not appear that the call is confidential. The video call background is blurred out. However, from what my client has told me and what I could see, he is not in a private, closed room. I am concerned that sound travels and what he tells me could be heard by others. I am deeply concerned that my client is brought to and remains shackled, hands and feet, throughout our video call. In all my years as an immigration attorney, this is not the norm. For example, at Krome, my clients never appear in restraints throughout our legal video calls. This practice feels unnecessary and cruel in light of that fact that my client has no criminal history.

10. Alligator Alcatraz also requires attorneys to schedule in-person meetings with detainees, which is unlike any other detention facility. For example, when I go to other detention centers such as Krome or Broward Transitional Center, I show up during the attorney visitation slot. I do not have to make an appointment. I simply show up during the timeframe allowed and present my bar card and state ID. The process at Alligator Alcatraz to meet with my clients is unheard of.

Executed on 8th of September, 2025, at Doral, Florida.

_____
Catherine Perez