UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Fort Myers Division
Case No. 2:25-cv-747-SPC-KCD

**H.C.R., et al.,**

*Plaintiffs,*

v.

**Kristi Noem, et al.,**

*Defendants.*

**PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS AND TO FILE NAMES UNDER SEAL & MEMORANDUM IN SUPPORT THEREOF**

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 3.01(g), Plaintiffs' counsel conferred with opposing counsel via email and videoconference on September 9, 2025. The State and Federal Defendants take no position as to the motion.

/s/ *Eunice H. Cho*
Eunice H. Cho

### I. INTRODUCTION

Plaintiffs H.C.R., D.G.M., and H.P. ("Plaintiffs") are putative class representatives who have joined the case in the Amended Complaint. They are immigrants currently held at the immigration detention tent facility now known as "Alligator Alcatraz," in the middle of the Florida Everglades. As detailed in the Amended Complaint, they

1

wish to communicate confidentially with their counsel. They seek relief from this Court on behalf of themselves and a putative class subject to Defendants' failure to provide access to counsel at this detention facility. Exposure of their identities will endanger them in the United States and in their countries of origin. At a time of increasingly violent anti-immigrant rhetoric in Florida and across the country, immigrants detained at Alligator Alcatraz are subjected to extreme vitriol, including from officials at the highest levels of government. The name of the civil detention center invokes an infamous, long-shuttered federal prison known for holding some of the country's most notorious criminals. On July 1, 2025, President Trump promised on social media that "this facility will house some of the most menacing migrants—some of the most vicious people on the planet."[1] Placing Plaintiffs' names into the public record thus brands them as one of "the most vicious people on the planet," subjecting them and their families to severe stigma and threats of violence. Furthermore, Plaintiffs H.C.R. and D.G.M. are seeking asylum, based on danger of persecution or torture they will face—including at the hands of the government—if forced to return to their countries of origin. As such, revealing their identities publicly heightens the danger they face in their countries of origin.

Other plaintiffs in this case have been granted leave to proceed under pseudonym, on the basis of "[f]actors that may counsel courts to grant anonymity to the parties

---

[1] White House, *Alligator Alcatraz*, X (Jul. 1, 2025, 5:37 PM), https://x.com/WhiteHouse/status/1940162989375578293 [https://perma.cc/CR8T-LG7C].

include whether the plaintiffs are challenging government conduct, whether the plaintiffs would be threatened by violence or physical harm by proceeding in their own names, and whether their anonymity would pose a unique threat of fundamental unfairness to the defendant." Order, Doc. 15 (citing *Plaintiff B. v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011); Order, Doc. 33 (same). The Court should grant the same here to H.C.R., D.G.M., and H.P. for the same reasons.

Anonymity is routinely granted in cases brought by immigrant plaintiffs and others challenging government policies and laws related to immigration—a practice the Eleventh Circuit has approved explicitly. *See, e.g.*, *Hisp. Int. Coal. of Ala. v. Gov. of Ala.*, 691 F.3d 1236, 1247 n.8 (11th Cir. 2012) (collecting cases). Plaintiffs therefore seek leave to proceed under the following pseudonyms: H.C.R., D.G.M., and H.P.

## II.   STATEMENT OF FACTS

**Plaintiff H.C.R.** is a noncitizen currently detained at Alligator Alcatraz. He is seeking asylum in the United States because he fears political persecution in his native Colombia. Second Suppl. Decl. Katherine Blankenship ¶ 4a. He believes that public disclosure of his identity could expose him to further danger of harm in his home country, and also fears harassment and notoriety in the United States in connection with his detention at Alligator Alcatraz. H.C.R. is almost sixty years old, and has significant health problems, including need of a hip transplant, and serious hypertension. He has no criminal history. He entered the United States on a valid visa, and has a pending asylum petition. He has a valid driver's license and a work permit. He was taken into custody on his drive home from work, when a police officer pulled

him over during a traffic stop. Although H.C.R. showed the police officer his asylum documents, the officer told him that they were invalid. He was then taken into custody at a local jail, and then transferred to Alligator Alcatraz. *Id.*

**Plaintiff D.G.M.** is a noncitizen currently detained at Alligator Alcatraz. He is seeking asylum in the United States because he fears political persecution in his native Guatemala. Decl. Jose Flores ¶ 3. He was taken into custody in August 2025, after he was detained on his way to work as a passenger in a vehicle pulled over for a traffic stop. He has no criminal history. He believes that public disclosure of his identity could expose him to further danger of harm in his home country, and also fears harassment and notoriety in the United States in connection with his detention at Alligator Alcatraz. *Id.*

**Plaintiff H.P.** is a noncitizen currently detained at Alligator Alcatraz. H.P. entered custody after the car in which he was riding as a passenger was in an accident. When the police arrived on the scene, H.P. was taken into custody and then eventually transferred to Alligator Alcatraz. H.P. has lived in the United States for over ten years. He has no criminal history, other than two instances where he was cited for driving without a license. He worries that public disclosure of his identity could expose him to further danger of harassment and notoriety in the United States. Decl. Kenia Garcia ¶ 3.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 10(a) requires that the complaint "name all the parties." *See also* Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."). But the Eleventh Circuit has long recognized that plaintiffs may proceed anonymously where "the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (*per curiam*) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)).

"[W]hether a party's right to privacy outweighs the presumption of judicial openness is a totality-of-the-circumstances question." *In re Chiquita Brands Int'l Inc.*, 965 F.3d 1238, 1247 n.5 (11th Cir. 2020). Under Eleventh Circuit precedent, the "'first step'" is for courts to consider three initial factors: whether the party seeking to proceed anonymously "(1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *Chiquita Brands*, 965 F.3d at 1247 (quoting and citing *S. Methodist Univ. Ass'n of Women L. Students v. Wynne*, 599 F.2d 707, 713 (5th Cir. 1979) (hereinafter *SMU*)).

However, as the *Chiquita Brands* court made clear, this three-factor inquiry "is only the first step" in determining "whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." 965 F.3d at 1247

5

(internal quotation marks and citation omitted). Courts should also consider "*all* the circumstances of a given case" to determine whether a plaintiff's privacy concerns outweigh the general requirement of disclosure. *Plaintiff B*, 631 F.3d at 1316 (quoting *Frank*, 951 F.2d at 323) (emphasis in original). In particular, courts should consider factors such as plaintiffs' ages and personal circumstances, whether they would face threats of violence or physical harm if proceeding publicly, and whether plaintiffs' "anonymity pose[s] a unique threat of fundamental unfairness to the defendant." *Id.* (citing *SMU*, 599 F.2d at 713). Applying these factors (the "*Plaintiff B* factors"), numerous courts have allowed litigants to proceed anonymously and obtain related relief. *See, e.g.*, *Doe v. Wantong Int'l, Inc.*, No. 6:25- cv-179-PGB-DCI, 2025 WL 712762 (M.D. Fla. Mar. 5, 2025); *A.B. v. U.S. Dep't of Homeland Sec.*, No. 23-cv-23554, 2023 WL 6160838 (S.D. Fla. Sept. 21, 2023) *Koe v. Noggle*, No. 1:23-cv-2904-SEG, 2023 WL 11909781 (N.D. Ga. Aug. 20, 2023); *Oldaker v. Giles*, No. 7:20-CV-00224 (WLS), 2021 WL 3412551 (M.D. Ga. Aug. 4, 2021); *Doe v. Rickey Patel, LLC*, No. 6:19-cv-2414-Orl-40LRH, 2020 WL 9073327 (M.D. Fla. Mar. 4, 2020); *Does v. Swearingen*, No. 6:18-cv-1731-Orl-41LRH, 2019 WL 4386936 (M.D. Fla. Sept. 13, 2019); *Fla. Abolitionist, Inc. v. Backpage.com LLC*, No. 6:17-cv-218-Orl-28TBS, 2018 WL 2017535 (M.D. Fla. May 1, 2018); *Alexandra H. v. Oxford Health Ins., Inc.*, No. 11-23948-CIV, 2012 WL 13194941 (S.D. Fla. Mar. 23, 2012); *M.J. v. Jack. Hous. Auth.*, No. 3:11-cv-771-J-37MCR, 2011 WL 4031099 (M.D. Fla. Sept. 12, 2011).

## IV. ARGUMENT

Plaintiffs have a substantial privacy right in proceeding under pseudonym in this action, and the *Plaintiff B* factors weigh decidedly in Plaintiffs' favor here: (1) Plaintiffs are challenging government activity; (2) absent anonymity, Plaintiffs would be compelled to disclose information of utmost intimacy, namely, highly sensitive and personal information about their immigration status and histories; (3) Plaintiffs are at risk of threats of violence or physical harm if they were to proceed publicly; (4) absent anonymity, Plaintiffs would be forced to admit to conduct that exposes them to a risk of prosecution; and (5) Plaintiffs' anonymity would pose no threat of fundamental fairness to Defendants. Moreover, other factors also weigh in favor of this motion, including: (6) the public's access to these proceedings will not be hindered when Plaintiffs' true identity, but not the facts surrounding the case, are protected; and, (7) Plaintiffs could be dissuaded from pursuing the rights this suit seeks to vindicate if their identities are revealed. To the contrary, because of the likely harm Plaintiffs would face if their identities are disclosed, there is a strong public interest in preserving Plaintiffs' confidentiality, and finding otherwise could very well dissuade them from pursuing this litigation. Plaintiffs are willing to reveal their identities to the Court, if necessary, and to the government so long as the Court requires the government to maintain their confidentiality and prohibit any retaliation.

### A. Plaintiffs seek to challenge government action.

Plaintiffs are undoubtedly challenging government activity. Where plaintiffs are suing government entities rather than private individuals, courts tend to find less

7

reason to refuse their requests for anonymity, because governments, unlike private individuals, do not suffer reputational or economic harm from defending a civil action. *Frank*, 951 F.2d at 324; *SMU*, 599 F.2d at 713 ("[A]ll of the plaintiffs previously allowed in other cases to proceed anonymously were challenging the constitutional, statutory or regulatory validity of government activity.").

Plaintiffs here assert violations of their constitutional rights under the First Amendment. Defendants are all sued only in their official capacities. Through this action, Plaintiffs challenge the lack of meaningful access to counsel at the Facility. Plaintiffs thus satisfy the first factor, which weighs in favor of permitting them to proceed under pseudonyms. *See Oldaker*, 2021 WL 3412551, at *2 (permitting immigrant detainees to proceed anonymously where the litigation revealed information of the utmost intimacy and detainees were "challenging government misconduct").

## B. The highly sensitive nature of Plaintiffs' personal information and grave danger they face if their identities are exposed publicly justify allowing them to proceed under pseudonyms.

Plaintiffs disclose highly sensitive information in their challenge their lack of access to counsel while detained at a particularly notorious facility and while seeking immigration relief from the U.S. *See Plaintiff B*, 631 F.3d at 1316 (discussing *SMU*, 599 F.2d at 712-13). Immigration policy is a matter of increasingly heated rhetoric, stigma, and animus. Disclosure of Plaintiffs' identities places them at real risk of harassment, threats, and even violence. Possible social stigma due to a plaintiff's personal connection to an intensely politicized issue can justify leave to proceed anonymously,

8

as courts have noted in several other contexts. *See, e.g.*, *Frank*, 951 F.2d at 324; *Roe v. Aware Woman Ctr.*, 253 F.3d 678, 687 (11th Cir. 2001) (against backdrop of intense political debate around abortion, plaintiff's having had an abortion justified granting leave to proceed anonymously); *Doe v. Ladapo*, No. 4:23CV114-RH-MAF, 2023 WL 3833848, at *6 (N.D. Fla. June 6, 2023) (plaintiffs challenging Florida law prohibiting transgender minors from receiving puberty blockers proceeded under pseudonym).

This risk is further heightened for H.C.R. and D.G.M., who are seeking asylum in the U.S. because they fear danger, including danger at the hands of the government in their countries of origin. Second Suppl. Blankenship Decl. ¶ 4a; Flores Decl. ¶ 3. This information "of the utmost intimacy" would expose them to heightened threats of violence or harm to their physical safety if their identities were made public. Public disclosure of these plaintiffs' identities could expose them to further danger and risk of harm. These plaintiffs face persecution in their home countries and fall within a particularly vulnerable class of migrants for whom confidentiality about the nature and existence of their claims is particularly important. *See also* U.N. High Comm'r for Refugees, *Advisory Opinion on the Rules of Confidentiality Regarding Asylum Information*, 2-3 (Mar. 31, 2005), https://www.refworld.org/jurisprudence/amicus/unhcr/2005/en/93151 [https://perma.cc/KR8J-53D5] ("[P]rivacy and its confidentiality requirements are especially important for an asylum-seeker, whose claim inherently supposes a fear of persecution by the authorities of the country of origin and whose situation can be jeopardized if protection of information is not ensured."). Indeed, if the persecutors of

the Plaintiffs learned of their claims or the present lawsuit, it could leave them in significant danger.

U.S. law recognizes the importance of maintaining the confidentiality of asylum seekers' identities: Regulations implementing the asylum statute provide that "[i]nformation contained in or pertaining to" any asylum application, including information that "indicate[s] that a specific alien has applied for . . . asylum," shall "be protected from disclosure." 8 C.F.R. § 208.6(a), (b) (2025). "[T]he regulation instructs that personal information disclosed on an asylum application, including information that simply indicates that an alien has applied for asylum, is presumptively confidential and should be protected from disclosure." *A.B.*, 2023 WL 6160838, at *2. The U.S. government's own position, set forth by regulation, that the government may not disclose even the mere fact that someone applied for asylum or the contents of that application, demonstrates the importance of protecting this information, which makes it "information of the utmost intimacy." *Id.* (quoting *Plaintiff B*, 631 F.3d at 1316-17). "As DHS recognizes, the confidentiality regulations are of utmost importance in protecting asylum applicants because the regulations safeguard information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin." *Amin v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008) (internal quotation marks and citation omitted). For the same reason, when the Board of Immigration

Appeals issues published asylum-related decisions, it routinely uses only the initials of the applicant. *See, e.g.*, *Matter of M-H-Z-*, 26 I&N Dec. 757 (BIA 2016).

### C. Through this action, Plaintiffs are admitting to having engaged in conduct that exposes them to the threat of criminal prosecution.

Plaintiffs will face danger if their lack of secure immigration status in the U.S. is revealed. Each of the Plaintiffs seeking to proceed anonymously lacks secure immigration status, which has led to their civil detention at "Alligator Alcatraz." As a general matter, courts regularly recognize that revealing someone's immigration status "could lead to criminal prosecution, harassment, and intimidation." *Hisp. Int. Coal. of Ala.*, 691 F.3d at 1247. Given the particular vulnerability of immigrants, courts often allow them to proceed anonymously. *See, e.g.*, *Doe v. Hobson*, 300 F.R.D. 576, 578 (M.D. Ala. 2014) (granting undocumented plaintiffs' motion to proceed under pseudonyms); *Cent. Ala. Fair Hous. Ctr. v. Magee*, 835 F. Supp. 2d 1165, 1169 (M.D. Ala. 2011) (individual noncitizen plaintiffs challenging an Alabama statute proceeded under pseudonym), *vacated on irrelevant grounds sub nom., Cent. Ala. Fair Hous. Ctr. v. Comm'r, Ala. Dep't of Revenue*, No. 11-16114-CC, 2013 WL 2372302 (11th Cir. May 17, 2013); *see also Plyler v. Doe*, 457 U.S. 202 (1982) (individual noncitizen plaintiffs challenging Texas statute proceeded under pseudonym); *Lozano v. City of Hazelton*, 620 F.3d 170, 194-95 (3d Cir. 2010) (permitting pseudonymous treatment of "Plaintiffs with concerns about the legality of their immigration status"), *vacated on other grounds*, 531 U.S. 1030 (2011); *Ga. Latino All. for Hum. Rts. v. Deal*, 793 F. Supp. 2d 1317, 1325 (N.D. Ga. 2011) (individual noncitizen plaintiffs challenging Georgia statute

11

proceeded under pseudonym), *aff'd in part, rev'd in irrelevant part sub nom. Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250 (11th Cir. 2012).

Where a plaintiff has been forced to admit that they have either "violated state laws or government regulations or wished to engage in prohibited conduct," this factor weighs in favor of anonymity, as such admissions could expose them to prosecution—effectively deterring plaintiffs from exercising their legal rights due to fear of future government action. *SMU*, 599 F.2d at 713.

### D. Disclosing Plaintiffs' identities will add nothing to public understanding of the issues in this case.

In addition to the *Plaintiff B* factors, the Eleventh Circuit requires a comprehensive review of the totality of the circumstances when determining whether proceeding anonymously is warranted. *Plaintiff B*, 631 F.3d at 1316. Here, an additional factor weighs in favor of granting Plaintiffs' motion: disclosing Plaintiff's identities will add nothing to public understanding of the issues in this case.

In contrast with the Plaintiffs' heightened interest in confidentiality discussed in the previous sections, the public's interest in knowing their identities is minimal. Although the *issues* in this lawsuit are a matter of significant public concern because they involve governmental entities and actors, the identity of the Plaintiffs will add little to the public understanding of the case. *See, e.g.*, *Wantong*, 2025 WL 712762, at *2 (granting motion to proceed anonymously while noting that the proceedings would otherwise "remain open to the public"); *see also Doe v. CoreCivic, Inc.*, No. 4:20-cv-01828, 2020 WL 3640058, at *2 (S.D. Tex. July 6, 2020) (finding public interest

weighed in favor of anonymity when "most of the pertinent facts [are] made on the public record" and the only non-public aspect "is [the plaintiff's] actual identity"). The public will have access to the filings and proceedings in this case. The use of a pseudonym would not hinder the public's right to information about the ultimate legal questions at issue. Thus, the public interest weighs in favor of granting Plaintiffs' motion.

### E. Plaintiffs' anonymity would pose no threat of fundamental unfairness to Defendants.

Defendants are government officials sued in their official capacities and therefore there is "no threat of fundamental unfairness to Defendants in allowing [Plaintiffs] to file [their] complaint under a pseudonym." *A.B.*, 2023 WL 6160838, at *2. Because Plaintiffs are willing to provide unredacted declarations and other necessary identifying information subject to a protective order, there is no prejudice to the Defendants. Subject to a protective order, Plaintiffs' counsel will provide unredacted identifying information necessary for discovery to Defendants' counsel. As such, granting this motion will in no way prejudice Defendants' ability to conduct discovery or defend this case. *See Plaintiff B*, 631 F.3d at 1319 (granting leave to proceed anonymously did not bar defendants "in building a defense for trial"); *Aware Woman Ctr.*, 253 F.3d at 687 (entry of protective order sufficient to obviate any potential prejudice to defendant).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs should be permitted to proceed in this suit under their proposed pseudonyms and to file their unredacted declarations in support of this motion under seal.

Dated: September 11, 2025

Paul R. Chavez (Fla. Bar No. 1021395)
Christina LaRocca (Fla. Bar No. 1025528) AMERICANS FOR IMMIGRANT JUSTICE
2200 NW 72nd Ave
P.O. Box No 520037
Miami, FL 33152
786-218-3381
pchavez@aijustice.org
clarocca@aijustice.org

Amy Godshall, Fla. Bar No. 1049803
Daniel Tilley, Fla. Bar No. 102882
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA
4343 West Flagler Street, Suite 400
Miami, FL 33134
786-363-2714
agodshall@aclufl.org
dtilley@aclufl.org

Respectfully Submitted,

*/s/ Eunice H. Cho*
Eunice H. Cho*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th St. N.W., 7th Floor
Washington, DC 20005
202-548-6616
echo@aclu.org

Corene T. Kendrick*
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
ckendrick@aclu.org
kvirgien@aclu.org

*Counsel for All Plaintiffs and the Proposed Class*
* Admitted pro hac vice.