UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

H.C.R., et al.,

Plaintiffs, Case No. 2:25-cv-00747-SPC-KCD

v.

KRISTI NOEM, Secretary, U.S.
Department of Homeland Security, et al.,

Defendants.
____________________________________/

**FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff detainees H.C.R., D.G.M., and H.P., and legal organizations Sanctuary of the South and Bilbao Law, LLC allege the U.S. Department of Homeland Security and U.S. Immigration and Customs Enforcement are interfering with attorney-detainee communications at the South Florida Soft Sided Facility South—also known as Alligator Alcatraz—in violation of the First Amendment. Plaintiffs ask this Court to enter a preliminary injunction ordering the Federal Defendants to implement a list of measures regarding in-person attorney-detainee meetings, telephone calls, video conferences, fax, document exchanges, posting of written information, and updated website information.

Plaintiffs' motion for a preliminary injunction should be denied. Plaintiffs' arguments are at odds with the previously assigned U.S. District Judge's finding that plaintiffs failed to advance any specific allegation that the State Defendants have

engaged in acts or omissions pursuant to the Federal Defendants' instructions. Plaintiffs' case continues to carry the same deficiency.

Even if Plaintiffs had alleged a plausible connection between the Federal Defendants and the amended complaint's allegations of interference between attorneys and detainees, Plaintiffs fail to show a likelihood of success of prevailing on a First Amendment claim. Regarding the legal organization plaintiffs, the First Amendment protects against affirmative interference of an attorney's right to associate with current or prospective clients. It does not require the United States to facilitate access to individuals in detention. *Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1513 (11th Cir. 1992).

The detainee plaintiffs similarly fail to present any controlling First Amendment authority mandating the measures they list to facilitate attorney-detainee communications. Even if Plaintiffs could show instances where detainees were unable to confidentially communicate with their counsel, Plaintiffs fail to demonstrate a pattern and practice necessary to show a First Amendment violation. *Mitchell v. Peoples*, 10 F.4th 1226, 1230-31 (11th Cir. 2021). Moreover, any Alligator Alcatraz policy regarding attorney-detainee communications is valid so long as it reasonably relates to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiffs also fail to demonstrate an irreparable injury to themselves or a putative class absent a preliminary injunction. As shown by the State Defendants' evidence and Plaintiffs' August 8, 2025, status report and amended complaint,

attorney-detainee meetings took place at the facility existed before this action was filed and continue. Finally, Plaintiffs do not meet the requirements to certify a provisional class, as their alleged instances of First Amendment violations do not meet Federal Rule of Civil Procedure 23(a)(3)'s requirement of typicality.

**BACKGROUND**

The State of Florida is detaining illegal aliens at Alligator Alcatraz under section 287(g) of the Immigration and Nationality Act, which authorizes state officers and employees to perform a function of an immigration officer, including the detention of aliens. 8 U.S.C. § 1357(g); Vega Decl., Ex. 1 ¶ 7. The facility provides short-term housing for aliens involved in the removal process pending longer term housing or removal arrangements; detainees are generally housed at Alligator Alcatraz for under 72 hours. (Vega Decl., Ex. 1 ¶¶ 10-11.) U.S. Immigration and Customs Enforcement makes decisions regarding transferring detainees to Alligator Alcatraz, but the State of Florida retains ultimate decision authority as to who is detained there. *Id.* ¶ 6.

Plaintiffs initially filed this action in the U.S. District Court for the Southern District of Florida on July 16, 2025. (Compl., Doc. 1.) The original complaint alleged the State of Florida, the Florida Division of Emergency Management, the U.S. Department of Homeland Security (DHS), and U.S. Immigration and Customs Enforcement (ICE) blocked detainees from accessing counsel and excluded attorneys from communicating with current and potential clients at Alligator Alcatraz. *Id.* ¶¶ 4, 63; Aug. 7, 2025, Order Requiring Status Report, Doc. 51 at 1-2.

Plaintiffs filed an expedited motion for a temporary restraining order and preliminary injunction on July 17, 2025. (Doc. 5.) During a July 28, 2025, status conference, the Court raised questions about whether the facility had made additional means available regarding attorney-detainee communications, which the Court indicated, "go to the heart and success of likelihood on the merit arguments[.]" (Aug. 7, 2025, Order Requiring Status Report, Doc. 51 at 3.) Accordingly, the Court allowed Plaintiffs to supplement their complaint. *Id.*

The following day, on July 29, 2025, Plaintiffs filed a Supplemental Complaint that continued to represent there was a total bar on attorney-client access. (Supplemental Compl., Doc. 28; Aug. 7, 2025, Order Requiring Status Report, Doc. 51 at 3.) Plaintiffs also filed a renewed motion for a preliminary injunction that characterized restrictions on attorney access at Alligator Alcatraz as a categorical ban. (Renewed Mot. for Prelim. Inj., Doc. 29; Aug. 7, 2025, Order Requiring Status Report, Doc. 51 at 3-4.) On August 7, 2025, the Court ordered Plaintiffs file a status report providing an update on attorney access at the facility since the filing of the complaint. (Doc. 51 at 6.) On August 8, 2025, Plaintiffs filed a status report detailing detainee access to counsel from before the filing of the original complaint on July 15, 2025, through July 29, 2025. (Aug. 8, 2025, Status Report, Doc. 58 at 2, 4, 6, 7.)

Following an August 18, 2025, hearing on Plaintiffs' renewed motion for a preliminary injunction, the Court entered an order dismissing the complaint in part. (Doc. 86.) Additionally, the Court transferred the case to the Middle District of

Florida due to Plaintiffs' failure to present a prima facie case that the State Defendants engaged in substantial acts or omissions in the Southern District of Florida. (Aug. 18, 2025, Order, Doc. 86 at 40, 46-47.)

After the case's transfer to the Middle District of Florida, three different detainee plaintiffs, H.C.R., D.G.M., and H.P. filed an amended complaint along with Plaintiff legal organizations Sanctuary of the South and Bilbao Law, LLC. (Doc. 113.) Unlike the original and supplemental complaint, the amended complaint does not allege the detainee plaintiffs are unable to communicate with their lawyers while located at Alligator Alcatraz. *See id.* ¶¶ 16-21. Instead, the detainee plaintiffs allege their attorneys have had difficulties in attempting to communicate confidentially with them. *Id.* ¶¶ 17, 19, 21. The legal organization plaintiffs similarly assert lawyers have been impaired in their ability to represent detained clients due to Alligator Alcatraz's setting for confidential communications. *Id.* ¶¶ 23, 26.

## LEGAL STANDARD

"To justify a preliminary injunction, the plaintiff must plainly establish four preconditions (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a showing that plaintiff will suffer irreparable injury if an injunction does not issue, (3) proof that the threatened injury to plaintiff outweighs any harm that might result to the defendants, and (4) a showing that the public interest will not be disserved by grant of a preliminary injunction." *Northeastern Fla. Chapter of the Ass'n. of General Contractors of America v. City of Jacksonville, Fla.*, 896 F.2d 1283 (11th Cir. 1990).

Injunctive relief is an "extraordinary and drastic remedy" and should not be granted unless "the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *Id.* (internal citations omitted). Failure to meet even one of the four prerequisites "dooms" any request for such relief. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

## I. Plaintiffs fail to plausibly allege the Federal Defendants are interfering with any attorney-detainee communications at the state-run Alligator Alcatraz.

The amended complaint fails to make any plausible connection between the Federal Defendants and Plaintiffs' allegations that conditions at Alligator Alcatraz do not adequately permit attorney-detainee communications. The Federal Defendants are each named as parties in the amended complaint as "a legal custodian of Detained Plaintiffs and the members of the putative class." (Doc. 113 ¶¶ 28-32.) But the amended complaint fails to allege facts supporting a plausible connection between Plaintiffs' allegations and official capacity defendants Secretary of Homeland Security Noem, ICE Acting Director Todd Lyons, ICE Field Office Director Garrett Ripa, the U.S. Department of Homeland Security, or U.S. Immigration and Customs Enforcement. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (stating that bare assertions that individual defendants were a "principal architect" of an invidious policy or were "instrumental" in adopting and executing it were bare assertions insufficient to state a claim).

Instead, Plaintiff's amended complaint appears to allege 287(g) agreements provide the necessary predicate for finding a First Amendment violation by the

Federal Defendants. *See* Am. Compl., Doc. 113 ¶¶ 39, 40. Judge Ruiz, the U.S. District Judge previously assigned to this case, however, previously rejected that same argument in support Plaintiffs' claim of venue in the Southern District of Florida:

> While Plaintiffs note that federal and state officials have signed intergovernmental agreements, the existence of legally enforceable agreements between state and federal officials cannot support venue on its own. Plaintiffs appear to suggest that the State Defendants' failure to act in accordance with these agreements gave rise to the Detained Plaintiffs' First Amendment causes of action. This argument—to the extent Plaintiffs even make it—is inherently flawed. For one, Plaintiffs' cause of action is constitutional, not regulatory or contractual. Plaintiffs do not—and have never, through the twists and turns of this litigation—claimed that the State Defendants' failure to act in accordance with intergovernmental agreements creates a First Amendment issue. . . .

*C.M. v. Noem*, No. 25-CV-23182-RAR, 2025 WL 2400953, at *20 (S.D. Fla. Aug. 18, 2025) (citations omitted). The Court continued,

> Plaintiffs do not point to any part of the record that suggests that any State Defendant signed a Memorandum of Agreement that vested them with particular responsibilities relating to the Detained Plaintiffs at Alligator Alcatraz. Indeed, the State Defendants have provided policy documents from Defendant [Florida Division of Emergency Management] that show that "[t]he *facility* is responsible for facilitating detainees' private access to their legal representatives and assistants."
>
> Plaintiffs' assertion at the hearing that venue derives from 287(g) Agreements between the Federal and State Defendants requires impermissible inferential leaps. First, the Court would have to find it has proper venue over the State Defendants based on Agreements that none of them signed. Second, the Court would have to find that the State Defendants violated those Agreements. And third, the Court would have to find that the breach of those Agreements proximately caused the Detained Plaintiffs' constitutional injuries. But this is not a case about the breach of any 287(g) Agreements, nor is this a case about whether the State Defendants have violated a practice or policy.

*Id.* *21 (citations omitted). The Court also rejected Plaintiffs' argument that venue was proper due to polices or instructions emanating from the Federal Defendants:

> At the preliminary injunction hearing, Plaintiffs suggested that venue is proper here because the State Defendants in the Middle District of Florida have acted pursuant to federal policies that emanate from the Southern District of Florida. But the district court case they cite in support—*Harvard v. Inch*, 408 F. Supp. 3d 1255 (N.D. Fla. 2019)—undercuts their claim in two respects. The court in *Harvard* certainly concluded that conditions of confinement in a Middle District of Florida jail could be traced back to state policy decisions from Tallahassee. *Id.* at 1262. But the court did so because the plaintiffs specifically "alleged that a statewide policy and practice of isolation [ ] was promulgated and enforced in Tallahassee by Defendants." *Id.* Here, Plaintiffs advance no specific allegation that the State Defendants have engaged in acts or omissions pursuant to the Federal Defendants' instructions.

*Id.* (internal citation omitted).

As to the attorney plaintiffs' First Amendment claims, the Court also rejected Plaintiffs' contention that the 287(g) agreements with the Federal Defendants provided a requisite nexus for venue:

> Plaintiffs argue that the "Defendants have directed attorneys seeking information about communicating with clients at Alligator Alcatraz" to federal offices in Miami. But these citations to the record simply undercut their argument, for they show only that the *Federal* Defendants could not assist Attorney Plaintiffs, and that decisions regarding attorney access were being made by State officials at Alligator Alcatraz.

*Id.* at *22 (internal citations omitted). The Court concluded, "If anything, the record indicates that officials at Alligator Alcatraz—and not federal officials in Miami—are responsible for scheduling legal calls and visits." *Id.*

As shown, Judge Ruiz's August 18, 2025, order thoroughly discussed and rejected Plaintiffs' theory of venue based upon the Federal Defendants' legal relationship with Florida officials under 287(g) agreements. The law of the case doctrine therefore compels the conclusion Plaintiffs are unlikely to succeed on the merits of any First Amendment theory of liability against the Federal Defendants on the same basis. *See Luckey v. Miller*, 929 F.2d 618, 621 (11th Cir. 1991) ("While law of the case preclusion is limited to those issues previously decided, the doctrine does operate to encompass issues decided by necessary implication as well as those decided explicitly.").

What is more, the Eleventh Circuit recently made finding similar to Judge Ruiz's while entering a stay of a preliminary injunction that prohibited additional construction at the facility. *Friends of the Everglades, Inc. v. Sec'y of United States Dep't of Homeland Sec.*, No. 25-12873, 2025 WL 2598567, at *1 (11th Cir. Sept. 4, 2025). Notably, the Eleventh Circuit concluded that detention activities at Alligator Alcatraz do not constitute a major federal project under the National Environmental Policy Act:

> It is undisputed that ICE has not procured any detention space from Florida at [Alligator Alcatraz]. Nor are any ICE contractors operating the Facility. Rather, the Facility is wholly run by Florida State troopers who draw their salary from the Florida State treasury. So, the Florida-funded and Florida-operated detention activities occurring at the Site do not conceive a "major federal project" either.

*Id.* at *9 (citations omitted). Even more significantly, the Eleventh Circuit rejected any contention that 287(g) agreements between DHS and Florida law enforcement

placed DHS in effective control of operations at Alligator Alcatraz: "The Facility is a site built, led, operated, and funded unilaterally by a state government—in accordance with the state's laws—at which the state retains discretionary control over who is detained at the facility, all of which adds up to *state* control over the project's outcome, not federal control." *Id.* at *9 n.7 (emphasis in original).[1] In sum, Plaintiffs' assertions that the Federal Defendants control operations at Alligator Alcatraz was previously rejected by Judge Ruiz in the present case and the Eleventh Circuit in a related appeal. Plaintiffs are therefore unlikely to succeed on the merits of their First Amendment claims against the Federal Defendants.[2]

---

[1] At the outset, the Eleventh Circuit's stay opinion provided, "We note that we write only for the parties' benefit. Because an order concerning a stay is not a final adjudication of the merits of the appeal, the tentative and preliminary nature of a stay-panel opinion precludes the opinion from having an effect outside that case." *Friends of the Everglades, Inc.*, 2025 WL 2598567, at *1 n.3. The line of cases relied upon by the Eleventh Circuit, however, traces back to the doctrine res judicata, *see Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*, 950 F.3d 790, 795 (11th Cir. 2020), not any persuasive effect an opinion may have. *See New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1280 n.1 (11th Cir. 2020) (*citing Democratic Exec. Comm. of Fla.*, 950 F.3d at 795). Because Plaintiffs are not parties to *Friends of the Everglades, Inc.*, the doctrine of res would not apply in any event. Notably, the Supreme Court recently instructed that courts should consider the persuasive effect of its interim orders even if they are not conclusive. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) ("Although our interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases.") The same principle, by extension, applies to the persuasive effect of the Eleventh Circuit's stay opinion.

[2] *Cf. Stricker v. Ganey*, No. 8:09-CV-1875-T-27TGW, 2010 WL 2640320, at *8 (M.D. Fla. June 10, 2010) (holding a plaintiff failed to state a claim against a sheriff for failing to oversee deputies at a jail when there were no factual allegations regarding anything the sheriff either did or failed to do in connection with overseeing or training deputies working at the jail).

## II. The detainee plaintiffs are unlikely to succeed in their claim that conditions at Alligator Alcatraz violate the First Amendment.

The detainee plaintiffs' fail to cite any controlling authority demonstrating conditions at Alligator Alcatraz violate the detainee plaintiffs' rights under the First Amendment. The principal Eleventh Circuit case relied upon on by Plaintiffs, *Al-Amin v. Smith*, recognized a prisoner possesses a constitutional right to have his legal mail opened in his presence. 511 F.3d 1317, 1326 (11th Cir. 2008); *see also Mitchell v. Peoples*, 10 F.4th 1226, 1230 (11th Cir. 2021) (same). *Al-Almin* does not establish an expansive constitutional right to the list of items demanded by Plaintiffs in the present action, including in-person attorney-detainee meetings, dedicated phones for legal calls, video conferences, fax, document exchanges, posting of written information, and updated website information.

For those items, Plaintiffs rely upon 2011 Performance-Based National Detention Standards (PBNDS) published by ICE. Plaintiffs, however, fail to show how any facility—state or federal—violates the First Amendment if it does not implement one or more of the PBNDS. Although the Eleventh Circuit has considered an agency's standards when evaluating a defendant's claim of qualified immunity, *Al-Amin* 511 F.3d at 1336 n.37, Plaintiffs fail to present any controlling authority that a government agency violates the First Amendment if it does not implement each aspect of its internal guidance. Indeed, the Eleventh Circuit has declared the opposite principle. *Id.* ("[Georgia State Prison] regulations themselves do not constitute constitutional law . . . .").

Finally, the Eleventh Circuit's constitutional rule that officers may not open inmate mail outside of an inmate's presence requires a plaintiff to show a pattern and practice of doing so to demonstrate a violation of the First Amendment. *Mitchell v. Peoples*, 10 F.4th 1226, 1230-31 (11th Cir. 2021). Plaintiffs, by contrast, describe episodic instances of attorneys asking questions of a facility staff member and scheduling difficulties. (Pls.' Motion for Prelim. Inj., Doc. 115 at 8, 9.) More is required to demonstrate a pattern and practice under the First Amendment.

## III. The legal organization plaintiffs are unlikely to succeed in their claim that conditions at Alligator Alcatraz violate their First Amendment right to freedom of association.

The Supreme Court has recognized attorneys possess a First Amendment right of association to inform individuals of their rights at least when they do so as an exercise of political speech without expectation of remuneration. *In re Primus*, 436 U.S. 412 (1978); *NAACP v. Button*, 371 U.S. 415 (1963); *NAACP v. State ex rel. Patterson*, 357 U.S. 449 (1958); *see also Jean v. Nelson*, 727 F.2d 957, 983 (11th Cir. 1984 (en banc). Nevertheless, the Eleventh Circuit has recognized limits on counsel's right of association when individuals are in government custody.

For instance, in *Haitian Refugee Ctr., Inc. v. Baker*, a legal services organization alleged the Immigration and Naturalization Service (INS) was unconstitutionally preventing the organization's lawyers from accessing interdicted Haitian immigration detainees either held on Coast Guard ship or detained at Guantanamo Bay Naval Station pending repatriation. 953 F.2d 1498, 1502 (11th Cir. 1992). A

district court entered a preliminary injunction requiring the INS to grant the legal organization access to the detainees, but the Eleventh Circuit held the organization failed to state a claim under the First Amendment. *Id.* at 1504, 1515.

At the outset of its discussion, the court recognized the Supreme Court's cases recognizing an attorney's First Amendment right of association. *Id.* at 1512 (*citing In re Primus*, 436 U.S. 412 (1978); *NAACP v. Button*, 371 U.S. 415 (1963); *NAACP v. State ex rel. Patterson*, 357 U.S. 449 (1958)). The Eleventh Circuit nevertheless concluded the Supreme Court's cases "do not recognize a right of access to persons properly in government custody." *Id.* The court observed, "The Constitution . . . does not require the Government to assist the holder of a constitutional right in the exercise of that right[,] and associational freedom in no way implies a right to compel the Government to provide access to those with whom one wishes to associate." *Id.* at 1513. Moreover, the court concluded, the Supreme Court's precedent did not "support[] the conclusion that the Government infringes associational freedom when it denies access to those whom it lawfully detains." *Id.* at 1514.

The court further found that the plaintiff legal organization "does not assert that the Government seeks to repatriate the interdicted Haitians *in order to* interfere with [the organization's] associational freedom." *Id.* at 1515 (emphasis in original). The court therefore held the organization failed to state a claim, which the court characterized as "nothing more than a claim that it has a right to compel the Government to assist it in exercising a right of association." *Id.* Instead, the court

stated, "*Any* court order enforcing this so-called 'right' would impose an inappropriate affirmative obligation on the Government. This is more than the Constitution requires." *Id.* (emphasis in original).

Turning to the present case, Plaintiffs identify the same line of Supreme Court authority (*In re Primus*, *Button*, and *NAACP*) but fail to recognize its limits. As previously discussed, an attorney's First Amendment right of association does not compel the government to provide access to those with whom an attorney wishes to associate. *A fortiori*, the First Amendment does not require an injunction to compel the Federal Defendants to mandate the State of Florida take certain actions regarding day-to-day attorney-client meetings. Plaintiffs' motion also fails to show the Federal Defendants are taking any actions to "in order to interfere" with the legal organizations' desire to associate with detainees at Alligator Alcatraz. *See Haitian Refugee Ctr., Inc.*, 953 F.2d at 1515. Nor could they, as the State of Florida operates the facility.

Conversely, Plaintiffs ask this Court to require the Federal Defendants to take a multitude of actions to affirmatively assist the legal organizations in their association First Amendment rights, including implementing specific measures regarding in-person attorney-client meetings, telephone calls, video conferences, fax, document exchanges, posting of written information, and website information. The First Amendment right of association, however, does not mandate the Plaintiffs' requested measures. *See also Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412,

1429-30 (11th Cir. 1995) (holding the First Amendment right of association did not mandate attorney access to detainees at Guantanamo Bay).

Finally, Plaintiffs' allegation that the State and Federal Defendants are intentionally transferring detainees whose attorneys have requested legal visits fails to recognize the purpose of the facility. Alligator Alcatraz serves as a short-term detention center while longer term housing or removal arrangements are secured. (Vega Decl., Ex. 1 ¶ 10.) Detainees are generally housed at Alligator Alcatraz for under 72 hours. *Id.* ¶ 11. That detainees would no longer be present at the facility following a request for a meeting therefore fails provide convincing evidence of a First Amendment violation.

Furthermore, Plaintiffs' arguments are untethered to any request for injunctive relief. At no stage of the litigation have the Plaintiffs asked the Court to enter an injunction ordering the State or Federal Defendants to hold any detainee at Alligator Alcatraz for a required period. Indeed, any request to do so would improperly interfere with ICE's responsibility carry out its enforcement responsibilities. *Herrera v. U.S. Atty. Gen.*, 811 F.3d 1298, 1300 (11th Cir. 2016) ("Judicial deference to the Executive Branch is especially appropriate in the immigration context."). The legal organization plaintiffs are therefore unlikely to succeed in a First Amendment claim against the Federal Defendants.

///

///

///

## IV. Any policies regarding attorney detainee communication at Alligator Alcatraz reasonably relate to legitimate penological interests.

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Even if the Federal Defendants were properly named as parties in this action, Alligator Alcatraz provides ample avenues for attorney-detainee communications.

As presented in the State Defendants' opposition, attorneys can request and schedule a meeting with their detainee clients at Alligator Alcatraz by sending an email to the facility's legal inbox. (Saunders Decl. ¶ 15.) Once facility staff responds to a scheduling request, counsel are typically able to meet with their clients within 24 hours for both videoconference and in-person meetings. *Id.* ¶ 18.

The facility offers four attorney visit rooms that also serve as host sites for videoconference meetings. *Id.* ¶ 38. The rooms are in a dedicated structure for detainee and attorney meetings. *Id.* Each meeting occurs in a separate enclosed room with doors that close. *Id.* ¶ 39. The visit rooms are away from other detainees and are fully enclosed to allow for confidential meetings with attorneys. *Id.* ¶ 40. All meetings take place in private rooms located away from other detainees. *Id.* ¶ 44.

The facility's security staff does not read any documents or inspect any electronic devices in the attorneys' possession. *Id.* ¶ 41. The facility does not require attorneys to submit all documents they intend to bring to their meetings for staff review and approval. *Id.*

Facility staff visually monitor the meetings while sitting in a chair placed outside the door to the rooms. *Id.* ¶ 46. From that position, they can see into the room to monitor a detainee and attorney but can neither see the contents of documents being exchanged nor hear the conversations between parties in the room. *Id.*

As shown by the State Defendants' evidence, the attorney-detainee protocols employed at Alligator Alcatraz do not implicate First Amendment concerns. Even if Plaintiffs were to argue against facility staff's presence outside of a meeting room—in which they cannot see the contents of documents nor hear conversations of the participants—procedures are nevertheless reasonably related to legitimate penological interests of preserving safety at the facility under *Turner*.

## V. Plaintiffs fail to demonstrate they will suffer irreparable injury if an injunction does not issue.

Because the Federal Defendants do not operate Alligator Alcatraz, any injunction against the Federal Defendants will not prevent an irreparable injury. As previously stated by Judge Ruiz, "[T]he record indicates that officials at Alligator Alcatraz—and not federal officials in Miami—are responsible for scheduling legal calls and visits." *C.M. v. Noem*, No. 25-CV-23182-RAR, 2025 WL 2400953, at *22 (S.D. Fla. Aug. 18, 2025). Ordering an injunction against the Federal Defendants to change the daily operations of Alligator Alcatraz is therefore at odds with the state-controlled nature of the facility and the extraordinary mode of injunctive relief.

Additionally, Plaintiffs' original complaint, August 8, 2025, status report, and amended complaint collectively acknowledge that avenues for attorney-detainee communications have developed since the facility's opening. Plaintiffs' original and supplemental complaint characterized the facility as imposing a categorical ban on attorney access but later conceded through their July 17, 2025, status report that meetings with counsel had occurred even before the filing of the original complaint. (Aug. 8, 2025, Status Report, Doc. 58 at 2, 4, 6, 7.) State Defendants' evidence further demonstrates the ample opportunities for attorney-detainee communications at the facility. Because attorney-detainee visits are consistently and adequately accommodated at Alligator Alcatraz, plaintiffs cannot demonstrate irreparable harm absent a preliminary injunction.

## VI. The Court should not certify a provisional class.

Plaintiffs' motion does not explicitly ask the Court to certify a provisional class but nevertheless requests the Court to issue a preliminary injunction on behalf of the Plaintiffs and putative class. *See generally* [Proposed] Preliminary Injunction Doc. 115-2. Plaintiffs separately ask this Court to certify a class of "[a]ll persons who are currently, or in the future, held at the Alligator Alcatraz detention facility." (Mot. for Class Certification, Doc. 114 at 2.)

To proceed as a class action, a case must satisfy the requirements set forth in Federal Rule of Procedure 23. First, the case must meet Rule 23(a)'s requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

*Carter v. City of Montgomery*, 108 F.4th 1334, 1341 (11th Cir. 2024). Second, the case must satisfy one of several requirements under Rule 23(b). *Id.*

Most saliently, Plaintiffs' request for an injunction on behalf of a putative class fails demonstrate the class requirement of typicality. "A class representative satisfies the typicality requirement if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* (cleaned up). Rather than demonstrating detainee and attorney plaintiffs share a typical pattern of interference in their communications, Plaintiffs describe the varied communication difficulties one might expect in coordinating a meeting with a detained client. For instance, one attorney reports he made a request for a videoconference and did not receive a response but fails to indicate he made any type of follow-up request. (Pls.' Motion for Prelim. Inj., Doc. 115 at 8.) Different attorneys, on the other hand, detail extensive communications regarding scheduling visits with detainees. *Id.* at 5-6. As to complaints of an inadequate setting for confidential communications, two attorneys describe intentionally asking questions to a facility staff, which Plaintiffs now complain took place in a nonconfidential manner. *Id.* at 9.

In significant respects, therefore, the allegations set forth by the Plaintiffs describe varied difficulties present when representing a detained client rather than a pattern or practice of a First Amendment violation. Absent a showing that claims of class representatives and putative class members arise from the same event or pattern or practice, Plaintiffs cannot meet Rule 23(a)(3)'s requirement of typicality.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction fails to acknowledge Judge Ruiz's previous findings that state—not federal—officials are responsible for arranging legal visits at Alligator Alcatraz. Because Plaintiffs fail to plausibly allege or present any persuasive evidence the Federal Defendants are interfering with attorney-detainee communications at the facility, Plaintiffs' motion for a preliminary injunction should be denied.

DATED this 25th day of September, 2025.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: */s/Chad C. Spraker*

CHAD C. SPRAKER
Assistant United States Attorney
USA No. 198
2110 First Street, Ste. 3-137
Fort Myers, Florida 33901
Telephone: 239-461-2200
Fax: 239-461-2219
Email: chad.spraker@usdoj.gov
*Counsel for Federal Defendants*