**THIRD SUPPLEMENTAL DECLARATION OF KATHERINE H. BLANKENSHIP**

I, Katherine H. Blankenship, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently and truthfully to these matters.

2. I make this declaration to supplement the declarations I have previously made in this matter. *See* Doc. 5-1, 67-7, 114-4.

3. Since September 11, 2025, I have represented four clients held at the facility known as "Alligator Alcatraz." One of those clients is H.C.R., a named plaintiff in this case. On Thursday, September 11, 2025, I sent an email to the legal@privacy6.com address to request an in-person legal visit with him at the facility. On the same date, I received an email back confirming that my in-person legal visit was scheduled to take place on Monday, September 15, 2025, at 10:00 a.m. However, at 8:54 a.m. on September 15, 2025, I received an email from the facility stating that H.C.R. had been transferred and was no longer at the facility. During his detention at Alligator Alcatraz, I never had the opportunity to speak with H.C.R. in a legal visit.

4. I, and others at Sanctuary of the South ("SOS"), have continued to experience difficulty communicating with clients who are detained at Alligator Alcatraz for a variety of reasons.

5. I still cannot find any publicly available information showing how attorneys should contact their clients at the facility confidentially. I only know how to do so because of prior experiences with other clients at the facility, conversations with others representing clients at the facility, and information I gathered during previous visits to the facility where I was turned away.

6. It is my understanding that people detained at the facility still cannot make or schedule confidential attorney-client calls on their own behalf. As was the case when the facility was first opened, the only way my clients can call me is to place a call on a monitored line.

7. When I am able to schedule legal calls and visits, they are typically cancelled by the facility prior to the call or visit. This is most often due to transfers to other facilities. It is remarkable how often my clients are transferred immediately following notice to the facility of their legal representation and/or I submit a request for legal calls or visits. I had the same experience with Michael Borrego and similar experiences with other clients and prospective clients after requesting legal video calls. I have represented clients detained at numerous other facilities in Florida. I have experienced this fact pattern—with a client transferred after a call is scheduled but before it can take place—only on rare occasions at other detention facilities. At Alligator Alcatraz, I have experienced it multiple times over the few months the facility has been in operation.

8. As far as I am aware, the facility continues not to allow attorneys to confidentially exchange documents. The facility still requires attorneys to complete a "Legal Counsel Visitation Request Form" that instructs attorneys to "attach copies of legal documents you intend to bring for approval. All items are subject to inspection and must be preapproved." There is also no mechanism for my clients to send or return legal mail.

9. My client H.C.R. is a plaintiff in this case and has sought to proceed under a pseudonym. I provided facts in a prior declaration demonstrating his need to proceed under a pseudonym in this case. Doc. 114-4, 4.a. In addition, H.C.R. experienced serious mistreatment at Alligator Alcatraz and anti-immigrant discrimination. He is afraid of retaliation should he be named in this lawsuit, which could have potential negative impacts on his immigration case and overall safety.

10. H.C.R.'s asylum claim involves traumatic experiences that he experienced in his country of origin that are difficult for him to discuss. Part of the reason why SOS requires adequate attorney access is to permit us to work with H.C.R. to learn more about these traumatic experiences and to explain them to the immigration court. This process generally involves multiple meetings to establish trust and rapport. In my experience with clients who have faced similar trauma, these meetings are most effective when held in person.

11. Although Sanctuary of the South ("SOS") currently has no clients at the facility, I have not observed anything indicating that the issues we have faced accessing our clients will not continue in the future. SOS intends to continue representing people detained at the facility, and the ability to speak with prospective clients and clients detained at the facility remains crucial to our ability to carry out our mission and to retain and serve future clients.

Executed on the 30th of September, 2025, at Chattanooga, Tennessee.

*/s/ Katherine H. Blankenship*
Katherine H. Blankenship