# DECLARATION OF VIVIANA EUGENIA MEDINA

I, Viviana Eugenia Medina, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I make this declaration based on my own personal knowledge, and if called to testify, I could and would do so competently and truthfully to these matters.

2. I am an attorney at the Law Office of Viviana Medina, LLC. I am a member in good standing in the State Bar of Louisiana. I exclusively practice immigration law, including removal defense and affirmative matters.

3. Since September 11, 2025, I have represented one client detained at the facility commonly known as "Alligator Alcatraz." My client does not wish to be identified, as he fears disclosure of his name and identity will lead to retaliation by the government in his petition for immigration relief.

4. There are many barriers at Alligator Alcatraz that make it extremely difficult to communicate with detained clients being held there. In contrast to other detention facilities, there is no website or public guidance for contacting detained clients, no listed phone or email contacts.

5. One challenging barrier for attorneys with clients at Alligator Alcatraz is ICE's failure to accurately list the location of detainees held at the facility in its online detainee locator system. In the case of my client, the ICE and EOIR online systems incorrectly listed his location as Krome North Service Processing Center, when he was actually detained at Alligator Alcatraz.

6. My client was scheduled for a bond hearing on September 24, 2025. Prior to the hearing, on September 18, 2025, I tried to request an attorney video conference with my client through the online system and received an automatic message saying that my client was not detained in a detention facility where they were accepting ERO eFile Legal Visitation scheduling. Attached as Exhibit A is a screenshot of this message. Then, on September 19, 2025, I contacted Krome by phone to ask for guidance since, according to the ICE detainee locator, my client was there. The clerk stated that my client was not there.

7. My associate, Zachary Sanders, called the number (561) 519-9732. I found that phone number when I searched for another detainee whose family sought to retain us. That person showed as detained at Alligator Alcatraz and that was the phone number listed for visitor information. He was able to speak with the person who answered the phone

      briefly, but that person cut off the phone call without providing any information about the client's location.

8. I later confirmed that my client was at Alligator Alcatraz, not Krome, because my client confirmed his location via telephone with his family. This misinformation caused confusion and delay in preparing the bond motion, and I was never able to speak with my client prior to his bond hearing.

9. What more, my client was not produced for his bond hearing before Immigration Judge Pereira. The hearing proceeded in his absence and the IJ simply said, "they are not bringing them from Alcatraz," without further explanation.

10. The only way for detainees at Alligator Alcatraz to place outgoing phone calls is on a recorded, monitored line. Unmonitored attorney-client phone calls and in-person visits are necessary for developing trust in attorney-client relationships. Clients must be able to share information openly with their attorneys in order to consider all facts that might be helpful in their cases or petitions for relief. and share potentially sensitive or traumatic information related to their immigration cases. Full disclosure is only possible if clients are assured that their communications are confidential and protected from compelled disclosure. Eliminating a reasonable expectation of confidentiality undermines the attorney-client privilege and the client's opportunity to receive the most effective assistance of counsel - a fundamental aspect of due process. By disregarding the importance of confidentiality and privilege in attorney-client communications, the government is essentially ignoring an attorney's ethical duty to ensure the physical setting and method of communication (whether by phone or in-person) preserves the client's confidences. An unmonitored, private setting is a fundamental requirement for meeting this ethical standard.

Executed on 2nd of October, 2025, at Kissimmee, Florida.

_____
Viviana E. Medina, Esq.

# EXHIBIT A

