UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

H.C.R., et al.,

        Plaintiffs,

v.

KRISTI NOEM, Secretary, U.S.
Department of Homeland Security, et al.,

        Defendants.
_____/

Case No. 2:25-cv-00747-SPC-DNF

### FEDERAL DEFENDANTS' SURREPLY TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs' amended complaint alleges the Federal Defendants are "legal custodians" of the detained plaintiffs and therefore liable for alleged interference with attorney-detainee communications at Alligator Alcatraz. In their reply, Plaintiffs' legal theory shifts to assert the Federal Defendants have violated the First Amendment due to ICE's ability to direct and supervise state officers performing functions of an immigration officer pursuant to agreements entered under 8 U.S.C. § 1357(g). Plaintiffs' legal theory is unknown to First Amendment jurisprudence and contrary to U.S. District Judge Ruiz's August 18, 2025, order providing that "Plaintiffs' cause of action is constitutional, not regulatory or contractual." Plaintiffs fail to provide any authority that the First Amendment requires federal agencies to enforce supervisory action over state officials to implement the list of measures

requested by Plaintiffs. Because Plaintiffs are unlikely to succeed in the merits of this action, their motion for a preliminary injunction should be denied.

## ARGUMENT

I. **Judge Ruiz previously rejected any argument that 287(g) agreements between ICE and state officials create a basis for a First Amendment violation.**

In his August 18, 2025, order, Judge Ruiz concluded the Plaintiffs had demonstrated venue for the Federal Defendants in the Southern District of Florida but had failed to show venue for all Plaintiffs' claims against the State Defendants. *C.M. v. Noem*, No. 25-CV-23182-RAR, 2025 WL 2400953, at *18-23 (S.D. Fla. Aug. 18, 2025). Significantly, in its discussion, the Court considered whether 287(g) agreements entered by Federal Defendants were sufficient to establish venue for the State Defendants. *Id.* at *20-21. The Court concluded Plaintiffs had failed to show a *prima facie* case under the First Amendment:

> Plaintiffs appear to suggest that the State Defendants' failure to act in accordance with these agreements gave rise to the Detained Plaintiffs' First Amendment causes of action. This argument—to the extent Plaintiffs even make it—is inherently flawed. For one, Plaintiffs' cause of action is *constitutional*, not *regulatory* or *contractual*. Plaintiffs do not— and have never, through the twists and turns of this litigation—claimed that the State Defendants' failure to act in accordance with intergovernmental agreements creates a First Amendment issue.
>
> . . . .
>
> Plaintiffs do not point to any part of the record that suggests that any State Defendant signed a Memorandum of Agreement that vested them with particular responsibilities relating to the Detained Plaintiffs at Alligator Alcatraz. Indeed, the State Defendants have provided policy documents from Defendant [Florida Division of Emergency

2

>Management] that show that "[t]he *facility* is responsible for facilitating detainees' private access to their legal representatives and assistants."
>
>Plaintiffs' assertion at the hearing that venue derives from 287(g) Agreements between the Federal and State Defendants requires impermissible inferential leaps. First, the Court would have to find it has proper venue over the State Defendants based on Agreements that none of them signed. Second, the Court would have to find that the State Defendants violated those Agreements. And third, the Court would have to find that the breach of those Agreements proximately caused the Detained Plaintiffs' constitutional injuries. But this is not a case about the breach of any 287(g) Agreements, nor is this a case about whether the State Defendants have violated a practice or policy.

*Id.* As demonstrated in his August 18, 2025, order, Judge Ruiz rejected that failure to act in accordance with a 287(g) agreement created a prima case under the First Amendment sufficient to create venue. That theory, however, is the basis upon which Plaintiffs now construct their case. *See* Pls.' Reply, Doc. 140 at 11 (arguing a First Amendment cause of action based upon Federal Defendants' authority to take supervisory action under 287(g) agreements). Because Plaintiffs cannot show a First Amendment violation grounded upon an alleged failure to act under a 287(g) agreement, they are unlikely to succeed in the merits of this case.

### II. Plaintiffs' theory of liability against the Federal Defendants is unknown to First Amendment jurisprudence.

Even if Plaintiffs' First Amendment theory had not previously been rejected by Judge Ruiz, it nevertheless fails to a state a claim. As an initial matter, Plaintiffs provide no authority for the proposition a federal agency may violate the First Amendment for failing to take a supervisory action relating to a state actor under an intergovernmental agreement. Plaintiffs argue that "[i]n any context, when a

3

subordinate violates the law, their supervisor cannot disclaim responsibility." (Pls.' Reply, Doc. 140 at 12.) While Plaintiffs' contention may some support in certain contexts (e.g., vicarious liability under state tort law), their assertion that the proposition applies "[i]n any context" is demonstrably incorrect. For instance, neither the related context of *Bivens* nor 42 U.S.C. § 1983 permits liability against a supervisor for the acts of a subordinate. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). More to the point, Plaintiffs fail to provide any authority that a supervisory relationship between ICE and state law enforcement under a 287(g) agreement provides for a First Amendment cause of action against the Federal Defendants.

### III. Plaintiffs' allegations fail to state a claim under the First Amendment.

As recognized by Judge Ruiz, "Plaintiffs advance no specific allegation that the State Defendants have engaged in acts or omissions pursuant to the Federal Defendants' instructions." *C.M.*, 2025 WL 2400953, at *21. Even if the State Defendants' day-to-day operations at Alligator Alcatraz concerning attorney-detainee communications were somehow connected to specific instructions from the Federal Defendants, Plaintiffs' allegations nevertheless fail to state a claim.

As discussed in the Federal Defendants' response to Plaintiffs' motion for a preliminary injunction, the Eleventh Circuit's constitutional rule that officers may not open inmate mail outside of an inmate's presence requires a plaintiff to show a

4

pattern and practice of doing so to demonstrate a violation of the First Amendment. *Mitchell v. Peoples*, 10 F.4th 1226, 1230-31 (11th Cir. 2021). Here, by contrast, Plaintiffs describe episodic instances of attorneys asking questions of a facility staff member and scheduling difficulties. (Pls.' Motion for Prelim. Inj., Doc. 115 at 8, 9.) Without a showing that any communication difficulties between attorneys and detainees are due to a pattern or practice of First Amendment violations equivalent to opening mail outside an inmate's presence, the detainee plaintiffs do not state a claim. *See e.g.*, *Cunningham v. Volusia Cnty. Corr. Ctr.*, No. 6:24-CV-131-WWB-LHP, 2024 WL 516957, at *2 (M.D. Fla. Jan. 23, 2024). ("[A]n isolated incident of inadvertent opening of incoming legal mail, without evidence of improper motive or resulting interference with inmate's right to counsel or access to courts, does not rise to [the] level of [a] constitutional violation."); *Pickens v. Morgan*, No. 2:24-CV-00231-CLM-HNJ, 2025 WL 1913578, at *15 (N.D. Ala. Mar. 28, 2025) (same)

The legal organizations' First Amendment claims fare no better. The Federal Defendants' response discussed at length the Eleventh Circuit's decision in *Haitian Refugee Ctr., Inc. v. Baker*, where the court held that "[t]he Constitution . . . does not require the Government to assist the holder of a constitutional right in the exercise of that right." 953 F.2d 1498, 1513 (11th Cir. 1992). Moreover, "associational freedom in no way implies a right to compel the Government to provide access to those with whom one wishes to associate." *Id.* Plaintiffs' reply argues that *Haitian Refugee Ctr.* is inapposite because the court noted that the legal association's First Amendment associational right was "predicated upon the existence of an underlying legal claim

5

that may be asserted by the potential litigant." (Pls.' Reply, Doc. 140 at 16.) But Plaintiffs entirely disregard the Eleventh Circuit's alternative holding:

> Even assuming *arguendo* that [the legal organization] has some limited right to associate with interdicted Haitians who are detained outside of the United States and who themselves have no substantive rights enforceable in the United States, this right of association would not give rise to the right of access that [the legal organization] claims. In reality, [the legal organization]'s claim is that it has a right to associate with the interdicted Haitians and it has a right to compel the Government to assist it in exercising that right. The Constitution, however, does not require the Government to assist the holder of a constitutional right in the exercise of that right.

*Haitian Refugee Ctr.*, 953 F.2d at 1513. Plaintiffs' attempt, therefore, to limit *Haitian Refugee Ctr.* to cases in which a detainee does not have an underlying claim is at odds with binding Eleventh Circuit precedent. As in *Haitian Refugee Ctr.*, because Plaintiffs fail to state a First Amendment claim, injunctive relief should be denied.[1]

## IV. ICE detention standards do not constitute First Amendment requirements.

As previously recognized by the Eleventh Circuit, internal facility detention standards do not constitute First Amendment standards. *Al-Amin v. Smith*, 511 F.3d 1317, 1336 n.37 (11th Cir. 2008) ("[Georgia State Prison] regulations themselves do not constitute constitutional law . . . ."). Plaintiffs' reply again attempts to bootstrap the 2011 ICE Performance-Based National Detention Standards (PBNDS) to argue a

---

[1] A court properly considers whether plaintiffs state a claim upon which relief can be granted when determining whether to permit injunctive relief. *See Haitian Refugee Ctr.*, 953 F.2d at 1515 (remanding case with instructions to dismiss following an appeal from a district court's grant of a preliminary injunction).

deviation from those standards results in a First Amendment violation. To do so, Plaintiffs' recast *Turner v. Safley*, 482 U.S. 78 (1987) to suggest a detention policy may be unconstitutional is if there are "ready alternatives" to a detention policy at Alligator Alcatraz. (Pls.' Reply, Doc 140 at 14.) Plaintiffs' argument, however, is far afield from *Turner*'s holding that prison regulations that restrict constitutional rights of inmates are valid so long as they are reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89. Before a court has any occasion to consider whether there are ready alternatives to a detention policy, a plaintiff must demonstrate an infringement of his or her constitutional rights. Because the PBNDS are not First Amendment standards, Plaintiffs' attempt to argue *Turner* requires implementation of the PBNDS fails on its own terms.

V. **Plaintiffs' fail to meet their evidentiary burden of demonstrating compliance Rule 23's requirements for certification of a putative class.**

Although previously a tacit request, Plaintiffs reply now argues this Court should certify a putative class in connection with their motion for a preliminary injunction. Their request should be denied. As previously discussed, Plaintiffs fail to meet Rule 23(a)(3)'s requirement of typicality. "A class representative satisfies the typicality requirement if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Carter v. City of Montgomery*, 108 F.4th 1334, 1341 (11th Cir. 2024) (cleaned up). "Although substantial factual differences between the class

7

representative and members are not necessarily preclusive of typicality, there must in such circumstances be a strong similarity of legal theories." *Id.* (cleaned up).

Plaintiffs' reply attempts to reframe Rule 23's requirement of typicality by arguing that Plaintiffs challenge "facility-wide policies and practices." (Doc. 140 at 29.) But the Supreme Court has rejected reframing core Rule 23 requirements through pleading devices. As stated in *Wal-Mart Stores, Inc. v. Dukes* in connection with Rule 23's requirement of commonality (which tends to merge with typicality), "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." 564 U.S. 338, 349 n.5, 350, (2011) (*quoting* Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.Rev. 97, 132 (2009)) (cleaned up).

Plaintiffs' named class members present varied accounts to such an extent they fail to present a unified event or pattern or practice among themselves much less putative claims of unknown class members. According to Plaintiffs, one attorney was offered a date for an in-person detainee meeting at Alligator Alcatraz and was able to meet with the detainee even earlier than anticipated following the detainee's transfer to the Krome facility. (Gonzalez Decl., Doc. 114-7 ¶ 7.) Another attorney alleges unanswered communications, which State Defendants now show involved two instances of quarantined emails. (Pls.' Reply, Doc. 140 at 5; Saunders Supp. Decl., Doc. 132-1 ¶ 81.b; Ex. 17, 132-1 at 116.) Yet other attorneys detail extensive communications regarding scheduling visits with detainees. (Pls.' Reply, Doc. 140 at 4.) Two attorneys describe intentionally asking questions to a facility staff, which

Plaintiffs cite as examples of communications taking place in a nonconfidential manner. (Pls.' Motion for Prelim. Inj., Doc. 115 at 9.) Due to the varied accounts they provide, Plaintiffs have failed to present evidence of a unified event or pattern or practice and a strong similarity of legal theories sufficient to meet Rule 23(a)(3)'s requirement of typicality. The Court should not certify a putative class.

VI. **Plaintiffs' reply highlights serious questions regarding Plaintiffs' standing to assert First Amendment Clams against the Federal Defendants.**

As previously discussed, Plaintiffs' reply presses a shifting legal theory that Federal Defendants should exercise supervisory authority under 287(g) agreements to direct and supervise state officers at Alligator Alcatraz in the manner Plaintiffs request. The disjointed nature of Plaintiffs' legal theory highlights serious doubts regarding their Article III standing to bring a First Amendment claim against the Federal Defendants. As recognized by Plaintiffs' reply, "[T]he alleged injury must be 'fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" (Doc. 140 at 10) (*quoting Allen v. Wright*, 468 U.S. 737, 751 (1984)).

Even if Plaintiffs were able to show they possess a private right of action to require the Federal Defendants to take a supervisory action under a 287(g) agreement, any right to enforce a supervisory action is at odds with the relief Plaintiffs demand in their amended complaint, which requests an order directing the "Defendants" (both State and Federal) to take a list of measures. *See* Am. Compl., Doc. 113 at 35-36. Those measures, however, relate to Plaintiffs' First Amendment

9

claims regarding day-to-day operations at Alligator Alcatraz, not any private right to enforce a 287(g) agreement in a particular manner.

Furthermore, with the possible exception of Plaintiffs' request for an order that ICE publish various items of information,[2] Doc. 113 at 36 ¶¶ i-j., Plaintiffs' list of requested measures is directed at the day-to-day operations at Alligator Alcatraz, which is operated by Florida. (Vega Decl., 131-1 ¶ 7.) Because Federal Defendants do not conduct day-to-day operations at the facility, Plaintiffs' requested relief only highlights questions as to Plaintiffs' standing to demand the Federal Defendants bring about the requested measures.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction should be denied.

DATED this 9th day of October, 2025.

                                                    Respectfully submitted,

                                                  GREGORY W. KEHOE
                                                  United States Attorney

By:   */s/ Chad C. Spraker*
       CHAD C. SPRAKER
       Assistant United States Attorney
       USA No. 198
       Email: chad.spraker@usdoj.gov
       *Counsel for Federal Defendants*

---

[2] Notably, Plaintiffs' only requested relief that explicitly references ICE (posting information and updating a website) constitutes mandatory preliminary relief, which "is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party . . . ." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). The requested injunctive relief also runs afoul of *Haitian Refugee Ctr., Inc. v. Baker*'s instruction that "[t]he Constitution . . . does not require the Government to assist the holder of a constitutional right in the exercise of that right . . . ." 953 F.2d 1498, 1513 (11th Cir. 1992)