UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

H.C.R., et al.,

              Plaintiffs,                       Case No. 2:25-cv-00747-SPC-DNF

v.

KRISTI NOEM, Secretary, U.S.
Department of Homeland Security, et al.,

              Defendants.

_____/

## FEDERAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Plaintiff detainees and legal organizations allege government officials are interfering with attorney-detainee communications at the South Florida Soft Sided Facility South—also known as Alligator Alcatraz—in violation of the First Amendment.  The amended complaint alleges the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), and official capacity defendants Kristi Noem, Todd Lyons, and Garrett Ripa (collectively the Federal Defendants) are each a "legal custodian" of the detained plaintiffs and therefore liable for alleged interference with attorney-detainee communications at the facility.

Plaintiffs' amended complaint should be dismissed for lack of subject-matter jurisdiction and failure to state a claim.  As to subject-matter jurisdiction, this case should be dismissed for three reasons.  First, Plaintiffs do not allege a waiver of the

United States' sovereign immunity.  The Administrative Procedure Act (APA) permits suit against the United States when a person suffers a legal wrong due to an agency action.  5 U.S.C. § 702.  Because the amended complaint fails to allege the Federal Defendants have engaged in an action resulting in the Plaintiffs' alleged legal wrongs, the Federal Defendants are immune from suit.

Second, Plaintiffs lack standing to sue, as the amended complaint fails to allege the Federal Defendants have caused Plaintiffs' alleged injuries.  The amended complaint's reliance on 8 U.S.C. § 1357(g) (section 287(g) of the Immigration and Nationality Act)—which authorizes state officers and employees to perform a function of an immigration officer—does not provide a plausible basis to conclude that the State Defendants committed an alleged First Amendment violation pursuant to the Federal Defendants' instructions.

Third, Plaintiffs' allegations that officials have in any way unconstitutionally restricted attorney-detainee communications are moot.  State Defendants provide constitutionally sufficient means for detainees and their attorneys to communicate.  The amended complaint's allegations that Plaintiffs lack information regarding protocols for attorney-client communications and timely detainee location are also moot.

Even if Plaintiffs could establish the Court's subject-matter jurisdiction, Plaintiffs' allegations fail to state a claim against the Federal Defendants under the First Amendment.  The detainee plaintiffs do not possess a First Amendment right to the list of measures they demand regarding attorney-detainee communications.  Even

assuming Plaintiffs could show instances where detainees were unable to confidentially communicate with their counsel, Plaintiffs fail to demonstrate a pattern and practice necessary to show a First Amendment violation. *Mitchell v. Peoples*, 10 F.4th 1226, 1230-31 (11th Cir. 2021).

Regarding the legal organization plaintiffs, the First Amendment protects against affirmative interference of an attorney's right to associate with current or prospective clients. It does not require the United States to facilitate access to individuals in detention. *See Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1513 (11th Cir. 1992). Because Plaintiffs do not allege the Federal Defendants have interfered with any attorney's association rights, the legal organization plaintiffs fail to state a claim.

## FACTUAL ALLEGATIONS

Detainee plaintiffs H.C.R., D.G.M., and H.P. and legal organizational plaintiffs Sanctuary of the South and Bilbao Law, LLC allege federal and state officials have unconstitutionally restricted attorney-client communications at Alligator Alcatraz. Plaintiffs allege the defendants do not allow for timely attorney-detainee visits, and detainees are transferred from the facility immediately prior to scheduled visits. (Am. Compl., Doc. 113 ¶ 5.) Plaintiffs further assert the defendants do not provide confidential attorney-detainee videoconferences, phone calls, or transmittal of documents. *Id.* ¶¶ 6-8. Plaintiffs also contend defendants have not publicly posted protocols for attorney access to detainees, and ICE's detainee locator omits information about detainees at the facility. *Id.* ¶ 9.

3

As to the Federal Defendants' relationship to the facility, the amended complaint alleges each defendant is "a legal custodian of Detained Plaintiffs and the members of the putative class." *Id.* ¶¶ 28-32. Plaintiffs also describe agreements between Florida agencies the ICE under section 287(g) as providing detention authority "at a state-operated detention facility" that has been approved by ICE or satisfies ICE standards. *Id.* ¶¶ 39, 40. Plaintiffs add that ICE provides "oversight of the detention authority . . . to ensure compliance with federal immigration law and ICE policies." *Id.* ¶ 40.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by [the] Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal quotation marks omitted).

In moving to dismiss a complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a defendant may make a facial or a factual challenge. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack challenges whether a plaintiff "has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). A factual attack, in contrast, challenges subject-

4

matter jurisdiction regardless of the pleadings, and extrinsic evidence may be considered.  *Id.*  A district court considering a factual attack on subject-matter jurisdiction "may proceed as it never could" at summary judgment and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  A complaint must contain sufficient allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facial plausibility exists when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  The standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant had acted unlawfully.  *Id.*  Where a complaint pleads facts that are "merely consistent" with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 557 (2007). Legal conclusions or conclusory allegations that merely recite the elements of a cause of action do not satisfy the standard and must be disregarded. *Iqbal*, 556 U.S. at 678-79.

///

///

///

///

**ARGUMENT**

I.    **The Court lacks subject-matter jurisdiction over Plaintiffs' allegations against the Federal Defendants.**

    **A. Plaintiffs' amended complaint does not allege a waiver of the United States' sovereign immunity.**

      "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "The United States' immunity from suit extends to its agencies." *Asociacion de Empleados del Area Canalera (ASEDAC)* v. *Panama Canal Comm'n*, 453 F.3d 1309, 1315 (11th Cir. 2006). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citation omitted). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Id.*

      The Eleventh Circuit has recognized that "[t]he defense of sovereign immunity is waived in actions against federal government agencies seeking nonmonetary relief if the agency conduct is itself subject to judicial review." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1555 (11th Cir. 1985). Section 702 of the Administrative Procedure Act provides the following waiver of the United States' sovereign immunity for nonmonetary relief:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a

6

claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

As indicated by section 702, to demonstrate a waiver of the United States' sovereign immunity, plaintiffs must show they have suffered a legal wrong due to "agency action . . . ."[1]  A complaint must therefore plausibly allege agency action to demonstrate a waiver of the United States' sovereign immunity in a suit for nonmonetary relief.[2]  *See Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1267 (11th Cir. 2011) (stating section 702 waives the United States' sovereign immunity "to the extent that it permits a person suffering legal wrong because of agency action to seek relief other than money damages") (cleaned up); *Fla. Marine Contractors v. Williams*, No. 2:03CV229-T-30SPC, 2004 WL 964216, at *3 (M.D. Fla. Apr. 22, 2004) (stating that the APA's limitations on jurisdiction and judicial review are expressly incorporated into the APA's waiver of sovereign immunity); *Fed. Land Bank of Columbia v. Shepard*, 646 F. Supp. 1145, 1149 (M.D. Ga. 1986) (dismissing a complaint due to the government's sovereign immunity for failure to allege agency

---

[1] Title 5 U.S.C. § 701(b)(2) and 5 U.S.C. § 551(13), in turn, define "agency action" as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act . . . ."

[2] *Webster v. Doe*, 486 U.S. 592 (1988) does not hold otherwise.  There, the Supreme Court concluded section 102(c) of the National Security Act did not preclude review of a plaintiff's constitutional claim under section 701 of the APA.  *Id.* at 604-05.  The Court's opinion did not question the scope of the United States' sovereign immunity under section 702.  *See id.* at 597 (describing the scope of judicial review under section 702).

action under section 702); *Helton v. United States*, 532 F. Supp. 813, 823 (S.D. Ga. 1982) (stating that section 702 waives sovereign immunity for nonstatutory review when a plaintiff alleges agency action under section 702); *cf. Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 (11th Cir. 2003) (recognizing that "final" agency action is not required when reviewing a constitutional claim as opposed to an APA appeal).

Here, Plaintiffs' amended complaint fails to allege the Federal Defendants have engaged in agency action sufficient to waive the United States' sovereign immunity. Instead of identifying actions taken by ICE or DHS officials, the amended complaint describes each of the Federal Defendants as a "legal custodian" of detainees at Alligator Alcatraz. (Am. Compl., Doc. 113 ¶¶ 28-32.) Indeed, the only defendant Plaintiffs identify as operating the facility is the Florida Division of Emergency Management, which Plaintiffs describe as "a state agency that is overseeing operations at Alligator Alcatraz." *Id.* ¶ 35.

Moreover, Plaintiffs' amended complaint candidly cites agreements between Florida agencies and ICE under section 287(g) as providing detention authority "only at a state-operated detention facility . . . ." *Id.* ¶ 40. Absent from the amended complaint is any allegation that the Federal Defendants have engaged in an agency action causing the Plaintiffs' alleged legal wrongs. Plaintiffs therefore fail to allege a waiver of the United States' sovereign immunity.

*///*

8

**B. The amended complaint fails to allege the Federal Defendants have caused an injury sufficient to demonstrate Plaintiffs' constitutional standing.**

"To bring suit in federal court, a party must have constitutional standing, which is an essential and unchanging part of the case-or-controversy requirement of Article III." *Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206, 1213 (11th Cir. 2019) (internal quotation marks omitted). "To have Article III standing, a plaintiff must have suffered an injury in fact that can be fairly traced to the defendant's conduct and that can be redressed with a favorable decision." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 922 (11th Cir. 2023). "Traceability looks to whether a defendant's actions have a causal connection to a plaintiff's injuries." *Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 492, 497 (6th Cir. 2023). At the pleading stage, plaintiffs must allege sufficient facts to plausibly allege standing. *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 922 (11th Cir. 2023).

Plaintiffs fail to allege the Federal Defendants are interfering with any of their communications at the state-run facility. As previously discussed, Plaintiffs allege the Florida Division of Emergency Management is overseeing operations at Alligator Alcatraz. (Am. Compl., Doc. 113 ¶ 35.) While Plaintiffs label each of the Federal Defendants as a "legal custodian" of the detainee plaintiffs, Plaintiffs supply no factual allegations that any of the Federal Defendants interfered with communications involving the plaintiff detainees or legal organizations at the facility. Without more, Plaintiffs' allegations amount to conclusory allegations and

labels insufficient to plausibly allege constitutional standing.  *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (stating that bare assertions that individual defendants were a "principal architect" of an invidious policy or were "instrumental" in adopting and executing it were bare assertions insufficient to state a claim).

The Eleventh Circuit similarly rejected standing in *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259 (11th Cir. 2011).  There, Hollywood Mobile Estates ("Hollywood"), an assignee of property leased by the Seminole Tribe of Florida, sued the U.S. Secretary of the Interior ("the Secretary") alleging the tribe threatened to repossess the property in violation of the lease.  *Id.* at 1262. Hollywood's complaint described the Secretary as "'the approving and indispensable party pursuant to the Lease' who had 'the overall responsibility for administering the actions taken by the Department of the Interior.'"  *Id.* at 1263.  The complaint alleged the Secretary had approved and ratified the lease, which required arbitration if Hollywood, the tribe, and the Secretary could not resolve a dispute about the lease. *Id.*

On appeal from an order of dismissal, the Eleventh Circuit concluded Hollywood lacked constitutional standing.  *Id.* at 1266.  The court reasoned that "[a]lthough Hollywood alleged an imminent injury, Hollywood failed to allege that its injury was fairly traceable to the Secretary."  *Id.* at 1265.  The court continued, "Hollywood named the Secretary as a defendant and described some responsibilities of his office, but failed to allege an action of the Secretary that had caused Hollywood any injury."  *Id.* at 1265-66.  Noting "[i]t is the plaintiff's burden to plead

and prove causation[,]" the court concluded, "Hollywood failed to satisfy this burden
because it did not allege that the Secretary had caused Hollywood any injury." *Id.* at
1266 (ellipses omitted).

In the present case, Plaintiffs allege the Federal Defendants are "legal
custodians" of the detainee plaintiffs and quote from a section 287(g) agreement that
"ICE shall provide oversight of the detention authority . . . to ensure compliance
with federal immigration law and ICE policies." (Am. Compl., Doc. 133 ¶ 40.) Like
*Hollywood*, however, Plaintiffs have failed to allege the Federal Defendants have
caused Plaintiffs' alleged injuries. As the Secretary's role of approving and ratifying
the lease failed to allege causation of an injury in *Hollywood*, the Federal Defendants'
section 287(g) relationship with Florida agencies also fails to plausibly allege
causation of Plaintiffs' claimed First Amendment injuries. The amended complaint
should therefore be dismissed against the Federal Defendant for failure to allege
constitutional standing.

### C. Plaintiffs lack standing to allege other detainees have been transferred from Alligator Alcatraz before their attorneys are able to meet with them.

Plaintiffs' amended complaint alleges that "Defendants have engaged in a
pattern and practice of transferring detainees whose attorneys have requested legal
visits immediately prior to scheduled visits." (Doc. 113 ¶ 47) (boldface omitted). In
support of the allegations, Plaintiffs describe instances where detainees were
transferred from Alligator Alcatraz before an attorney was able to meet with them.
*Id.* ¶¶ 48-51. Crucially, however, the two attorneys identified in the allegations, Troy

Elder and Carlos Saturne, are not plaintiffs in this action.  Because no attorney

belonging to a legal organization plaintiff alleges a detainee transfer disrupted a

scheduled meeting, Plaintiffs' allegations fail to allege a constitutionally required

injury-in-fact.[3] *See Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994) ("[A] litigant

must assert his own legal rights and interests and may not ordinarily rely on the

rights and interests of third parties.").[4]

### D. Plaintiffs' complaints that there are inadequate avenues for attorney-detainee communications at Alligator Alcatraz are moot.

Mootness is a jurisdictional doctrine that flows directly from the limitation,

imposed by Article III of the Constitution, that federal court jurisdiction extends only

to the consideration of cases and controversies.[5]  *See* U.S. Const. art. III; *Al Najjar v.

Ashcroft*, 273 F.3d 1330, 1335-36 (11th Cir. 2001).  "[A] case is moot when the issues

presented are no longer 'live' or the parties lack a legally cognizable interest in the

outcome."  *Al Najjar*, 273 F.3d at 1335-36.  In other words, "a case is moot when it

---

[3] Plaintiffs also allege that Mich Gonzalez, an attorney from Plaintiff Sanctuary of the South attempted to arrange a meeting with a detainee at Alligator Alcatraz who was transferred to the Krome Detention Center.  (Am. Compl., Doc. 113 ¶ 55.)  Again, however, Plaintiffs fail to plausibly allege any injury-in-fact, as the Krome meeting took place two days earlier than the previously scheduled meeting at Alligator Alcatraz.  *See id.*

[4] Plaintiffs' putative class action does remedy their lack of standing.  *See Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1423 (11th Cir. 1995) ("Inclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue.").

[5] Federal Defendants' mootness arguments constitute a factual challenge to the Court's subject-matter jurisdiction.  As previously stated, in a factual challenge the Court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.* at 1336 (internal quotation marks omitted).  Thus, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Id.*

Plaintiffs' amended complaint alleges, "The government's restrictions on attorney-client communication *at Alligator Alcatraz* inhibit detainees' ability to meaningfully access and communicate confidentially with legal counsel, impinge upon attorney-client privilege, and violate detainees' constitutional rights under the First Amendment." (Doc. 113 ¶ 12) (emphasis added).  As previously discussed, Plaintiffs offer no allegations that Federal Defendants are operating Alligator Alcatraz or that any of the State Defendants are engaged in an alleged First Amendment violation pursuant to the Federal Defendants' instructions.  *See also C.M. v. Noem*, No. 25-CV-23182-RAR, 2025 WL 2400953, at *21 (S.D. Fla. Aug. 18, 2025) ("Plaintiffs advance no specific allegation that the State Defendants have engaged in acts or omissions pursuant to the Federal Defendants' instructions.").

Even if the Court were to consider allegations related to matters outside the facility, those allegations are moot.  The amended complaint asks the Court to (1) "Order Defendants to maintain publicly available information regarding protocols for attorney-client communication via Defendant ICE and/or State of Florida websites" and (2) "Order Defendants to accurately update the location of detainees held at Alligator Alcatraz in Defendant Immigration and Customs Enforcement's

13

Online Detainee Locator System within 24 hours of their transfer to the facility." (Am. Compl., Doc. 113 at 36.)

As to Plaintiffs' request for an order to maintain publicly available information regarding protocols for attorney-client communication on a government website, Plaintiffs' own pleading shows that any injury they may claim is moot. The amended complaint details at length a Florida Department of Emergency Management draft visitation policy explaining protocols for how attorneys may arrange visits with their clients. (Doc. 113 ¶ 44.) The amended complaint further describes how an attorney from Plaintiff Sanctuary of the South scheduled a visit through an email address (legal@privacy6.com) designated for scheduling detainee visits. *Id.* ¶ 55. Any possible First Amendment violation regarding a lack of information as to how Plaintiffs might arrange attorney-detainee visits is therefore moot. *See Herron for Cong. v. Fed. Election Comm'n*, 903 F. Supp. 2d 9, 18 (D.D.C. 2012) (accepting plaintiff's concession that an alleged injury caused by lack of information was moot following receipt of that information).

Regarding location information for detainees held at Alligator Alcatraz, on or about September 19, 2025, DHS began implementing procedures to update detainee location information relating to aliens detained at Alligator Alcatraz to the Online Detainee Locator System (ODLS). (Parra Decl., Ex. A ¶ 5.) ODLS is a public, web-based system that allows family members, legal representatives, and members of the public to locate individuals who are detained by ICE. *Id.* ¶ 6. In ICE-owned facilities, detainee location information is updated in the ENFORCE Alien

14

Detention Module (EADM) database as soon as a detainee is booked into the facility. *Id.* ¶ 9. Once in EADM, data is automatically uploaded to the ODLS system. *Id.* Although there are exceptions for certain individuals who do not appear in ODLS, ICE typically updates ODLS within eight hours of release, removal, or transfer. *Id.* ¶¶ 7, 10.

In facilities such as Alligator Alcatraz, detainees are booked into the facility by contractors employed by the State of Florida's Division of Emergency Management. *Id.* ¶ 11. ICE typically receives those facilities' data entries daily around 8:00 a.m.; ICE officers then manually input the information into EADM, which automatically updates information in ODLS relating to transfers, release, and removal. *Id.* Because of the additional layer of information gathering and data entry, detainee location information relating to release, removal, or transfer at Alligator Alcatraz is uploaded to ODLS within 24 hours acknowledging delay in some instances. *Id.* ¶¶ 11, 12. In sum, ODLS provides timely location information for detainees held at Alligator Alcatraz. Plaintiffs' allegations are therefore moot.[6]

*///*

---

[6] This district has previously recognized that the U.S. Immigration and Customs Enforcement's Online Detainee Locator System is providing detainee location information for Alligator Alcatraz. *See Estrella v. Attorney General of the United States*, 2:25-cv-00914-KCD-DNF, Doc. 13 at 1-2 & n.2) (M.D. Fla. Oct. 9, 2025). Filings in other cases in the Middle District of Florida also demonstrate updated detainee location for the facility. *See Mejia v. Attorney General of the United States*, 2:25-cv-00981-SPC-NPM, Doc. 1-7 at 1 (M.D. Fla. Oct. 29, 2025) (providing detainee location at Florida Soft Side South); *Alfonso Perez v. Mordant*, 2:25-cv-00947-SPC-DNF, Doc. 1-2 at 2 (M.D. Fla. Oct. 20, 2025) (same).

## II. Plaintiffs' amended complaint fails to state a claim against the Federal Defendants.

### A. Plaintiffs fail to allege the Federal Defendants are interfering with Plaintiffs' attorney-detainee communications at the state-run Alligator Alcatraz.

Even if the Court were to conclude Plaintiffs have demonstrated the Court's subject-matter jurisdiction at the pleading stage, Plaintiffs nevertheless fail to plausibly allege a First Amendment violation against the Federal Defendants. As previously discussed, the Federal Defendants are each named as parties in the amended complaint as "a legal custodian of Detained Plaintiffs and the members of the putative class." (Doc. 113 ¶¶ 28-32.) But the amended complaint fails to allege facts supporting a plausible connection between Plaintiffs' allegations and DHS or ICE.

Allegations of a supervisory relationship among government actors is insufficient to state a constitutional claim against the supervising entity. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 38 (2010) (noting the Court's rejection of *respondeat superior* liability against municipalities in § 1983 litigation due to "the fact that liability in such a case does not arise out of the municipality's own wrongful conduct"); *Stricker v. Ganey*, No. 8:09-CV-1875-T-27TGW, 2010 WL 2640320, at *8 (M.D. Fla. June 10, 2010) (holding a plaintiff

16

failed to state a claim against a sheriff for failing to oversee deputies at a jail when there were no factual allegations regarding anything the sheriff either did or failed to do in connection with overseeing or training deputies working at the jail). Plaintiffs' allegations therefore fail to state a claim for relief against the Federal Defendants based upon any supervisory relationship with Florida agencies.

### B. The detainee plaintiffs' allegations fail to plausibly allege that avenues for attorney-detainee communications at Alligator Alcatraz violate the First Amendment.

Plaintiffs' claims of a First Amendment violation due to alleged restrictions at the facility extend beyond any controlling legal precedent. The Eleventh Circuit has recognized a prisoner possesses a constitutional right to have his legal mail opened in his presence. *Al-Amin v. Smith*, 511 F.3d 1317, 1326 (11th Cir. 2008); *see also Mitchell v. Peoples*, 10 F.4th 1226, 1230 (11th Cir. 2021) (same). The court, on the other hand, has not recognized an expansive right to the list of items demanded by Plaintiffs, which include unscheduled in-person attorney-detainee meetings, dedicated phones for legal calls, video conferences, fax, document exchanges, posting of written information, and updated website information.

For those items, Plaintiffs rely upon 2011 Performance-Based National Detention Standards published by ICE. (Am. Compl., ¶¶ 42-43 & n.5.) Plaintiffs' allegations, however, fail to state a claim for relief that any facility—state or federal—violates the First Amendment if it does not implement one or more of the Performance-Based National Detention Standards. Although the Eleventh Circuit has considered an agency's standards when evaluating a defendant's claim of

17

qualified immunity, *Al-Amin* 511 F.3d at 1336 n.37, a government agency does not violate the First Amendment if it does not implement each aspect of its internal guidance, *see id.* ("[Georgia State Prison] regulations themselves do not constitute constitutional law . . . .").

Furthermore, the Eleventh Circuit's constitutional rule that officers may not open inmate mail outside of an inmate's presence requires a plaintiff to show a pattern and practice of doing so to demonstrate a violation of the First Amendment. *Mitchell v. Peoples*, 10 F.4th 1226, 1230-31 (11th Cir. 2021). Plaintiffs amended complaint, by contrast, describes episodic instances of attorneys asking questions of a facility staff member and scheduling difficulties. (Doc. 113 ¶¶ 52-56.) Without more, the detainee plaintiffs' allegations do not amount to a cognizable claim under the First Amendment.

### C. The legal organization plaintiffs fail to allege the Federal Defendants have violated their First Amendment right to freedom of association.

The Supreme Court has recognized attorneys possess a First Amendment right of association to inform individuals of their rights at least when they do so as an exercise of political speech without expectation of remuneration. *In re Primus*, 436 U.S. 412 (1978); *NAACP v. Button*, 371 U.S. 415 (1963); *NAACP v. State ex rel. Patterson*, 357 U.S. 449 (1958); *see also Jean v. Nelson*, 727 F.2d 957, 983 (11th Cir. 1984 (en banc). The Eleventh Circuit has nevertheless recognized limits on counsel's right of association when individuals are in government custody.

18

For instance, in *Haitian Refugee Ctr., Inc. v. Baker*, a legal services organization alleged the Immigration and Naturalization Service (INS) was unconstitutionally preventing the organization's lawyers from accessing interdicted Haitian immigration detainees either held on a Coast Guard ship or detained at Guantanamo Bay pending repatriation. 953 F.2d 1498, 1502 (11th Cir. 1992). A district court entered a preliminary injunction requiring the INS to grant the legal organization access to the detainees, but the Eleventh Circuit held the organization failed to state a claim under the First Amendment. *Id.* at 1504, 1515.

At the outset of its discussion, the court acknowledged the Supreme Court's cases recognizing an attorney's First Amendment right of association. *Id.* at 1512 (*citing In re Primus*, 436 U.S. 412 (1978); *NAACP v. Button*, 371 U.S. 415 (1963); *NAACP v. State ex rel. Patterson*, 357 U.S. 449 (1958)). The Eleventh Circuit nevertheless concluded the Supreme Court's cases "do not recognize a right of access to persons properly in government custody." *Id.* The court observed, "The Constitution . . . does not require the Government to assist the holder of a constitutional right in the exercise of that right[,]" and "associational freedom in no way implies a right to compel the Government to provide access to those with whom one wishes to associate." *Id.* at 1513. The court concluded the Supreme Court's precedent did not "support[] the conclusion that the Government infringes associational freedom when it denies access to those whom it lawfully detains." *Id.* at 1514.

The court further observed that the plaintiff legal organization "does not assert that the Government seeks to repatriate the interdicted Haitians *in order to* interfere with [the organization's] associational freedom." *Id.* at 1515 (emphasis in original). The court therefore held the organization failed to state a claim, which the court characterized as "nothing more than a claim that it has a right to compel the Government to assist it in exercising a right of association." *Id.* Instead, the court stated, "*Any* court order enforcing this so-called 'right' would impose an inappropriate affirmative obligation on the Government. This is more than the Constitution requires." *Id.* (emphasis in original).

Plaintiffs identify the same line of Supreme Court authority (*In re Primus*, *Button*, and *NAACP*) but fail to recognize its limits. *See* Am. Compl., Doc. 113 ¶ 87. As shown, an attorney's First Amendment right of association does not compel the government to provide access to those with whom an attorney wishes to associate. *A fortiori*, the First Amendment does not require the Federal Defendants to implement Plaintiffs' list of requested measures at a state-run facility.

The amended complaint also fails to show the Federal Defendants are taking any actions "in order to interfere" with the legal organizations' desire to associate with detainees at Alligator Alcatraz. *See Haitian Refugee Ctr., Inc.*, 953 F.2d at 1515. Conversely, Plaintiffs ask this Court to require the Federal Defendants to take actions to affirmatively assist the legal organizations in their association rights. The First Amendment right of association, however, does not mandate the Plaintiffs'

20

requested measures. *See also Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1429-30 (11th Cir. 1995) (holding the First Amendment right of association did not mandate attorney access to detainees).

## CONCLUSION

Federal Defendants respectfully request the Court to dismiss Plaintiffs' amended complaint for lack of subject-matter jurisdiction and failure to state a claim.

### Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), on November 14, 2025, counsel for Federal Defendants conferred with counsel for Plaintiffs as to her position regarding the present motion.  The conference occurred via telephone.  Plaintiffs oppose the motion.

DATED this 14th day of November, 2025.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    */s/ Chad C. Spraker*
CHAD C. SPRAKER
Assistant United States Attorney
USA No. 198
2110 First Street, Ste. 3-137
Fort Myers, Florida 33901
Telephone: 239-461-2200
Email: chad.spraker@usdoj.gov
*Counsel for Federal Defendants*