# EXHIBIT A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

SANCTUARY OF THE SOUTH,
BILBAO LAW, LLC, H.C.R.,
D.G.M., and H.P.,

Plaintiffs,                                          Case No. 2:25-cv-00747-SPC-KCD

v.

KRISTI NOEM, SECRETARY DEPARTMENT
OF HOMELAND SECURITY;
U.S. DEPARTMENT OF HOMELAND
SECURITY; TODD LYONS, U.S. IMMIGRATION
AND CUSTOMS ENFORCEMENT;
GARRETT RIPA; RONALD DESANTIS; KEVIN
GUTHRIE; AND FLORIDA DIVISION OF EMERGENCY
MANAGEMENT,

Defendants.

_____/

## PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION

Plaintiffs H.C.R., D.G.M., and H.P., on behalf of themselves and all others similarly situated, together with Sanctuary of the South and Bilbao Law, LLC (collectively, "Plaintiffs"), hereby propound the following Admissions pursuant to Rule 36 of the Federal Rules of Civil Procedure and any applicable Local Rules. Plaintiffs request that each Defendant answer these Admissions separately and fully in writing, under oath, within the time required by the Federal Rules of Civil Procedure

or by order of the Court, in accordance with the Definitions and Instructions set forth below.

## DEFINITIONS

"Plaintiffs" means H.C.R., D.G.M., and H.P., on behalf of themselves and all others similarly situated, as well as Sanctuary of the South and Bilbao Law, LLC, and any other organizations that are or become plaintiffs in this action.

"Defendants" means Kristi Noem, the U.S. Department of Homeland Security, Todd Lyons, U.S. Immigration and Customs Enforcement, Garrett Ripa, Ronald DeSantis, Kevin Guthrie, and the Florida Division of Emergency Management, and any successors in their official capacities.

"You" and "Your" refer to the responding Defendant, including that Defendant's present and former officers, directors, employees, agents, contractors, representatives, and all other persons or entities acting or purporting to act on that Defendant's behalf.

"Alligator Alcatraz" means the immigration detention facility located at or near the Dade–Collier Training and Transition Airport in the Florida Everglades, together with all tents, trailers, structures, grounds, and other areas used to detain or process individuals there.

"Detainee" means any person held, or previously held, at Alligator Alcatraz in immigration custody, whether characterized as civil, administrative, or otherwise.

"Communication" means any transmission of information of any kind between or among two or more persons or entities, whether oral, written, or electronic, including but not limited to emails, text messages, instant messages, videoconferences, telephone calls, voicemail, social media messages, letters, memoranda, notices, and in-person conversations.

"Document" means any written, printed, typed, recorded, stored, or electronically stored material or information, of any kind, whether in hard copy or electronic form, including but not limited to correspondence, emails, text messages, instant messages, policies, procedures, manuals, handbooks, notices, forms, contracts, memoranda of understanding, spreadsheets, databases, logs, notes, reports, complaints, grievances, photographs, videos, audio recordings, charts, diagrams, and all drafts and non-identical copies of any of the foregoing. The term also includes any attachments, enclosures, exhibits, embedded items, or linked files associated with a given document.

"Transfer" means any movement of detainees between facilities, whether temporary or permanent, and any related documentation (*e.g.* transfer orders, logs or other communications).

"Policy" or "policies" means any written or unwritten directive, rule, guideline, procedure, instruction, custom, or practice, whether formal or informal, including those reflected in manuals, memoranda, emails, training materials, or consistent patterns of conduct.

"Attorney access" means any means by which detainees communicate or attempt

to communicate with legal counsel or prospective legal counsel, including

in-person visits, telephone calls, videoconferences, legal mail, and exchange of

legal documents.

The terms "including," "include," and "includes" mean "including but not limited

to" and are not limiting.

The terms "all," "any," and "each" shall be construed to include "all," "any," and

"each" as necessary to bring within the scope of these admissions the broadest

range of responsive information.

The singular includes the plural, and the plural includes the singular, as necessary

to make each admission inclusive rather than exclusive.

The use of any verb tense includes all other verb tenses, as necessary to bring within

the scope of these admissions all responsive information.

### INSTRUCTIONS

A. These Requests for Admission are propounded pursuant to Rule 36 of the

Federal Rules of Civil Procedure. Each matter is deemed admitted unless,

within 30 days after service (or such other time as the Court may order or the

parties may stipulate), the responding party serves a written answer or objection.

B. You must respond to each Request separately and in writing. For each

numbered Request, You must either: (a) admit the matter; (b) deny the matter;

or (c) state in detail why You cannot truthfully admit or deny the matter.

4

C. A denial must fairly meet the substance of the requested admission. If You deny only part of a matter, You must specify the part admitted and qualify or deny the remainder.

D. You may assert lack of knowledge or information as a reason for failing to admit or deny only if You state that You have made a reasonable inquiry and that the information known or readily obtainable is insufficient to enable You to admit or deny.

E. If You object to a Request, state the specific grounds for Your objection. If a Request is objectionable in part, answer the unobjectionable portion and specify what is being withheld and on what basis.

F. These Requests are continuing in nature. If You obtain additional information that would require a different response, You must serve amended answers as required by the Federal Rules of Civil Procedure.

G. Each admission is for purposes of this action only and is not an admission for any other proceeding.

**REQUESTS FOR ADMISSIONS**

**REQUEST FOR ADMISSION NO. 1:**

Admit that attorneys are required to pre-schedule in-person and virtual legal visits in order to meet with detained clients held at Alligator Alcatraz.

**REQUEST FOR ADMISSION NO. 2:**

5

Admit that detainees are held in soft-sided structures for in-person and virtual attorney-client meetings.

**REQUEST FOR ADMISSION NO. 3:**

Admit that Alligator Alcatraz stations officers within earshot of in-person and virtual attorney-client meetings.

**REQUEST FOR ADMISSION NO. 4:**

Admit that all outgoing telephone calls from detainees at Alligator Alcatraz are monitored and recorded, including legal calls.

**REQUEST FOR ADMISSION NO. 5:**

Admit that detainees have to pay for all outgoing telephone calls from Alligator Alcatraz, including calls to pro bono attorneys.

**REQUEST FOR ADMISSION NO. 6:**

Admit that ICE's website does not include information about how attorneys can contact their clients who are detained at Alligator Alcatraz.

**REQUEST FOR ADMISSION NO. 7:**

Admit that State Defendants have not publicly posted any information regarding attorney access protocols for detainees or attorneys.

**REQUEST FOR ADMISSION NO. 8:**

Admit that the online ICE detainee locator is not always updated within 24 hours of a detainee being booked at Alligator Alcatraz.

Dated: January 7, 2026                            Respectfully Submitted,

                                                  /s/ Eunice H. Cho

Paul R. Chavez (Fla. Bar No. 1021395)            Eunice H. Cho*
Christina LaRocca (Fla. Bar No.                  AMERICAN CIVIL LIBERTIES
1025528)                                         UNION FOUNDATION
Jennifer Smith (Fla. Bar No. 964514)             915 15th St. N.W., 7th Floor
AMERICANS FOR IMMIGRANT                          Washington, DC 20005
JUSTICE                                          202-548-6616
2200 NW 72nd Ave                                 echo@aclu.org
P.O. Box No. 520037
Miami, FL 33152
786-218-3381                                     Corene T. Kendrick*
pchavez@aijustice.org                            Kyle Virgien*
clarocca@aijustice.org                           Marisol Dominguez-Ruiz*
jsmith@aijustice.org                             AMERICAN CIVIL LIBERTIES
                                                 UNION FOUNDATION
                                                 425 California Street, Suite 700
Amy Godshall, Fla. Bar No. 1049803               San Francisco, CA 94104
Daniel Tilley, Fla. Bar No. 102882               415-343-0770
Samuel Lester, Fla. Bar No. 1043063              ckendrick@aclu.org
AMERICAN CIVIL LIBERTIES                         kvirgien@aclu.org
UNION FOUNDATION OF                              mdominguez-ruiz@aclu.org
FLORIDA
4343 West Flagler Street, Suite 400              *Counsel for All Plaintiffs and the Proposed*
Miami, FL 33134                                  *Class*
786-363-2714                                     * Admitted pro hac vice
agodshall@aclufl.org
dtilley@aclufl.org
slester@aclufl.org

7

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

SANCTUARY OF THE SOUTH,
BILBAO LAW, LLC, H.C.R.,
D.G.M., and H.P.,

Plaintiffs,                                          Case No. 2:25-cv-00747-SPC-KCD

v.

KRISTI NOEM, SECRETARY DEPARTMENT
OF HOMELAND SECURITY;
U.S. DEPARTMENT OF HOMELAND
SECURITY; TODD LYONS, U.S. IMMIGRATION
AND CUSTOMS ENFORCEMENT;
GARRETT RIPA; RONALD DESANTIS; KEVIN
GUTHRIE; AND FLORIDA DIVISION OF EMERGENCY
MANAGEMENT,

Defendants.

_____/

### PLAINTIFFS' FIRST SET OF INTERROGATORIES

Plaintiffs H.C.R., D.G.M., and H.P., on behalf of themselves and all others

similarly situated, together with Sanctuary of the South and Bilbao Law, LLC

(collectively, "Plaintiffs"), hereby propound the following Interrogatories pursuant to

Rule 33 of the Federal Rules of Civil Procedure and any applicable Local Rules.

Plaintiffs request that each Defendant answer these Interrogatories separately and fully

in writing, under oath, within the time required by the Federal Rules of Civil

1

Procedure or by order of the Court, in accordance with the Definitions and
Instructions set forth below.

## DEFINITIONS

"Plaintiffs" means H.C.R., D.G.M., and H.P., on behalf of themselves and all
others similarly situated, as well as Sanctuary of the South and Bilbao Law,
LLC, and any other organizations that are or become plaintiffs in this action.

"Defendants" means Kristi Noem, the U.S. Department of Homeland Security,
Todd Lyons, U.S. Immigration and Customs Enforcement, Garrett Ripa,
Ronald DeSantis, Kevin Guthrie, and the Florida Division of Emergency
Management, and any successors in their official capacities.

"You" and "Your" refer to the responding Defendant, including that Defendant's
present and former officers, directors, employees, agents, contractors,
representatives, and all other persons or entities acting or purporting to act on
that Defendant's behalf.

"Alligator Alcatraz" means the immigration detention facility located at or near
the Dade–Collier Training and Transition Airport in the Florida Everglades,
together with all tents, trailers, structures, grounds, and other areas used to
detain or process individuals there.

"Client" means an individual who is represented, or is prospectively represented,
by an attorney.

2

"Detainee" means any person held, or previously held, at Alligator Alcatraz in immigration custody, whether characterized as civil, administrative, or otherwise.

"Communication" means any transmission of information of any kind between or among two or more persons or entities, whether oral, written, or electronic, including but not limited to emails, text messages, instant messages, videoconferences, telephone calls, voicemail, social media messages, letters, memoranda, notices, and in-person conversations.

"Document" means any written, printed, typed, recorded, stored, or electronically stored material or information, of any kind, whether in hard copy or electronic form, including but not limited to correspondence, emails, text messages, instant messages, policies, procedures, manuals, handbooks, notices, forms, contracts, memoranda of understanding, spreadsheets, databases, logs, notes, reports, complaints, grievances, photographs, videos, audio recordings, charts, diagrams, and all drafts and non-identical copies of any of the foregoing. The term also includes any attachments, enclosures, exhibits, embedded items, or linked files associated with a given document.

"Transfer" means any movement of detainees between facilities, whether temporary or permanent, and any related documentation (*e.g.* transfer orders, logs or other communications).

"Policy" or "policies" means any written or unwritten directive, rule, guideline, procedure, instruction, custom, or practice, whether formal or informal,

3

including those reflected in manuals, memoranda, emails, training materials, or consistent patterns of conduct.

"Attorney access" means any means by which detainees communicate or attempt to communicate with legal counsel or prospective legal counsel, including in-person visits, telephone calls, videoconferences, legal mail, and exchange of legal documents.

"Identify," when used with respect to a person, means to provide that person's full name, job title, employer, and, if known, current or last-known business address. When used with respect to a document, "identify" means to provide the date, author(s), recipient(s), type of document, and a brief description of its subject matter.

The terms "including," "include," and "includes" mean "including but not limited to" and are not limiting.

The terms "all," "any," and "each" shall be construed to include "all," "any," and "each" as necessary to bring within the scope of these interrogatories the broadest range of responsive information.

The singular includes the plural, and the plural includes the singular, as necessary to make each interrogatory inclusive rather than exclusive.

The use of any verb tense includes all other verb tenses, as necessary to bring within the scope of these interrogatories all responsive information.

## INSTRUCTIONS

4

These interrogatories are served pursuant to Federal Rule of Civil Procedure 33. You must answer each interrogatory separately and fully in writing under oath within the time provided by the Federal Rules of Civil Procedure or by court order.

In answering these interrogatories, You must furnish all information that is known or available to You, including information in the possession, custody, or control of Your current or former officers, employees, agents, contractors, and representatives.

If You object to any interrogatory, or any part of an interrogatory, state the specific grounds for Your objection. If an interrogatory is objectionable in part, answer the unobjectionable portion and specify what is being withheld and why.

If, after reasonable inquiry, You cannot answer an interrogatory in full, so state and answer to the fullest extent possible, specifying what portion cannot be answered and describing the efforts made to obtain the information.

If You contend that any word, phrase, or interrogatory is ambiguous, identify the language You consider ambiguous and state the construction or interpretation You used in answering.

If Your answer to any interrogatory is that You lack knowledge or information necessary to respond, describe the efforts made to obtain the information and identify any person or entity whom You believe may have responsive information.

These interrogatories are continuing in nature. If You obtain additional responsive information after serving Your answers, You must supplement or correct Your responses in accordance with the Federal Rules of Civil Procedure.

Unless otherwise specified, the relevant time period for these interrogatories is from June 23, 2025, to the present. If Your practices or policies began earlier but continued into that period, Your answers should include that earlier history to the extent necessary to explain practices in effect during the relevant period.

Where an interrogatory requests that You "describe" a policy, practice, or procedure, provide a narrative description sufficient to explain how it operates in practice, including who is responsible for implementing it, how it is communicated, and any material changes over time.

Where an interrogatory requests that You provide numbers (such as counts of visits, calls, or detainees), You may respond by providing reasonably detailed summaries, tables, or other compilations drawn from Your records, so long as You explain the data source and the method used to compile the information.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe the process for an attorney to communicate with a client detained at Alligator Alcatraz, including: how an attorney can confirm whether a client is being held, or was held, at Alligator Alcatraz; where an attorney can locate information about how to initiate legal communication with detainees at Alligator Alcatraz; the process to have confidential, unmonitored and unrecorded legal phone calls with a client; the

6

process for the attorney to send confidential legal mail to or exchange legal documents with a client; and the process for having a confidential in-person or virtual legal visit with a client.

**INTERROGATORY NO. 2:**

Describe the process for how a detained individual who enters Alligator Alcatraz without representation can communicate with counsel, including: whether detainees have access to unmonitored, unrecorded outgoing legal phone calls, and if so, how many phones are available per person, where the phones are located, which hours per day the phones are accessible to detainees, and the cost for using the phones; detainees' access to information about how to contact potential pro bono counsel or legal service organizations; and their ability to send confidential, unmonitored legal mail to counsel.

**INTERROGATORY NO. 3:**

Identify the number of in-person legal visits that have been requested since November 1, 2025; the number of in-person legal visits that have taken place in the same period; and the average amount of time that has elapsed between the time that the initial request was made by counsel, the time that a visit was scheduled, and the time and date of the visit. Please do not include any visits that did not take place in calculation of the average. For any requested visits that did not happen in that same period, please explain why they did not occur.

**INTERROGATORY NO. 4:**

Describe the current process in place for updating ICE's online detainee locator for detainees held at or transferred from Alligator Alcatraz, including the amount of time

7

between when someone is booked into Alligator Alcatraz and when ICE's online detainee locator reflects that they are at Alligator Alcatraz, and the amount of time that it takes for the online detainee locator to reflect a detainee's transfer or release from Alligator Alcatraz.

**INTERROGATORY NO. 5:**

Identify which version of ICE Detention Standards is applicable to Alligator Alcatraz, and the dates of any inspections of Alligator Alcatraz performed by ICE with respect to attorney access at the facility.

**INTERROGATORY NO. 6:**

Identify how many detainees are currently at Alligator Alcatraz, and how many of those detainees currently at Alligator Alcatraz have had either an in-person or virtual legal visit with their current or prospective counsel.

**INTERROGATORY NO. 7:**

Describe Alligator Alcatraz's process for facilitating in-person and virtual legal visits, including how in-person and virtual visit requests are processed, how many spaces are available for in-person and virtual visits, where in-person and virtual visits occur, the size of the room in which in-person or virtual visits take place, whether the rooms in which the visits are soundproofed, and if so, how, where staff are located during in-person and virtual visits, and what measures are taken to ensure that the in-person and virtual visits are confidential.

**INTERROGATORY NO. 8:**

8

Identify any flyers, postings, or notices about attorney access currently displayed in

the facility, including what information they contain, where they are posted, and what

languages they are in.

**INTERROGATORY NO. 9:**

Identify any websites maintained by Defendants where information regarding attorney

access at Alligator Alcatraz is available, including the URL for these websites.



Dated: January 7, 2026                           Respectfully Submitted,


                                                 */s/ Eunice H. Cho*
Paul R. Chavez (Fla. Bar No. 1021395)   Eunice H. Cho*
Christina LaRocca (Fla. Bar No.         AMERICAN CIVIL LIBERTIES
1025528)                                UNION FOUNDATION
Jennifer Smith (Fla. Bar No. 964514)    915 15th St. N.W., 7th Floor
AMERICANS FOR IMMIGRANT                 Washington, DC 20005
JUSTICE                                 202-548-6616
2200 NW 72nd Ave                        echo@aclu.org
P.O. Box No. 520037
Miami, FL 33152                         Corene T. Kendrick*
786-218-3381                            Kyle Virgien*
pchavez@aijustice.org                   Marisol Dominguez-Ruiz*
clarocca@aijustice.org                  AMERICAN CIVIL LIBERTIES
jsmith@aijustice.org                    UNION FOUNDATION
                                        425 California Street, Suite 700
Amy Godshall, Fla. Bar No. 1049803      San Francisco, CA 94104
Daniel Tilley, Fla. Bar No. 102882      415-343-0770
Samuel Lester, Fla. Bar No. 1043063     ckendrick@aclu.org
AMERICAN CIVIL LIBERTIES                kvirgien@aclu.org
UNION FOUNDATION OF                     mdominguez-ruiz@aclu.org
FLORIDA
4343 West Flagler Street, Suite 400

9

Miami, FL 33134

786-363-2714

agodshall@aclufl.org

dtilley@aclufl.org

slester@aclufl.org

*Counsel for All Plaintiffs and the Proposed
Class*

*\* Admitted pro hac vice*

10

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

SANCTUARY OF THE SOUTH,
BILBAO LAW, LLC, H.C.R.,
D.G.M., and H.P.,

Plaintiffs,                                    Case No. 2:25-cv-00747-SPC-KCD

v.

KRISTI NOEM, SECRETARY DEPARTMENT
OF HOMELAND SECURITY;
U.S. DEPARTMENT OF HOMELAND
SECURITY; TODD LYONS, U.S. IMMIGRATION
AND CUSTOMS ENFORCEMENT;
GARRETT RIPA; RONALD DESANTIS; KEVIN
GUTHRIE; AND FLORIDA DIVISION OF EMERGENCY
MANAGEMENT,

Defendants.
_____/


**PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and any

applicable local rules, and in accordance with the Court's orders in this action,

Plaintiffs H.C.R., D.G.M., and H.P., on behalf of themselves and all others similarly

situated, together with Sanctuary of the South and Bilbao Law, LLC (collectively,

"Plaintiffs"), hereby request that each Defendant produce for inspection and copying

the documents described below at the offices of Plaintiffs' counsel, or at such other

place as the parties may agree, by the date required under the Federal Rules of Civil

Procedure or subsequent Court order, in accordance with the Definitions and Instructions set forth herein.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in these Requests, the following terms are to be interpreted in accordance with these definitions.

1. PLAINTIFFS means H.C.R., D.G.M., and H.P., and all other individuals held now or in the future at the immigration detention facility known as Alligator Alcatraz, as well as Sanctuary of the South and Bilbao Law, LLC.

2. DEFENDANTS means Kristi Noem, the U.S. Department of Homeland Security (DHS), Todd Lyons, U.S. Immigration and Customs Enforcement (ICE), Garrett Ripa, Ronald DeSantis, Kevin Guthrie, and the Florida Division of Emergency Management (FDEM), together with any person or entity acting on their behalf in an official capacity or under their control.

3. CONCERN and CONCERNING mean relating to, referring to, describing, evidencing, constituting, reflecting, memorializing, identifying, embodying, governing, pertaining to, commenting on, discussing, analyzing, considering, containing, consisting of, indicating, supporting, refuting, or connected to.

4. COMMUNICATION means any transmission of information in the form of facts, ideas, inquiries, or otherwise from one person or entity to another by any means, including but not limited to meetings, telephone conversations,

2

correspondence, memoranda, circulars, contracts, agreements, computer transmissions, radio, telegraph, email, instant message, text message, and social media communications (including posts, direct messages, shared pictures, "likes," and comments on Facebook, Instagram, Snapchat, X (formerly Twitter), and all other similar social media), whether sent or received by official or personal devices, accounts, websites, or other means.

5.  DOCUMENT shall have the broadest meaning ascribed to that term in Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001, and includes any parent or child attachment or other documents embedded or linked in any way to a requested document. A draft or non-identical copy is a separate DOCUMENT. DOCUMENT includes, without limitation, writings and any other tangible item containing written, oral, or graphic matter, whether printed, recorded, reproduced by any process, or handwritten, including letters, reports, agreements (including drafts and attached exhibits), inter- or intra-agency communications, electronically transmitted or stored data, intra-mail, email, text messages, instant messages, social media content, correspondence, telegrams, teletype messages, memoranda, summaries, recordings, records of personal conversations, diaries, forecasts, photographs, tape recordings, models, statistical statements, graphics, laboratory or engineering reports and notebooks, charts, plans, drawings, minutes, agendas, lists of persons attending meetings or conferences, reports or summaries of interviews, investigations, or inspections, consultant opinions or reports, brochures, pamphlets,

advertisements, circulars, trade letters, press releases, drafts of any documents and revisions thereof, tabulations, charts, books of account, ledgers, invoices, financial statements, purchase orders, receipts, canceled checks, and similar materials, however denominated. For the avoidance of doubt, DOCUMENTS include all COMMUNICATIONS.

6. PERSON means any natural person or any business, legal, or governmental entity or association. References to any PERSON include that PERSON and any PERSON or entity under that PERSON's control, including present and former components, subsidiaries, departments, offices, predecessors, successors, officers, directors, agents, employees, representatives, attorneys, consultants, contractors, and any aliases, code names, or trade or business names used by any of the foregoing.

7. ALLIGATOR ALCATRAZ means the immigration detention facility located at or near the Dade-Collier Training and Transition Airport in the Florida Everglades, also referred to in pleadings as Alligator Alcatraz, including all tents, trailers, structures, grounds, and associated property used for the detention of immigrants.

8. TRANSFER means any movement of detainees between facilities, whether temporary or permanent, and any related documentation (*e.g.* transfer orders, logs, or other communications).

9. YOU and YOUR refer to the responding DEFENDANT, including any present and former components, subsidiaries, departments, offices, predecessors,

successors, officers, directors, agents, employees, representatives, attorneys, consultants, contractors, and any aliases, code names, or trade or business names used by any of the foregoing.

10. The words "or," "and," "all," "every," "any," "each," "one or more," and "including" are intended to be terms of inclusion, not limitation. "Or" and "and" shall each be construed to mean "and/or" whenever necessary to bring within the scope of a Request any information that might otherwise be construed as outside its scope, and "including" shall be construed to mean "without limitation."

11. Singular/Plural. Reference to the singular includes the plural and reference to the plural includes the singular, as necessary to ensure the broadest possible response.

12. Verb tense. The use of a verb in any tense shall be construed to include all other tenses whenever necessary to bring within the scope of a Request all responses that might otherwise be construed as outside its scope.

## INSTRUCTIONS

1. Responsive DOCUMENTS include those in YOUR possession, custody, or control.

2. Each DOCUMENT or tangible thing produced in response to these Requests shall be produced as it is kept in the ordinary course of business, including all file folders, binders, notebooks, dividers, tabs, or other organizing devices, or shall be organized and labeled to correspond with the specific Requests to which

5

it is responsive. If requested DOCUMENTS are maintained in a file, the file folder is included within the scope of the Request.

3. DOCUMENTS in the form of electronically stored information (ESI) shall be produced (1) in their native format and (2) as single-page .tiff images with extracted text where available and optical character recognition where extracted text is unavailable, together with all reasonably available metadata fields (at a minimum to include: author, recipient, date/time, sent/received, subject line, file name, and any edits/revisions). PLAINTIFFS reserve the right to request additional metadata for particular DOCUMENTS, or production of certain DOCUMENTS in another format, or to supersede this instruction by written agreement regarding ESI.

4. All DOCUMENTS that are physically or electronically attached, embedded, or linked to each other shall be produced in that form. DOCUMENTS that are segregated from others, whether by inclusion in binders, files, sub-files, or by the use of dividers, tabs, or other methods, shall be produced in that form and in the order in which they were maintained.

5. If any copy of any DOCUMENT is not identical to the original or any other copy because of any alteration, marginalia, comment, highlight, notation, or other marking or material, each such non-identical copy shall be produced separately. All copies of all COMMUNICATIONS should be produced, even if they appear identical.

6. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(B), if YOU object to any Request, YOU must state the grounds for each objection with specificity. If an objection pertains only to a portion of a Request, YOU must state the objection only to that portion and respond to the remainder using YOUR best efforts.

7. If, in responding to a Request, YOU contend there is any ambiguity in a Request or definition, YOUR response shall identify the matter deemed ambiguous and describe the construction used in responding.

8. Pursuant to Federal Rule of Civil Procedure 34(b)(2)(C), an objection must state whether any responsive materials are being withheld on the basis of that objection.

9. Whenever YOU withhold a DOCUMENT responsive to any Request:

A. Privilege. If YOU are withholding the DOCUMENT under a claim of privilege, including but not limited to the attorney-client privilege or work-product doctrine, YOU shall provide a privilege log identifying each such DOCUMENT and specifying: (i) the type of DOCUMENT; (ii) its date (or an estimate, clearly labeled as such); (iii) its author(s); (iv) its addressee(s) and, where not apparent, the relationship between authors and addressees; (v) each recipient or person to whom the DOCUMENT or its contents was communicated; (vi) the general subject matter; and (vii) the nature of the claimed privilege, in sufficient detail to permit adjudication of the claim.

B. Other grounds. If YOU are withholding a DOCUMENT for any reason other than privilege or scope, YOU shall provide the same identifying information and state the specific reason for withholding.

10. When a DOCUMENT contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible, with the purportedly privileged material redacted. YOU must clearly indicate the portions as to which privilege is claimed.

11. When a DOCUMENT has been redacted or altered in any fashion, YOU shall identify for each such DOCUMENT the reason for the redaction or alteration (*e.g.*, which privilege), the date of the redaction or alteration, and the person performing it. Any redaction must be clearly visible on the face of the produced DOCUMENT.

12. Any DOCUMENT or thing requested that cannot be produced in full shall be produced to the extent possible, together with a statement specifying the reasons for the inability to produce the remainder.

13. If any responsive DOCUMENT was, but is no longer, in YOUR possession, custody, control, or existence, state whether it (a) is missing or lost, (b) has been destroyed, (c) has been transferred (voluntarily or involuntarily) to others, or (d) has been otherwise disposed of, and in each case explain the circumstances and state the date or approximate date on which YOUR possession, custody, control, or knowledge of the DOCUMENT ceased.

8

14. These Requests are continuing in nature. YOU must promptly supplement or correct YOUR responses and productions as required by Federal Rule of Civil Procedure 26(e), including if YOU later obtain possession, custody, or control of responsive DOCUMENTS or things.

15. Unless a different time period is specified in a particular Request, YOUR responses shall include all responsive DOCUMENTS or things created at any time from June 23, 2025 (the start of construction of Alligator Alcatraz), to the present, and all DOCUMENTS or things CONCERNING events that occurred, in whole or in part, during that period.

16. For every Request in which YOU produce responsive DOCUMENTS or things, YOU shall identify, by reference to YOUR Bates labels, which particular DOCUMENTS are responsive to which Requests.

<b><u>REQUESTS FOR PRODUCTION</u></b>

**REQUEST FOR PRODUCTION NO. 1:**

Documents reflecting any policies or procedures followed at Alligator Alcatraz regarding the facilitation of confidential and timely in-person legal visits, including information provided to staff, information available to the public, and information available to detainees.

**REQUEST FOR PRODUCTION NO. 2:**

Documents reflecting any policies or procedures followed at Alligator Alcatraz regarding the facilitation of virtual legal meetings, including information provided to staff, information available to the public, and information available to detainees.

9

**REQUEST FOR PRODUCTION NO. 3:**

Documents reflecting any policies or procedures followed at Alligator Alcatraz regarding the facilitation of outgoing legal phone calls, including whether legal phone calls are monitored and recorded, and including information provided to staff, information available to the public, and information available to detainees.

**REQUEST FOR PRODUCTION NO. 4:**

Documents reflecting any policies or procedures followed at Alligator Alcatraz regarding the facilitation of confidential and timely legal mail between detainees and attorneys, including information provided to staff, information available to the public, and information available to detainees.

**REQUEST FOR PRODUCTION NO. 5:**

All documents concerning ICE's oversight of attorney access at Alligator Alcatraz, including any applicable ICE detention standards, inspections by ICE, audits, compliance reviews, and/or communications about whether the facility satisfies ICE detention standards about attorney–access and visitation, telephone access, or legal mail requirements.

**REQUEST FOR PRODUCTION NO. 6:**

All documents (*e.g.*, logs, schedules, or records) concerning: (a) requests for in-person legal visits and virtual legal visits; (b) the date and time of each request; (c) date and time of Defendants' response to each request, if any; (d) whether the request was granted, denied, or left unanswered and why/why not; and (e) the date and time of the actual legal visit, if any.

Dated: January 7, 2026

Respectfully Submitted,

*/s/ Eunice H. Cho*

Paul R. Chavez (Fla. Bar No. 1021395)
Christina LaRocca (Fla. Bar No. 1025528)
Jennifer Smith (Fla. Bar No. 964514)
AMERICANS FOR IMMIGRANT JUSTICE
 2200 NW 72nd Ave
P.O. Box No. 520037
Miami, FL 33152
786-218-3381
pchavez@aijustice.org
clarocca@aijustice.org
jsmith@aijustice.org

Amy Godshall, Fla. Bar No. 1049803
Daniel Tilley, Fla. Bar No. 102882
Samuel Lester, Fla. Bar No. 1043063
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA
4343 West Flagler Street, Suite 400
Miami, FL 33134
786-363-2714
agodshall@aclufl.org
dtilley@aclufl.org
slester@aclufl.org

Eunice H. Cho*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th St. N.W., 7th Floor
Washington, DC 20005
202-548-6616
echo@aclu.org

Corene T. Kendrick*
 Kyle Virgien*
Marisol Dominguez-Ruiz*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
415-343-0770
ckendrick@aclu.org
kvirgien@aclu.org
mdominguez-ruiz@aclu.org

*Counsel for All Plaintiffs and the Proposed Class*
* Admitted pro hac vice

11

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

SANCTUARY OF THE SOUTH,
BILBAO LAW, LLC, H.C.R.,
D.G.M., and H.P.,

    Plaintiffs,                                        Case No. 2:25-cv-00747-SPC-KCD

v.

KRISTI NOEM, SECRETARY DEPARTMENT
OF HOMELAND SECURITY;
U.S. DEPARTMENT OF HOMELAND
SECURITY; TODD LYONS, U.S. IMMIGRATION
AND CUSTOMS ENFORCEMENT;
GARRETT RIPA; RONALD DESANTIS; KEVIN
GUTHRIE; AND FLORIDA DIVISION OF EMERGENCY
MANAGEMENT,

    Defendants.

_____/

## PLAINTIFFS' REQUEST FOR INSPECTION

Plaintiffs H.C.R., D.G.M., and H.P., on behalf of themselves and all others similarly situated, together with Sanctuary of the South and Bilbao Law, LLC (collectively, "Plaintiffs"), by undersigned counsel, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, serve this request for entry onto the property for inspection and request that Defendants permit Plaintiffs entry onto the premises at a date and time mutually agreed upon by the Parties, onto the premises of  the immigration detention facility known as "Alligator Alcatraz," located at 54575

Tamiami Trail E, Ochopee, FL 34141. The inspection shall take no longer than six hours.

Plaintiffs request access to inspect, measure, and photograph Alligator Alcatraz. The site visit shall allow for two attorneys for Plaintiffs, one Spanish-English language interpreter, and Plaintiffs' expert, Dr. Dora Schriro, to participate. Dr. Schriro's CV is attached as Exhibit 1 to this Report. Plaintiffs will be permitted to take photographs during the visit. Any concerns regarding the privacy of immigration detainees and/or staff should be adequately addressed by the protective order that will be entered in this case.

The inspection shall include all areas at the facility related to attorney access, including entry areas, attorney-client visitation rooms utilized for in-person and virtual legal visits, housing units of all levels where detainees place outgoing telephone calls, areas where information regarding attorney access protocols are posted, areas where legal mail or legal documents for exchange with detainees are inspected or screened, and areas where requests for legal visits are processed.

Plaintiffs' counsel and their expert will be permitted to speak confidentially with putative class members regarding the issues presented in this litigation, but those individuals will not be compelled to speak with counsel. Plaintiffs' counsel and their expert will be permitted to speak with Facility staff in the presence of Defendants' counsel.

Dr. Schriro has extensive professional experience engaging with Immigration and Customs Enforcement (ICE) detention facilities and standards and with the

administration of correctional facilities more generally. She served as Special Advisor

to Department of Homeland Secretary (DHS) Janet Napolitano and was the founding

Director of the ICE Office of Detention Policy and Planning. Dr. Schriro also

previously served as Director of the Missouri and Arizona Departments of

Corrections, as well as Commissioner of the New York City Department of

Correction. She was the Commissioner of the Connecticut Department of Emergency

Services and Public Protection, a state enforcement agency that includes homeland

security. Dr. Schriro has published many works relating to ICE detention.[1] And as a

consultant, Dr. Schriro regularly conducts inspections of detention and carceral

facilities, including on behalf of the California Department of Justice.

Plaintiffs further request that Dr. Schriro be permitted to have brief, confidential

conversations with people detained in the facility during the inspection as to the

conditions of their confinement. Such conversations are a standard part of expert

correctional inspections. *See, e.g., Braggs v. Dunn*, No. 2:14cv601-MHT 2017 WL

659169, at *6 (M.D. Ala. Feb. 17, 2017) (permitting plaintiffs' expert to conduct

---

[1] These include including ICE Detention Standards: A Guide For Family & Friends of Individuals in ICE Detention, American Bar Association (ABA), Commission on Immigration (March 2023), ICE Detention Standards: Immigration Detention Facilities' Responsibilities and Detained Individuals' Rights: A Guide for Practitioners, ABA Commission on Immigration (December 9, 2022), and On the Other Side of the Looking Glass: COVID-19 Care in Immigration Detention, MDPI, Soc. Sci. 2021, 10(10), Access to Counsel in Immigration Detention in the Time of COVID-19, A Guide to ICE PBNDS 2011 Detention Standards for Dedicated Facilities with ICE COVID-19 Modifications, ABA Commission on Immigration (2019), and Access to Counsel in Immigration Detention in the Time of COVID-19, A Guide to ICE NDS 2019 Detention Standards for Nondedicated Facilities with ICE COVID-19 Modifications, ABA Commission on Immigration (2019). See Ex. 1.

interviews with prisoners during tours of prisons in state correctional medical care suit); *Garcia v. Wolf*, No. 1:20-cv-00821 (LMB/JFA), 2020 WL 4815048, at *2 (E.D. Va. Aug. 18 2020) (permitting expert witnesses to speak with ICE detainees during facility inspection as part of COVID litigation against ICE detention facility).

Dated: January 7, 2026                      Respectfully Submitted,

                                            /s/ Eunice H. Cho
Paul R. Chavez (Fla. Bar No. 1021395)       Eunice H. Cho*
Christina LaRocca (Fla. Bar No.             AMERICAN CIVIL LIBERTIES
1025528)                                    UNION FOUNDATION
Jennifer Smith (Fla. Bar No. 964514)        915 15th St. N.W., 7th Floor
AMERICANS FOR IMMIGRANT                     Washington, DC 20005
JUSTICE                                     202-548-6616
2200 NW 72nd Ave                            echo@aclu.org
P.O. Box No. 520037
Miami, FL 33152
786-218-3381                                Corene T. Kendrick*
pchavez@aijustice.org                       Kyle Virgien*
clarocca@aijustice.org                      Marisol Dominguez-Ruiz*
jsmith@aijustice.org                        AMERICAN CIVIL LIBERTIES
                                            UNION FOUNDATION
                                            425 California Street, Suite 700
Amy Godshall, Fla. Bar No. 1049803          San Francisco, CA 94104
Daniel Tilley, Fla. Bar No. 102882          415-343-0770
Samuel Lester, Fla. Bar No. 1043063         ckendrick@aclu.org
AMERICAN CIVIL LIBERTIES                     kvirgien@aclu.org
UNION FOUNDATION OF                         mdominguez-ruiz@aclu.org
FLORIDA
4343 West Flagler Street, Suite 400         *Counsel for All Plaintiffs and the Proposed*
Miami, FL 33134                             *Class*
786-363-2714                                * Admitted pro hac vice
agodshall@aclufl.org
dtilley@aclufl.org

slester@aclufl.org

# EXHIBIT 1

C.V. of Plaintiffs' Expert Dora Schriro

# DORA B. SCHRIRO, Ed.D.  J.D.

EXECUTIVE EXPERIENCE

*State of Connecticut,* Middletown CT (2014–2018)

**Commissioner**, Department of Emergency Services & Public Protection (2014–2018)

**CT Homeland Security Advisor** (2016–2018), DHS clearance, Top Secret, appointed by Gov. Dannel Malloy

- Responsible for CT State Police, Emergency Management & Homeland Security, Scientific Services, Fire Prevention & Control, Police Officer Standards & Training, Statewide Telecommunications
- FY2018 operating budget, $185M; federal grants, $348M; bond funding, $79M; 1817 employees
- Public Safety & Service, Homeland Security, and Emergency Response, Recovery & Resiliency
- Accomplishments: A Comprehensive Procedural Justice Initiative with body-worn cameras for state police on patrol, a civilian complaint process, 21st century curricula for state & local police, annual reports of uses of force, traffic stops & police pursuits, an investigative protocol for officer-involved shootings, and an ICE-interface protocol; Drug Intervention & Enforcement, equipping all troopers and training first responders to administer naloxone, and convening a dark-web opioid taskforce; and Other Harm Reduction Efforts including a statewide cybersecurity investigative unit and comprehensive gun control

*City of New York,* New York, New York (2009–2014)

**Commissioner**, New York City Department of Correction, appointed by Mayor Michael Bloomberg

- Responsible for adult detention, prisoner processing, and operation of criminal court pens, an average of 12,000 inmates daily and 100,000 pretrial and city-sentenced inmate admissions annually
- FY2014 operating budget, $1.065B, capital budget, $691.9M; 10,440 employees
- Focus: Special Populations; Intake, Classification and Discharge Planning; Staff Accountability; Alternatives to Disciplinary Segregation; Alternatives to Detention
- Accomplishments: 1st U.S. Social Impact Bond funded program, adolescent pre-release initiative; Justice Reinvestment funded pre-release preparation for adults; pre-trial & post-plea diversion for the mentally ill; comprehensive reform of disciplinary segregation with clinical alternatives for special populations; centralized intake with risk & needs classification, gang identification, and discharge planning

*US Department of Homeland Security*, Washington DC (2009–2009)

**Senior Advisor to Secretary on ICE Detention and Removal**, appointed by DHS Sec. Janet Napolitano

**Director, ICE Office of Detention Policy and Planning,** appointed by ICE Asst. Sec. John Morton

- Focus: Design a civil, civil detention system meeting all its health and safety needs and legal requirements
- Authored, *2009 Report on ICE Detention Policies and Practices: A Recommended Course of Action for Systems Reform*, DHS' template to transform immigration detention and alternatives to detention
- Opened the Office of Detention Oversight and within the first 100 days, deployed detention experts to the field, reassigned facility inspections to occur outside of ERO, brought online the detainee locator and death notification systems, undertook review of IHSC, detention standards, and risk assessment, and reduced family detention to under 100 beds

*State of Arizona*, Phoenix, Arizona (2003–2009)

**Department Director**, Arizona Department of Corrections, appointed by Gov. Janet Napolitano

- Responsible for adult corrections and community supervision including 39,000 inmates and 7,200 parolees daily and 55,000 felons annually (21,000 admissions/11,500 case openings)
- FY2009 operating budget, $1.23B; 9,750 employees
- Focus: Systems reform, re-entry, victim services, strategic planning, privatization oversight
- Winner, 2008 Innovations in American Government, and its first prison-based reform awards recipient

Dora B. Schriro, Ed.D. J.D.
Page 2

*City of St. Louis*, St. Louis, Missouri (2001–2003)
**Commissioner of Corrections**, St. Louis City Division of Corrections, appointed by Mayor Francis Slay
- Responsible for adult detention, prisoner processing, and city probation and parole including 1,500 jail inmates and 2,000 offenders on supervision daily (9,000 admissions/63,000 bookings annually)
- FY2003 operating budget, $68M; 615 employees
- Focus: Population management, alternative sentencing initiatives, staff development
- Opened and operated the city's first combined police prisoner processing and detention center

*State of Missouri*, Jefferson City, Missouri (1993–2001)
**Department Director**, Missouri Department of Corrections, appointed by Gov. Mel Carnahan
- Responsible for adult corrections and probation and parole services including 28,000 prisoners and 65,000 offenders on community supervision daily, 35,000 admissions/72,000 case openings annually
- FY2002 operating budget, $500M; 11,000 employees
- Focus: Systems and sentencing reform, litigation reduction, restorative justice, capital construction
- Winner, Council of State Governments Innovations award program, and Innovations in American Government 1997 Finalist and 1998, 1999 and 2000 Semi-Finalist

*City of St. Louis*, St. Louis Missouri (1989–1993)
**Correctional Superintendent**, St. Louis City Division of Correction, appointed by Mayor Vince Schoemehl
- Responsible for 600 pre-trial and city sentenced inmates, 4,000 admissions annually
- FY1993 operating budget, $26M; 210 employees
- Focus: Court oversight, overcrowding, certified juveniles, community relations

*City of New York*, New York, New York (1984–1989)
**Assistant Commissioner**, New York City Department of Correction, appointed by Mayor Ed Koch
- Responsible for design and delivery of inmate programs services, programs development, grants
- Services provided to 100,000 pre-trial and city sentenced inmates annually by 200 employees
- Focus: Public-funded and accredited education, school-aged inmates; contracts management
**Assistant Deputy Director**, Office of the Mayor, Coordinator of Criminal Justice
- Grants administration, federal and state funded systems reforms, $189M annually
- Focus: Alternatives to detention, intermediate sanctions, policy analysis, applied research

## CONSULTING SERVICES

Dora B. Schriro Consulting Services, LLC (est. 2013), Expert, Corrections and Immigration innovation, evaluation, and advocacy. Clients include the California Department of Justice, Sheriff's Department, Hampton County, Massachusetts, Disabilities Rights California, St. Louis University School of Law Clinic, American Civil Liberties Union, Southern Poverty Law Center, Human Rights First, the Promise of Justice Initiative, Transgender Law Center, and Arch City Defenders.

## EDUCATION

St. Louis University, St. Louis, Missouri, Juris Doctorate, School of Law (2002)
Columbia University, New York, New York, Doctor of Education, Teachers College (1984)
University of Massachusetts at Boston, Massachusetts, Master of Education (1974)
Northeastern University, Boston, Massachusetts, Bachelor of Arts cum laude (1972)

Dora B. Schriro, Ed.D. J.D.
Page 3

MANAGERIAL PROGRAMS

Council of State Governments, Toll Fellowship (2018)
Harvard University, JFK School of Government, Innovations in Governance (2005)
Harvard University, JFK School of Government, Strategic Public Sector Negotiations (1996)
Harvard University, JFK School of Government, Senior Executives in State and Local Government (1992)

HONORS AND AWARDS, INNOVATIONS

Innovations in American Government, 2008 Winner, Getting Ready: Keeping Communities Safe
Innovations in American Government, 2000 Semi-finalist, Correcting Corrections
Innovations in American Government, 1999 Semi-finalist, Constituent Services
Innovations in American Government, 1998 Semi-finalist, Pre-Promotional Training
Innovations in American Government, 1997 Finalist, Constituent Services
Council of State Governments, 1998 Innovations Award Winner, Waste Tire to Energy
Council of State Governments, 1997 Innovations Award Regional Finalist, Pre-Promotional Training
Council of State Governments, 1996 Innovations Award Finalist, Constituent Services

OTHER HONORS AND AWARDS

Who's Who in America 2025
U.S. Department of Justice, Office for Victims of Crime, Allied Professional Award, 2012
Florida Immigrant Advocacy Center, American Justice Award, 2011
Hofstra University (Hempstead, New York) Presidential Medal, 2010
National Governors Association, Distinguished Service to State Government Award, 2006
Arizona Parents of Murdered Children, Filling Empty Shoes, 2006 Honoree
Farmingdale Public Schools (Farmingdale, New York), Wall of Fame, 2001 Inductee
St. Louis Forum, Trailblazer Award, 2000
Association of Correctional Administrators, Michael Francke Award for Outstanding Leadership, 1999
Jefferson City (Missouri) Ten Most Influential Women, 1998
Missouri Governor Award for Quality and Productivity, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000
Missouri Governor Torch of Excellence Gold Award, 1999
Missouri Governor Torch of Excellence Award, 1997
International Association of Correctional Training Personnel Award, Pre-Promotional Training, 1996
Women's Self-Help Center, Twenty Distinguished Women, 1996
St. Louis (Missouri) YWCA Special Leadership Award for a Government Official, 1995
Jefferson City (Missouri) News Tribune Statesman of the Month, June 1995

PUBLICATIONS, IMMIGRATION DETENTION REFORM

*ICE Detention Standards: A Guide For Family & Friends of Individuals in ICE Detention*, ABA, Commission on Immigration (March 2023)
*ICE Detention Standards: Immigration Detention Facilities' Responsibilities and Detained Individuals' Rights: A Guide for Practitioners*, ABA Commission on Immigration (December 9, 2022)
*Access to Counsel in Immigration Detention in the Time of COVID-19, A Guide to ICE PBNDS 2011 Detention Standards for Dedicated Facilities with ICE COVID-19 Modifications*, ABA Commission on Immigration (2019).
*Access to Counsel in Immigration Detention in the Time of COVID-19, A Guide to ICE NDS 2019 Detention Standards for Nondedicated Facilities with ICE COVID-19 Modifications*, ABA Commission on Immigration (2019).
*On the Other Side of the Looking Glass: COVID-19 Care in Immigration Detention*, MDPI, Soc. Sci. (2021)10(10)
*Access to Counsel in Immigration Detention in the Time of COVID-19*, ABA Commission on Immigration (2020)
*Weeping in the Playtime of Others: The Obama Administration's Reform of ICE Family Detention Practices,* in

Journal on Migration and Human Security, The Law that Begot the Modern U.S. immigration Enforcement System: IIRIRA 20 Years Later (December 2018)

*Women and Children First: An Inside Look at the Impediments to Reforming Family Detention in the U.S.,* in Challenging Immigration Detention, ed. by Flynn and Flynn. Edward Elgar Publishing (September 2017)

*Afterword, Intimate Economies, Anomie and Moral Ambiguity,* in Intimate Economies of Immigration Detention: Critical Perspectives, ed. by Conlon and Hiemstra. Routledge Publishers (2016)

*Improving Conditions of Confinement for Immigrant Detainees: Guideposts toward a Civil System of Civil Detention* in The New Deportation Delirium, ed. by Kanstroom and Lykes. NYU Press (2015)

*Family Immigration Detention: The Past Cannot be Prologue,* ABA Commission on Immigration (2015)

*Envisioning a Civil System of Civil Detention: Our Opportunity, Our Challenge* (Foreword), in Outside Justice, ed. by Brotherton, Stageman and Leyro. Springer Press (2013)

Improving Conditions of Confinement for Criminal Inmates and Immigrant Detainees, American Criminal Law Review, Georgetown University Law Center (Fall 2010)

The 2009 Report on ICE Detention Policies and Practices: A Recommended Course of Action for Systems Reform, U.S. Department of Homeland Security (October 2009)

Rethinking Civil Detention and Supervision, Arizona Attorney (July–August 2009)

## PUBLICATIONS, CORRECTIONS REFORM

*Smart and Safe: Making the Most of Adolescents' Time in Detention, the Physical Plant, Our Workforce, and the "What Works' Literature,* in The State of Criminal Justice, American Bar Association (2013)

*Corrections: The Justice-Involved Mentally Ill, A Practitioner's Perspective,* in The State of Criminal Justice, American Bar Association (2012)

*Good Science, Good Sense: Making Meaningful Change Happen – A Practitioner's Perspective*, Criminology & Public Policy, Vol. 11, No. 1, Special Issue (February 2012)

*Is Good Time a Good Idea?* Federal Sentencing Reporter, Vol. 21, No. 3 (February 2009)

*Correcting Corrections: The Arizona Plan: Creating Conditions for Positive Change in Corrections*, Confronting Confinement: A Report of the Commission on Safety and Abuse in American Prisons (2006)

*Missouri's Parallel Universe: Blueprint for Effective Prison Management*, Corrections Today (April 2001)

*Correcting Corrections: Missouri's Parallel Universe*, Papers from the Executive Sessions on Sentencing and Corrections, U.S. Department of Justice, Office of Justice Programs (May 2000)

*Avoiding Inmate Litigation: The 'Show-Me' State Shows How*, Sheriff's Magazine, (March–April 1999)

*Best Practices: Excellence in Corrections*, American Correctional Association (August 1998)

*Reducing Inmate Litigation*, Corrections Today (August 1998)

Corrections Management Quarterly, Issue Editor, Aspen Publications (1997)

Currents, Leadership St. Louis, Danforth Foundation (1992)

*What Makes Correctional Education Educational*, Journal of Correctional Education (September 1986)

Safe Schools, Sound Schools, ERIC Clearinghouse on Urban Education (January 1985)

*What Works with Serious Juvenile Offenders: US Experience*, Juvenile Delinquency in Australia (1984)

What Makes Correctional Education Educational: Ethnography of an Instructionally Effective School, University Microfilm (1983)

## STANDARDS, SENTENCING AND RELATED CIVIL-CRIMINAL JUSTICE REFORM ACTIVITIES

Women's Refugee Commission, Commissioner (2012–2024)

American Bar Association, Commission on Immigration, Special Advisor (2019–2024)

American Bar Association, Commission on Immigration, Advisory Board Member (2017–2019)

American Bar Association, Commission on Immigration, Standards for the Custody, Placement and Care; Legal Representation, and Adjudication of Unaccompanied Alien Children in the United States (2018)
U.S. Dept. of Homeland Security, DHS Family Residential Ctr. Advisory Committee, member (2015–2016)
American Bar Association, Commission on Immigration, Commissioner (2014–2016)
American Bar Association, Commission on Immigration, Co-chair, Standing Subcommittee on Punitive Segregation, (2012–2014)
American Bar Association, Commission on Immigration, Civil Detention Standards Task Force (2011–2012) American Bar Association, Criminal Justice Standards Subcommittee, ACA representative (2005–2008)  Arizona State University School of Law, Sentencing Policy Seminar (2004–2005)
Arizona Attorney General Sentencing Advisory Committee (2004–2008)
St. Louis University School of Law, Instructor, Sentencing Policy Seminar (2000–2002)
Missouri Sentencing Advisory Commission, Vice Chair (1994–2001)
U.S. Department of Justice Executive Sessions on Sentencing and Corrections, in conjunction with Harvard University JFK School of Government and University of Minnesota Law School (1997–2000)
Partnership for Criminal Justice Workshop, Institute on Criminal Justice, University of Minnesota Law School, State Partner (1997–2000)
State Sentencing and Corrections Program, Vera Institute of Justice, National Associate (1999–2002)
U.S. Dept. of Justice, Bureau of Justice Assist., Discretionary Grant Program, Peer Reviewer (1994–2002)

## PRE-DOCTORAL EMPLOYMENT, LECTURING AND RELATED EXPERIENCE Employment

- Executive Director, Planned Parenthood of Bergen County, Hackensack, New Jersey (1983–1984)
- Director, Correctional Education Consortium, Long Island City, New York (1982–1983)
- Supervising Social Worker, Franklin Public Schools, Franklin, Massachusetts (1978–1981)
- Director, Adult and Continuing Education, Franklin Public Schools, Franklin, MA (1978–1981)
- Director, Staff Development, Wrentham State School, Wrentham, Massachusetts (1977–1978)
- Program Administrator, Medfield-Norfolk Prison Project, Medfield, Massachusetts (1974–1976)

Academic Experience
- Instructor, Arizona State University School of Law, Corrections Law Seminar (2005–2008)
- Instructor, St. Louis University School of Law, Sentencing Policy (2000–2002)
- Senior Policy Fellow, Public Policy Research Center, University of Missouri-St. Louis (2001)
- Visiting Lecturer, Strategic Planning, National Institute of Corrections (1998–2002)
- Adjunct Professor, Criminal Justice, University of Missouri-St. Louis (1990–1998)
- Adjunct Professor, Criminal Justice, Long Island University at CW Post (1986–1988)
- Instructor, Innovation, Open Center of New York City (1987)
- Teaching Assistant, Field Research Methodology, Administrative Intern to the School Superintendent, Franklin Public Schools, Franklin, Massachusetts (1979)
- Visiting Lecturer, Special Education, Framingham State College, Framingham, Massachusetts (1979)
- Adjunct Professor, Psychology, Fischer Junior College, Boston, Massachusetts (1978)

Related Activities
- Institutional Research Board, St. Louis University (2002–2003)
- Institutional Research Board, University of Missouri-St. Louis (2001–2003)

Dora B. Schriro, Ed.D. J.D.
Page 6

**Contact information:**

611 King Avenue
City Island, NY 10464
917-710-7029
dora.schriro@gmail.com

Professional References available upon request