# EXHIBIT 1

DECLARATION OF F. ELIZABETH VALENTIN

I, F. Elizabeth Valentin, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746
that the following is true and correct.

1. I make this declaration based on my own personal knowledge and if called to testify I
   could and would do so competently and truthfully to these matters.

2. I am an attorney in good standing and a managing attorney at Disability Rights Florida. I
   currently represent an individual detained at South Florida Soft Sided Facility South
   ("SFSSFS")—also known as "Alligator Alcatraz."

2. On April 1, 2026, I went to SFSSFS to meet with my client and give him documents to
   sign. I did not preschedule the visit. I was aware of this Court's March 27, 2026 Order,
   stating, "the facility has provided unscheduled legal visits since late November 2025 and
   continues to do so when an attorney arrives at the facility unannounced and requests a
   visit with a detainee client." Dkt. No. 243 at 41.

3. I arrived at SFSSFS at around 1:00 p.m. When I arrived, the security guard at the
   entrance gate asked if I had scheduled an appointment. I advised that I had not, and he
   informed me that I had to schedule the legal visit through their scheduling department to
   see my client. The guard then advised me that I might be able to see my client that
   afternoon if slots were available. I briefly explained that the Court's March 27, 2026
   Order states that attorneys are allowed to make unscheduled visits, and I offered the
   security guard a physical copy of the Order. He declined to accept it.

4. The guard then had me scan a QR code that directed me to fill out an electronic copy of
   the "South Detention Facility Legal Counsel Visitation Request Form." Because internet
   service was limited in the area, I was unable to submit the form from my phone and had
   to call a colleague to submit the form for me. The form included directions to "Attach
   copies of legal documents you intend to bring for approval." I did not attach any legal
   documents because those documents are attorney work product and contain confidential
   information.

5. At 2:27 p.m., I received an email response stating, "Your visit is scheduled for 2:30 pm."
   I was then escorted to the legal interview tent, which was about a 20-minute drive from
   the facility's front entrance.

6. The legal interview tent had some soundproofing glued to the sides. Some of the
   soundproofing was falling off.

7. I was able to meet with my client around 3:00 p.m. His hands and feet remained shackled
   throughout the meeting. Approximately every 10 to 15 minutes, guards entered the
   interview tent room or peered through the clear door, forcing us to pause our meeting
   each time they entered.

8. During the meeting, my client advised me that he had not heard any information about the Court's order from either staff or other detainees. My client also reported that he had not seen any posters or notices anywhere in the facility regarding access to attorneys or unmonitored, confidential legal phone calls.

9. My client further indicated that it was his understanding that he could not receive or send out mail, including legal mail, from the facility.

Executed on the 10th day of April, 2026, in Miami, Florida.

_____
F. Elizabeth Valentin, Esq.
FL Bar #: 1066079