# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

|  |  |
|---|---|
| H.C.R., *et al.,* | |
| *Plaintiffs*, | |
| v. | Case No. 2:25-cv-00747-SPC-NPM |
| MARKWAYNE MULLIN, *et al.,* | |
| *Defendants*. | |

## PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' NOTICE AND SUGGESTION OF MOOTNESS AND MOTION TO STAY ALL DEADLINES PENDING DETERMINATION OF MOOTNESS

Over the past two months, counsel for State and Federal Defendants have ignored or refused to answer numerous inquiries from Plaintiffs' counsel about whether Alligator Alcatraz (the "Facility") was closing. *See generally* Decl. Amy Godshall ("Godshall Dec."). State and Federal Defendants have, to date, failed to provide Plaintiffs with any concrete information about what is happening with the Facility, besides pointing to publicly reported, contradictory statements from various officials. Then, without meaningfully conferring with Plaintiffs about the status or future plans for the Facility—which will determine the future of this case—State Defendants came to this Court asking it to stay all deadlines, claiming, without sufficient evidence, that this case is moot.

Plaintiffs, like State Defendants, do not wish to waste judicial resources by continuing to litigate a moot case. But Plaintiffs and the Court need actual evidence that the Facility is *permanently* closed before this Court can determine whether the claims of the detainee class—which includes all *future* detainees at the Facility—have become moot. If Defendants intend to reopen this facility in the near future, then there remains a live case and controversy.

The party asserting mootness bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation modified). For the reasons explained below, State Defendants have not yet met their heavy burden of establishing that this case is moot.

"It has long been the rule that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *Nat'l Advert. Co. v. City of Mia.*, 402 F.3d 1329, 1333 (11th Cir. 2005) (citation modified). Governmental actors enjoy a "rebuttable presumption" that "a government policy that has been *unambiguously terminated* will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1266 (11th Cir. 2010) (citation modified) (emphasis in original). A governmental actor has met its heavy burden of showing that its policy has been "unambiguously terminated" where, for instance, "a government defendant has formally rescinded a challenged statute, ordinance, rule, or policy." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1268, 1271 (11th Cir. 2020)

2

(citation modified).

Here, the rebuttable presumption ordinarily afforded to governmental actors does not attach because Defendants have not first demonstrated that the offending policy has been "unambiguously terminated." *Id.* at 1271 (citation modified). Neither State nor Federal Defendants have provided any official confirmation that the Facility is permanently closed. There is no sworn testimony or affidavit from a state or federal official attesting to permanent closure; instead, State Defendants point to press statements that are inconclusive at best. They chiefly rely on a press conference in which Defendant DeSantis remarked that the chances of the Facility reopening are "negligible."[1] State Defs.' Notice and Suggestion of Mootness and Motion to Stay all Deadlines Pending Determination of Mootness at 2, Doc. 280. But "negligible" is not zero; indeed, Defendant DeSantis conceded during that press conference that the State opened this Facility because the federal government needed more bed space (which could happen again at any time), and that if Federal Defendants had sent a thousand detainees to the Facility the day before he announced closure, State Defendants "obviously would have processed that and handled it." *DeSantis Press Conference*, at 5:15, 33:30. Openly admitting during a press conference that there is a chance, even if small, of resuming challenged conduct does not meet the "unambiguously terminated" standard of the Eleventh Circuit. *See Harrell*, 608 F.3d at 1266; *Keohane*, 952 F.3d at

---

[1] *Florida Gov. DeSantis and Tom Homan News Conference on "Alligator Alcatraz" Closure,* CSPAN (Jun. 25, 2026), at 28:48, https://www.c-span.org/program/news-conference/florida-gov-desantis-and-tom-homan-news-conference-on-alligator-alcatraz-closur/681757 ("*DeSantis Press Conference*").

1268; *see also O'Laughlin v. Palm Beach Cnty.*, No. 19-80701-CIV, 2023 WL 11823052, at *4 (S.D. Fla. June 9, 2023) ("Importantly, voluntary cessation is unlikely to moot a controversy if the government actor provides no assurance that it will not reinstate the challenged practice or policy.").

What is more, Defendant DeSantis highlighted in that same press conference how it took State Defendants only ten days to construct the Facility.[2] Thus, the State could quickly resurrect it at any time, especially as the State has not returned control of the property to Miami-Dade County.[3] Further, earlier reports showed that State Defendants had deferred to Federal Defendants about whether the Facility would continue operating.[4] And finally, the public statements concerning the closure of the Facility have provided conflicting rationales, such as official statements claiming that the Facility was temporarily emptied for hurricane season.[5] In light of this record,

---

[2] *DeSantis Press Conference*, at 6:40.

[3] *See* Churchill Ndonwie and Alex Harris, *Alligator Alcatraz is no more. Tents, cars, signs disappear from airport*, MIAMI HERALD, (July 13, 2026), https://www.miamiherald.com/news/politics-government/article316491685.html [https://perma.cc/2KWA-3ZK4] ("Miami-Dade mayor's office told the Herald on Monday that the state had not returned control of the property to the county.").

[4] *See, e.g.*, Kate Payne, *From 'low-cost' to $1 million a day: questions remain about 'Alligator Alcatraz' funding*, FLORIDA TRIB., (May 15, 2026), https://floridatrib.org/2026/05/15/from-low-cost-to-1-million-a-day-questions-remain-about-alligator-alcatraz-funding/ [https://perma.cc/P9RB-FAVB]; Ryan Mackey, *'Alligator Alcatraz' to stay open amid federal funding process, state official says*, WPLG LOCAL 10, (May 15, 2026), https://www.local10.com/news/local/2026/05/15/alligator-alcatraz-to-stay-open-amid-federal-funding-process-state-official-says/ [https://perma.cc/2LWB-3J47] ("Local 10 spoke with Kevin Guthrie, executive director of the Florida Division of Emergency Management, who said any decision to close the facility would come from the U.S. Department of Homeland Security — and no such directive has been issued.").

[5] Gisela Salomon, *All detainees from immigration facility 'Alligator Alcatraz' have been transferred for hurricane season, DHS says*, ASSOCIATED PRESS (June 19, 2026), https://www.news4jax.com/news/national/2026/06/17/all-detainees-from-immigration-facility-alligator-alcatraz-have-been-transferred-dhs-says/ [ https://perma.cc/R2L8-S874].

absent formal assurances from State and Federal Defendants that the closure is permanent, there is insufficient evidence for this Court to conclude that the prohibited conduct will not recur.

The lack of formal assurances is all the more troubling here, in light of State Defendants' behavior and changing representations throughout this litigation. This Court has remarked how this case has continuously presented a "moving target" in which Plaintiffs have been "blindsided" with changing and conflicting evidence regarding the Facility and its policies and practices. Opinion and Order at 5, 9, 20, Doc. 243. For instance, at the evidentiary hearing, State Defendants' witnesses stunned Plaintiffs and this Court with testimony "about the existence of an unscheduled legal visitation policy" that was "not published anywhere." *Id.* at 41. Even after this Court entered the preliminary injunction, warning that it would "hold Defendants accountable for [these] representations," *id.* at 43, security personnel at the Facility continued to inform attorneys that they could not make unscheduled legal visits, *see* Pls.' Notice of Non-Compliance at 2, Doc. 248.

Against this backdrop, State Defendants cannot meet their heavy burden of showing that "the government's decision to terminate the challenged conduct was 'unambiguous.'" *Keohane*, 952 F.3d at 1268. Nothing in the record "yields absolute certainty that the challenged conduct has *permanently* ceased." *Harrell*, 608 F.3d at 1267 (emphasis added). "[N]or, when one considers the 'timing and content' of the [State]'s decision," does the record "support[ ] the conclusion that the [State]'s policy was 'unambiguously terminated,' as required to invoke the governmental actor

5

presumption." *Id.* In finding a lack of mootness in *Harrell*, the Eleventh Circuit found it compelling that the defendant "fail[ed] to disclose any basis for its decision" to end the challenged policy, which it did only "after this litigation had commenced[.]" *Id.* Here, not only have Defendants failed to provide clarity about the future plans for the Facility, let alone the rationale behind their decision concerning the future of the Facility, but they only began hinting at closure after this Court entered the preliminary injunction.[6] Thus, "the circumstances here raise a substantial possibility that the defendant has changed course simply to deprive the court of jurisdiction, which itself prevents [the Court] from finding the controversy moot." *Id.*[7]

If this Court dismisses this case as moot, Defendants may reopen the Facility and resume violating Plaintiffs' constitutional rights, unbound by the preliminary injunction. The voluntary cessation doctrine was specifically designed to prevent such a scenario. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the

---

[6] *See* Patricia Mazzei & Hamed Aleaziz*, Federal and State Officials Discuss Closing Florida's 'Alligator Alcatraz,'* N.Y. TIMES (May 7, 2026), https://www.nytimes.com/2026/05/07/us/florida-alligator-alcatraz-possible-closure.html [https://perma.cc/FPE6-N952].

[7] To further underscore the absence of precedent supporting mootness in this case, Federal Defendants rely on a case, *Elston v. Talladega County Board of Education*, 997 F.2d 1394 (11th Cir. 1993), that did not even address the voluntary cessation doctrine and barely mentioned mootness at all. The only discussion of mootness in that case was a passing reference to one of the plaintiffs' requests for injunctive relief—to remedy overcrowding at a specific school—that became moot after *the plaintiffs* abandoned it on appeal. *See id.* at 1424 ("In acknowledgement of these changed circumstances, the only relief plaintiffs now request is an injunction regarding 1) the feeder patterns for the Training School and 2) zone-jumping. Thus, their challenge to the reassignment of Hannah Mallory students is now moot."). *Elston*, therefore, has no relevance to this case.

case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."). For this reason, Plaintiffs maintain that only sworn assurances on the record by Defendants or their agents confirming the Facility's permanent closure, coupled with a commitment to be bound by the preliminary injunction if the Facility reopens, would potentially suffice to moot this case.[8]

## CONCLUSION

Defendants have not met their heavy burden to show that the challenged conduct has been "unambiguously terminated" such that this case is moot. Therefore, this Court should not stay all deadlines. Nonetheless, Plaintiffs are willing to agree that this case is moot, and that all deadlines should be stayed, if Defendants provide sworn testimony from a governmental official with personal knowledge formally

---

[8] Earlier in this case, Judge Rodolfo A. Ruiz determined that Plaintiffs' Fifth Amendment due process claim was moot only after Federal Defendants formally identified Krome as the immigration court with jurisdiction over the Facility and committed on the record to abide by that decision. *C.M. v. Noem*, 796 F. Supp. 3d 1198, 1221–22 (S.D. Fla. 2025) (noting that "the Federal Defendants indicated *on the record* at the preliminary injunction hearing [that] the EOIR Defendants *do not intend to reverse* their determination that Krome has jurisdiction over Alligator Alcatraz" (emphasis added)). Moreover, the official nature of that policy change was reflected on the Federal Defendants' Executive Office for Immigration Review ("EOIR") website, which listed Krome as the court with jurisdiction over the Facility. *See* Federal Defs.' Notice of Material Development at 1, Doc. 81-1. Here, by contrast, State Defendants have made no representations on the record that the Facility is permanently closed, and there has been no official posting about the Facility's closure on either the State or Federal Defendants' websites. Rather, information for the Facility remains posted on both websites. *See Attorney-Client Communication Information*, FLORIDADISASTER.ORG, https://www.floridadisaster.org/dem/Executive-directors-office/legal/legal-facility-visitation-request-guide/ [https://perma.cc/PP3F-NLH2] (last visited July 13, 2026); *Florida Soft Sided Facility South*, U.S. IMMIGR. & CUSTOMS ENF'T, https://www.ice.gov/detain/detention-facilities/florida-soft-sided-facility-south [https://perma.cc/V6TE-DHPX] (last visited July 13, 2026). Crucially, Defendants continue to litigate their appeal of the preliminary injunction. *See Jager v. Douglas Cnty. Sch. Dist.*, 862 F.2d 824, 833–34 (11th Cir. 1989) (holding that a case was not moot where "the defendants never promised not to resume the prior practice" and "continue[d] to press on appeal that the voluntarily ceased conduct should be declared constitutional").

confirming the Facility's permanent closure. Further, given the record in this case as outlined above, Plaintiffs assert that any order approving a stipulation of dismissal should (a) provide for this Court's continuing jurisdiction for a period of three (3) years to enforce the terms of the preliminary injunction in the event the Facility reopens; and (b) affirm that the preliminary injunction materially altered the parties' legal relationship and secured substantial relief for the Plaintiff class.[9]

---

[9] Because this case involved a provisionally certified class, any stipulation of dismissal would require court approval. *See* Fed. R. Civ. P. 23(e); *Love v. Wal-Mart Stores, Inc.*, 865 F.3d 1322, 1325 (11th Cir. 2017). Therefore, this Court, in its order of dismissal, could retain jurisdiction to enforce the terms of the preliminary injunction. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381 (1994) (holding that a court may retain ancillary jurisdiction to enforce a settlement agreement as a provision of an order of dismissal); *Anago Franchising, Inc. v. Shaz*, LLC, 677 F.3d 1272, 1280 (11th Cir. 2012) (holding that for a district court to retain post-dismissal jurisdiction to enforce a settlement agreement, "the parties must condition the effectiveness of the stipulation on the district court's entry of an order retaining jurisdiction"). Plaintiffs' counsel stated in a recent email to Defendants' counsel that we would be willing to negotiate such stipulation, and would agree to stay discovery, if Defendants confirmed that the Facility was permanently closed. Godshall Decl. ¶ 10.c. Neither State nor Defendants' counsel ever responded to that email. *Id*. at ¶ 10.d.

Dated: July 15, 2026

Respectfully Submitted,

*/s/ Carmen Iguina Gonzalez*
Carmen Iguina González*
ACLU FOUNDATION
915 15th St. N.W., 7th Floor
Washington, DC 20005
202-548-6616
ciguinagonzalez@aclu.org

Corene T. Kendrick*
Kyle Virgien*
Marisol Dominguez-Ruiz*
ACLU FOUNDATION
425 California St., Suite 700
San Francisco, CA 94104
202-393-4930
ckendrick@aclu.org
kvirgien@aclu.org
mdominguez-ruiz@aclu.org

Amy Godshall, Fla. Bar No. 1049803
Samuel Lester, Fla. Bar No. 1043063
Daniel Tilley, Fla. Bar No. 102882
ACLU FOUNDATION OF FLORIDA
4343 West Flagler Street, Suite 400
Miami, FL 33134
786-363-2714
agodshall@aclufl.org
slester@aclufl.org
dtilley@aclufl.org

Paul R. Chavez, Fla. Bar No. 1021395
Jennifer Smith, Fla. Bar No. 964514
Christina LaRocca, Fla. Bar No. 1025528
AMERICANS FOR IMMIGRANT JUSTICE
2200 NW 72nd Ave.
P.O. Box No 520037
Miami, FL 33152
786-218-3381
pchavez@aijustice.org
jsmith@aijustice.org
clarocca@aijustice.org

*Counsel for All Plaintiffs and the Class*
*\* Admitted pro hac vice*

9