UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

H.C.R., *et al.*, on behalf of
themselves and others similarly
situated,

     Plaintiffs,

v.                                                   Case No.:  2:25-cv-747-SPC-NPM

MARKWAYNE MULLIN, *et al.*,

     Defendants.

---

**OPINION AND ORDER**

Before the Court are State and Federal Defendants' Notices and Suggestions of Mootness (Docs. 280, 282) and State Defendants' Notice of Filing Declarations In Support of Notice and Suggestion of Mootness (Doc. 286).  Plaintiffs filed a response in opposition.  (Doc. 283).  On July 20, 2026, the Court conducted a video status conference at which the parties presented oral arguments on the mootness issue.  (Doc. 288).  For the following reasons, the Court finds that this case is moot.

**Background**[1]

On June 25, 2026, Governor Ron DeSantis announced that Alligator

---

[1] The parties are well-versed in the facts and background of this case.  Therefore, the Court only recounts those facts necessary to decide whether the case is moot.

Alcatraz had ended operations, noting that "[d]etainees who are still awaiting deportation have been transferred to other federal facilities, and demobilization efforts are underway." (Doc. 280 at 1–2 (citation omitted)). He added that the possibility that the facility would reopen in the future was "negligible." (*Id.* (citation omitted)). Following the closure, no detainees remained at, and Federal Defendants could no longer transfer detainees to, the facility. (Doc. 282 at 1–2).

Under these circumstances, the Court set a status conference to determine the status of operations at the facility. (Doc. 279). Unsurprisingly, only *then* did State and Federal Defendants file suggestions of mootness. (Docs. 280, 282). Plaintiffs opposed a stay of all deadlines and argued that State Defendants failed to provide evidence that the facility is permanently closed. (Doc. 283). They claimed that until an official with requisite authority declared Alligator Alcatraz permanently closed, the case should proceed.

Consistent with their exasperating habit of submitting eleventh-hour filings, on the day of the status conference, State Defendants filed two declarations as evidence of mootness. (Doc. 286). First, Tim Reardon is the State Incident Management Team Deputy Incident Commander at the Florida Division of Emergency Management ("FDEM"). (Doc. 286-1). He supervised and coordinated FDEM's day-to-day operations at Alligator

2

Alcatraz when it was open. Through this role, Reardon is intimately familiar with Alligator Alcatraz's demobilization and status. He states that the demobilization is complete, all facilities have been dismantled and removed from the site, and the facility can no longer hold detainees. Therefore, no detainees remain on the premises who could need access to counsel.

Second, Edward Vincent is the Special Agent Supervisor for Law Enforcement Aviation and Unmanned Aircraft Systems at the Florida Department of Law Enforcement. (Doc. 286-2). He assigned personnel to take video imagery and photographic mapping at Alligator Alcatraz. He provides several images of the facility and states that there are no detainees onsite. Based on this evidence, combined with the public statements of Governor DeSantis, among others, Defendants argue the Court should declare this case moot.

## Legal Standard

Article III of the Constitution, known as the cases and controversies limitation, prevents federal courts from deciding moot questions because the Court lacks subject matter jurisdiction. U.S. Const. art. III. "The doctrine of mootness derives directly from the case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy." *Florida Pub. Interest Research Group Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1085 (11th Cir. 2004) (citation omitted). "A case is

3

moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Id*. (citation omitted).

A remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time. *Soliman v. United States ex. rel. INS*, 296 F.3d 1237, 1243 (11th Cir. 2002). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal citations omitted).

A government actor who voluntarily ceases alleged wrongful conduct is entitled to a "rebuttable presumption" or a "lesser burden" that the conduct will not recur, but only if it demonstrates "unambiguous termination of the challenged conduct." *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014).

The presumption may be rebutted by "some reasonable basis to believe that the [conduct] will be reinstated if the suit is terminated." *Id*. In evaluating whether there is a reasonable basis the challenged conduct will recur, the Eleventh Circuit considers these factors: (1) whether the termination of the offending conduct was unambiguous; (2) whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction;

4

and (3) whether the government has consistently applied a new policy or adhered to a new course of conduct.[2]  *Id.* at 1322–23 (internal quotation marks omitted).  Timing matters.  "[T]he timing and content of the decision are . . . relevant in assessing whether the defendant's 'termination' of the challenged conduct is sufficiently 'unambiguous' to warrant application of the . . . presumption in favor of governmental entities."  *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 531–32 (11th Cir. 2013).

### Analysis[3]

Defendants have voluntarily ceased operations at Alligator Alcatraz and submitted evidence to support the assertion that the chances of reopening the facility are negligible.  As they are government actors, they are entitled to the rebuttable presumption that the challenged conduct—depriving detainees at Alligator Alcatraz of access to counsel in violation of the First Amendment—will not recur.  For the following reasons, the Court finds that Plaintiffs have not met their burden to rebut the presumption.

Applying the *Wooten* factors, the Court finds no reasonable basis to believe the challenged conduct will recur.  First, Defendants have met their burden of demonstrating the "unambiguous termination" of the challenged

---

[2] "These factors are not exhaustive and the analysis may vary depending on the facts and circumstances of a particular case."  *Wooten*, 747 F.3d at 1323.

[3] Because neither party ordered an official copy of the status conference transcript, the Court cites a rough version of the transcript.  The Court cites the transcript as (Tr. at __).

conduct. State Defendants were authorized to represent at the status conference that they have "no reason to believe that [the facility] will reopen." (Tr. at 8). The photos attached to Vincent's declaration demonstrate that the State Defendants have removed the facility's infrastructure. (Doc. 286-2 at 3–7). It is undisputed that there are no detainees at the facility, and Federal Defendants stated on the record that they are no longer transferring detainees there. Under these circumstances, it is impossible for Defendants to deny any detainee at Alligator Alcatraz constitutionally sufficient access to counsel—because there are none. And because Federal Defendants are not transferring any detainees to the facility, no future detainee could be denied access to counsel.[4] So the first factor is met.

Before proceeding to the next factor, a word about the timing of Defendants' decision to terminate the challenged conduct. The Court entered the preliminary injunction in March. Defendants appealed the decision in mid-April. And in late June, Governor DeSantis announced the closure. The Court sees no evidence that this litigation slightly, much less profoundly, affected the decision to close the facility and cease the challenged conduct. It is not as though Defendants closed the facility mere days or weeks after Plaintiffs filed

---

[4] The Court provisionally certified the following class: "All persons who are currently, or in the future, held at the Alligator Alcatraz detention facility." (Doc. 243 at 35). Therefore, in an abundance of caution, the Court also considers the effects of a mootness determination on future detainees.

suit in July 2025. Rather, Defendants have vigorously litigated this case since its inception. Accordingly, while timing certainly matters, it does not meaningfully affect the Court's mootness analysis.

Next, beyond Plaintiffs' speculation, nothing in the record supports the idea that State Defendants closed the facility and thus terminated their access to counsel policies to manipulate jurisdiction. To the contrary, State Defendants' counsel stated on the record that the facility "was closed because there was no longer a need for it. And so the thought that all [of] a sudden in . . . however many days . . . that this [facility] could be reset up, that all [of] a sudden we would set it up just to get away from the lawsuit . . . is not reasonable." (Tr. at 4–5). The Court takes counsel at his word and holds State Defendants to these representations.

Additionally, Federal Defendants' counsel explained at the status conference that their mootness position rests on the "impracticality of transferring detainees to a facility that is no longer in operation." (Tr. at 5). While Federal Defendants could not predict the nature of any future immigration detention facility, they raised a critical point. Rather than bootstrap the mootness issue to whether the facility might reopen (as Plaintiffs try to do), they properly tie mootness to the constitutional claims at issue. It bears repeating: this case is not about closing the facility. It is about access to counsel. The facility's closure is unquestionably a critical, relevant

7

development, but it is not the crux of this case. Thus, the claims in this case—whether detainees have constitutionally sufficient access to counsel—are moot because Defendants have closed the facility. (Tr. at 7).

And, critical to the Court's calculus, even if the facility reopened at some future date, there is no way to know whether the relevant authorities would implement the same access-to-counsel policies. The Court is not naïve. This facility took a mere ten days to construct. However, the undersigned issued a thorough preliminary injunction, explaining the constitutional deficiencies of various aspects of State and Federal Defendants' access to counsel policies. (Doc. 243). Under these circumstances, it is unreasonable to think they would flout this Court and implement the same constitutionally deficient policies in any future facility.

The Court also briefly addresses the issue of the class definition, which applies to future detainees. Again, Federal Defendants make a salient point. Now that the facility is no longer in operation, there is no reason to believe anyone will be detained there in the future. (Tr. at 7–8). Thus, the second factor also favors a finding of mootness.

Finally, given that the facility is closed, the last factor is largely inapplicable. With no facility remaining, State and Federal Defendants cannot possibly apply a new policy or adhere to any course of conduct related to access to counsel at Alligator Alcatraz.

8

Plaintiffs essentially concede that their request for a permanent injunction is moot. (Tr. at 8–9). This makes sense. What relief could a permanent injunction provide at empty airstrip, devoid of any immigration detainees? Instead, they pivot to their request for declaratory relief. (Tr. at 11). But this avenue also fails. In their quest for a favorable ruling, Plaintiffs reach too far. They argue that access to counsel is

> a recurring problem across immigration detention centers. As immigration enforcement continues to ramp up and we see more facilities popping up, this is a very serious problem that a lot of people are being denied access to counsel, denied due process, and summarily deported before they can have any chance to defend against the deportation.
>
> So declaratory relief would prohibit the State of Florida from reentering at a different facility or the same facility the unconstitutional policies and practices that they had been enacting at the facility, but it would also lend relief to other facilities as well to show other facilities that they cannot enact those same or similar unconstitutional policies and practices.
>
> . . .
>
> [Plaintiffs] think it would help set precedent, . . . that future facilities—that any organization, state, company wants to open up in the future, they have to have certain minimum standards—constitutional standards of providing access to counsel before they open up the facility. They have to have confidential, outgoing legal phone calls available for people from day one at the facility. It would set precedent for future facilities and current facilities for what is or is not required under the First Amendment.

(Tr. at 11–13).

9

Plaintiffs' arguments concerning declaratory judgment fall flat. For the Court to reach a point where it could consider entering a declaratory judgment, Plaintiffs would still need to show a live controversy exists *at Alligator Alcatraz*. But it is closed. Defendants are not applying access to counsel policies to any current or future detainees. As such, no live controversy exists. Federal Defendants argue that "a declaratory judgment relief request does not substitute for this Court's Article III jurisdiction. The plaintiffs would still need to show a live controversy for this particular facility . . . to get a declaratory judgment for the case that they have brought[.]" (Tr. at 13). True. To the extent the case is moot, and Plaintiffs nonetheless request a declaratory judgment that could be applied to *other*, future detention facilities (Tr. at 12), such a judgment would constitute an advisory opinion—exceeding the scope of this case and the Court's authority. *See Christian Coal. of Alabama v. Cole*, 355 F.3d 1288, 1291 (11th Cir. 2004) ("a federal court determination of a moot case would constitute an impermissible advisory opinion") (citation omitted).

In sum, Defendants have presented new evidence that renders the dispute moot. They have closed Alligator Alcatraz and removed all detainees from the facility. Federal Defendants are not transferring new detainees to Alligator Alcatraz. On that basis, any decision on the pending counts would be advisory, and they are thus moot.

Accordingly, it is now

10

**ORDERED:**

1. This case is **DISMISSED without prejudice** as moot.

2. The Clerk is **DIRECTED** to lift the stay, enter judgment accordingly, deny all pending motions as moot, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 14, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record